UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CRISTINA TOBIAS, ANTHONY BRIGGS, ANN MACDONALD and DAVID CALDER, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NVIDIA CORPORATION, et al.,<br><br>Defendants. | Case No. 20-CV-06081-LHK<br><br>**ORDER GRANTING WITH LEAVE TO AMEND MOTION TO DISMISS COMPLAINT** |

Plaintiffs Cristina Tobias, Anthony Briggs, Ann MacDonald, and David Calder (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, bring this action against the NVIDIA Corporation; the Board of Directors of the NVIDIA Corporation and its members; and the 401(k) Benefits Plan Committee of the NVIDIA Corporation and its members (collectively, "Defendants"), alleging violations of the Employee Retirement Income Security Act ("ERISA"). Before the Court is Defendants' motion to dismiss Plaintiffs' class action complaint. ECF No. 130 ("Mot."). Having considered the parties' briefing, the relevant law, and the record in this case, the Court GRANTS with leave to amend Defendants' motion to

1

dismiss Plaintiffs' complaint.[1]

## I.    BACKGROUND

### A.  Factual Background

#### 1.   The Parties

Plaintiff Cristina Tobias ("Tobias") is a resident of Santa Clara, California.  During Tobias' employment with the NVIDIA Corporation ("NVIDIA"), she participated in the investment options offered by the NVIDIA 401(k) Retirement Plan ("the Plan").  Complaint, ECF No. 1, at ¶ 18 ("Compl.").   Plaintiff Anthony Briggs ("Briggs") is a resident of Marion, Texas. During Briggs' employment with NVIDIA, he participated in the investment options offered by the Plan.  *Id.* at ¶ 19.  Plaintiff Ann MacDonald ("MacDonald") resides in Bend, Oregon.  During MacDonald's employment with NVIDIA, she participated in the investment options offered by the Plan.  *Id.* at ¶ 20.  Plaintiff David Calder ("Calder") resides in Austin, Texas.  During Calder's employment with NVIDIA, he participated in the investment options offered by the Plan.  *Id.* at ¶ 21.  Plaintiffs' complaint does not state whether any of the named Plaintiffs are still employed by NVIDIA or remain enrolled in the Plan.

Plaintiffs name as defendants NVIDIA; the NVIDIA Board of Directors and its members (collectively, "Board Defendants"); and the NVIDIA Corporation 401(k) Benefits Plan Committee and its members (collectively, "Committee Defendants").  *Id.* at ¶¶ 26–39.  Plaintiffs do not allege the names of the Board or Committee Defendants and instead sue the Board Defendants as John Does 1-10 and the Committee Defendants as John Does 11-20.  *Id.* at ¶¶ 35, 39.

#### 2.   The Plan

According to Plaintiffs, the NVIDIA Corporation 401(k) Plan ("the Plan") is a "defined

---

[1] Defendants' motion to dismiss violates the Civil Local Rules in two ways.  First, the notice of motion is paginated separately from the points and authorities.  ECF No. 24, at 1.  Civil Local Rule 7-2(b) provides that the notice of motion and points and authorities must be contained in one document with the same pagination.  Second, Defendants' motion to dismiss and reply brief contain footnotes with font size smaller than 12-point font.  ECF No. 24, at 1; ECF No. 26, at 4. Civil Local Rule 3-4(c)(2) provides that all text, including footnotes, must be in 12-point font. These violations enable Defendants to circumvent the Civil Local Rule's page limits.  The Court will strike any future filings that violate these Civil Local Rules.

United States District Court
Northern District of California

1   contribution" or "individual account" plan within the meaning of ERISA § 3(34), 29 U.S.C. §

2   1002(34).  *Id.* at ¶ 42.  As such, the Plan provides "individual accounts for each participant and for

3   benefits based solely upon the amount contributed to those accounts, and any income, expense,

4   gains and losses, and any forfeitures of accounts of the participants which may be allocated to

5   such participant's account."  *Id.*

6         Plaintiffs allege that in general, all full-time employees of NVIDIA are eligible to

7   participate in the Plan, with the exception of residents of Puerto Rico and employees covered by a

8   collective bargaining agreement.  *Id.* at ¶ 43.  Plaintiffs further allege there are multiple forms of

9   contributions that can be made to participants' Plan accounts, including a "employee salary

10   deferral contribution, an employee Roth 401(k) contribution, an employee after-tax contribution,

11   catch-up contributions for employees aged 50 and over, rollover contributions, and employer

12   matching contributions based on employee pre-tax, Roth 401(k), and employee after-tax

13   contributions."  *Id.* at ¶ 43.

14         For participants in the Plan, there are several fund options available for investment each

15   year.  *Id.* at ¶ 52.  However, Plaintiffs do not name or otherwise identify the available fund options

16   in which participants may choose to invest through the Plan.  Plaintiffs do allege that participants

17   in the Plan may "direct all contributions to selected investments as made available and determined

18   by the Committee."  *Id.*  The Committee is responsible for selecting and monitoring the

19   performance of the available fund options.  *Id.* at ¶ 51.

20         **3.  The Conduct of the Plan Fiduciaries**

21         Plaintiffs allege that each of the Defendants is a fiduciary of the Plan under ERISA §

22   3(21)(A), 29 U.S.C. § 1002(21)(A).  *Id.* at ¶¶ 26, 34, 38.  Specifically, NVIDIA is the Plan

23   sponsor and a named fiduciary.  *Id.* at ¶ 26.  The Board Defendants are fiduciaries of the Plan and

24   had the "discretionary authority to appoint and/or monitor the Committee, which had control over

25   Plan management and/or authority or control over management or disposition of Plan assets."  *Id.*

26   at ¶ 34.  Finally, the Committee Defendants are Plan fiduciaries and each "exercised discretionary

27   authority over management or disposition of Plan assets."  *Id.* at ¶ 26.

28

United States District Court
Northern District of California

1    Plaintiffs allege that as fiduciaries, Defendants are required by ERISA § 404(a)(1), 29

2    U.S.C. § 1104(a)(1), "to manage and administer the Plan, and the Plan's investments, solely in the

3    interest of the Plan's participants and beneficiaries and with the care, skill, prudence, and diligence

4    under the circumstances then prevailing that a prudent person acting in a like capacity and familiar

5    with such matters would use in the conduct of an enterprise of a like character and with like aims."

6    *Id.* at ¶ 65.  In violation of this duty, Plaintiffs allege that Defendants "included and retained in the

7    Plan many mutual fund investments that were more expensive than necessary and otherwise were

8    not justified on the basis of their economic value to the Plan." *Id.* at ¶ 70.  Furthermore, Plaintiffs

9    allege that Defendants "failed to leverage the size of the Plan to negotiate for (1) lower expense

10   ratios for certain investment options maintained and/or added to the Plan during the Class Period;

11   and (2) a prudent payment arrangement with regard to the Plan's recordkeeping and administrative

12   fees." *Id.* at ¶ 71.

13       Specifically, Plaintiffs first allege that Defendants failed to utilize lower cost share classes

14   of mutual funds when such options were available.  *Id.* at ¶ 82.  Mutual funds often offer multiple

15   classes of shares in a fund and offer lower cost share classes to larger institutional investors.  *Id.*

16   Plaintiffs allege that although the only difference between the share classes is the cost, Defendants

17   failed to negotiate the lowest (and therefore cheapest) share classes for several mutual funds

18   offered by the Plan.  *Id.* at ¶¶ 83–87.  According to Plaintiffs, a "prudent fiduciary conducting an

19   impartial review of the Plan's investments would have identified the cheaper share classes

20   available and transferred the Plan's investments in the above-referenced funds into the lower share

21   classes at the earliest opportunity." *Id.* at ¶ 90.

22       Second, Plaintiffs allege that Defendants failed to utilize collective trusts when such

23   options were available.  *Id.* at ¶ 94.  Plaintiffs allege that most mutual fund strategies are available

24   in a collective trust format.  Collective trusts allegedly hold the same investments as those held by

25   mutual funds, except they cost less.  *Id.*  Collective trusts were available to the Plan throughout the

26   Class Period.  In 2018, the Plan switched to a collective trust version of the T. Rowe Price target

27   date funds.  However, these collective trust options had been available since 2012.  *Id.* at ¶ 102.

28

United States District Court
Northern District of California

Plaintiffs allege that "[a] prudent fiduciary conducting an impartial review of the Plan's investments would have identified all funds that could be converted to collective trusts at the earliest opportunity." *Id.* at ¶ 94.

Third, Plaintiffs allege that Defendants failed to utilize lower cost passively managed and actively managed mutual funds. *Id.* at ¶ 108. Allegedly, Defendants failed to consider materially similar, but less expensive, mutual fund alternatives throughout the Class Period. *Id.* at ¶¶ 109–110. These alternatives allegedly had no material difference in risk or return profiles and were less expensive. *Id.* Plaintiffs allege that a "prudent investigation would have revealed the existence of these lower-cost and better performing alternatives to the Plan's funds." *Id.* at ¶ 112.

Fourth, Plaintiffs allege that the expense rations of several Plan funds were excessive in relation to comparable funds. *Id.* at ¶ 78.

### 4. The Plan's Recordkeeping Expenses

Throughout the putative Class Period, which runs from August 28, 2014 through the date of any judgment in this case, the Plan's recordkeeper was Fidelity Management Trust Company ("Fidelity"). *Id.* at ¶ 114. A recordkeeper performs a number of administrative services associated with maintaining defined contribution plans like the one in the instant case. *Id.* at ¶ 115. Recordkeeping expenses can either be paid directly from assets of a plan, or indirectly by the plan's investments. This later practice is known as "revenue sharing." *Id.* at ¶ 118. Thus, revenue sharing refers to the practice by which fees charged in connection with specific funds are used "to pay for recordkeeping and other administrative services provided by the Plan." *Davis v. Salesforce.com, Inc. ("Davis I")*, 2020 WL 5893405, at *5 (N.D. Cal. Oct. 5, 2020). Plaintiffs allege that "[a]lthough utilizing a revenue sharing approach is not per se imprudent, unchecked, it could be devastating for Plan participants" because it can have the effect of hiding fees from participants in a plan. Compl. at ¶ 119.

Plaintiffs further allege that in order to prevent recordkeeping expenses from growing over time, plan fiduciaries should regularly conduct a "Request for Proposal" ("RFP") process to evaluate whether recordkeeping expenses have grown significantly or appear high when compared

United States District Court
Northern District of California

1    to the marketplace. *Id.* at ¶ 121.  In the instant case, "[t]hroughout the Class Period, Fidelity

2    purportedly charged a flat $63 per participant annually beginning in 2015.  This amount was

3    reduced to $53 per participant in 2017." *Id.* at ¶ 123.  However, Fidelity allegedly also collected

4    revenue sharing fees, which were deposited into a revenue sharing account. *Id.*  Accordingly,

5    Plaintiffs allege that the total amount of recordkeeping fees (both direct and indirect) paid by Plan

6    participants throughout the Class Period was above $60 per Plan participant per year. *Id.* at ¶ 128.

7    Plaintiffs state that these fees were higher than the average rate for large plans, which Plaintiffs

8    allege is approximately $35 per participant per year. *Id.* at ¶ 129.

9       As such, Plaintiffs allege that "[a] more prudent arrangement in this case would have been

10   to select available lower cost investment funds that used little to no revenue sharing and for the

11   Defendants to negotiate and/or obtain reasonable direct compensation per participant

12   recordkeeping/administration costs with no strings attached." *Id.* at ¶ 124.

13      **B.  Procedural Background**

14      On August 28, 2020, Plaintiffs filed a complaint against Defendants.  ECF No. 1

15   ("Compl.").  Plaintiffs' complaint alleges two claims: (1) breach of the fiduciary duties of loyalty

16   and prudence by the Committee Defendants; and (2) failure to monitor by NVIDIA and the Board

17   Defendants. *Id.* at ¶¶ 132–145.  Plaintiffs' complaint seeks to certify a class comprised of "[a]ll

18   persons, except Defendants and their immediate family members, who were participants in or

19   beneficiaries of the Plan, at any time between August 28, 2014 through the date of judgment (the

20   'Class Period')." *Id.* at ¶ 55.

21      On December 12, 2020, Defendants filed the instant motion to dismiss.  ECF No. 24

22   ("Mot.").  On January 15, 2021, Plaintiffs filed an opposition.  ECF No. 25 ("Opp.").  On

23   February 5, 2021, Defendants filed a reply.  ECF No. 26 ("Reply").

24      A hearing on the motion to dismiss was originally scheduled for April 22, 2021.  On

25   March 12, 2021, the parties filed a stipulation to continue the hearing on the motion to dismiss to

26   June 17, 2021, or to a subsequent date convenient to the Court.  ECF No. 30.  The parties

27   requested a continuation of the hearing date because Plaintiffs' primary counsel had to leave the

28

Case No. 20-CV-06081-LHK
ORDER GRANTING WITH LEAVE TO AMEND MOTION TO DISMISS COMPLANT

1    country for a family emergency and did not expect to return to the United States before the April

2    22, 2021 hearing date. *Id.* The parties also requested that the Court stay discovery until

3    Defendants' motion to dismiss was decided. *Id.* On March 16, 2021, the Court granted the

4    parties' stipulation; continued the hearing date on the instant motion to dismiss to June 17, 2021;

5    and stayed the case until the Court ordered otherwise. ECF No. 31.

6    **C. Requests for Judicial Notice**

7    In connection with their motion to dismiss, Defendants request judicial notice of 17

8    documents, which include (1) NVIDIA Corporation 401(k) Plan document ("Exhibit 1");

9    Summary Plan Description, effective April 27, 2020 ("Exhibit 2"); the Plan's 2014 Form 5500

10   ("Exhibit 3"); the Plan's 2015 Form 5500 ("Exhibit 4"); the Plan's 2016 Form 5500 ("Exhibit 5");

11   the Plan's 2017 Form 5500 ("Exhibit 6"); the Plan's 2018 Form 5500 ("Exhibit 7"); the Plan's

12   2019 Form 5500 ("Exhibit 8"); the Plan's 2014 Participant Disclosure ("Exhibit 9"); the Plan's

13   2015 Participant Disclosure ("Exhibit 10"); the Plan's 2016 Participant Disclosure ("Exhibit 11");

14   the Plan's 2017 Participant Disclosure ("Exhibit 12"); the Plan's 2018 Participant Disclosure

15   ("Exhibit 13"); the Plan's 2019 Participant Disclosure ("Exhibit 14"); an excerpted version of the

16   Service Agreement Between NVIDIA Corporation and Fidelity Management Trust Company,

17   dated May 10, 2005  ("Exhibit 15"); an excerpted version of the Fidelity Investments Retirement

18   Plan Service Agreement between NVIDIA and the Fidelity Management Trust Company, effective

19   July 6, 2015 ("Exhibit 16"); and "The BrightScope/ICI Defined Contribution Plan Profile: A

20   Close Look at 401(k) Plans, 2016" ("Exhibit 17").  Declaration of Clarissa A. Kang, ECF No. 24-

21   1, at 1–929; Mot. at 4 n.5.

22   The Court may take judicial notice of matters that are either "generally known within the

23   trial court's territorial jurisdiction" or "can be accurately and readily determined from sources

24   whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  Moreover, courts may

25   consider materials referenced in the complaint under the incorporation by reference doctrine, even

26   if a plaintiff failed to attach those materials to the complaint. *Knievel v. ESPN*, 393 F.3d 1068,

27   1076 (9th Cir. 2005).  Public records, including judgments and other publicly filed documents, are

28   

7

proper subjects of judicial notice.  *See, e.g.*, *United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007).  However, to the extent any facts in documents subject to judicial notice are subject to reasonable dispute, the Court will not take judicial notice of those facts.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

Defendants argue that Exhibits 1-17 are properly incorporated by reference in Plaintiffs' complaint because they form the basis of Plaintiffs' claims and are referenced throughout the complaint.  Mot. at 4 n.5.  In response, Plaintiffs argue that Defendants improperly attempt to use these documents to rebut allegations in Plaintiffs' complaint.  Opp. at 3 n.6.  For this reason, Plaintiffs argue that the Court should deny Defendants' request for judicial notice.  *Id.*

The Court agrees that Exhibits 1-17 are properly incorporated by reference.  Courts within this district routinely grant requests for judicial notice of Plan documents of the kind before the Court in the instant case.  *See, e.g., Davis I*, 2020 WL 5893405, at *1 n.2 (N.D. Cal. Oct. 5, 2020) (taking judicial notice of Plan documents and Forms 5500, among other documents); *Terraza v. Safeway Inc.*, 241 F. Supp. 3d 1057, 1067 (N.D. Cal. 2017) (taking judicial notice of the Plan document, summary plan description, Forms 5500, and participant fee disclosures).

The Court therefore GRANTS Defendants' request for judicial notice.  However, the Court notes that to the extent any facts in documents subject to judicial notice are subject to reasonable dispute, the Court does not take judicial notice of those facts.  *See Lee*, 250 F.3d at 689.

## II.     LEGAL STANDARD

### A.  12(b)(1)

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) tests whether the court has subject matter jurisdiction.  Although lack of "statutory standing" requires dismissal for failure to state a claim under Rule 12(b)(6), lack of Article III standing requires dismissal for want of subject matter jurisdiction under Rule 12(b)(1).  *See Nw. Requirements Utilities v. F.E.R.C.*, 798 F.3d 796, 808 (9th Cir. 2015) ("Unlike Article III standing, however, 'statutory standing' does not implicate our subject-matter jurisdiction."  (citing *Lexmark Int'l, Inc. v. Static Control*

United States District Court
Northern District of California

8

*Components, Inc.*, 572 U.S. 118, 128 n.4 (2014)); *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).  A Rule 12(b)(1) jurisdictional attack may be factual or facial.  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

"[I]n a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.*  In resolving such an attack, unlike with a motion to dismiss under Rule 12(b)(6), a court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id.*  Moreover, the court "need not presume the truthfulness of the plaintiff's allegations." *Id.*  Once the defendant has moved to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the plaintiff bears the burden of establishing the court's jurisdiction. *See Chandler v. State Farm Mut. Auto Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

"In a facial attack," on the other hand, "the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039.  The court "resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

**B.  12(b)(6)**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an action for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted).

For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving

Case No. 20-CV-06081-LHK
ORDER GRANTING WITH LEAVE TO AMEND MOTION TO DISMISS COMPLANT

party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, a court need not accept as true allegations contradicted by judicially noticeable facts. *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

### C. Leave to Amend

Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely granted when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and alterations omitted). Generally, leave to amend shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

### III.   DISCUSSION

Plaintiffs allege two causes of action on behalf of themselves and the putative class: (1) breach of the fiduciary duties of loyalty and prudence under ERISA § 404(a) by the Committee Defendants; (2) failure to monitor under ERISA § 404(a) by NVIDIA and the Board Defendants. Compl. at ¶¶ 132–145. In the motion to dismiss, Defendants (1) challenge Plaintiffs' standing to bring this lawsuit as pled; and (2) argue that Plaintiffs have failed to state a claim for both causes of action. The Court addresses each argument in turn.

### A. Plaintiffs' Constitutional Standing

Defendants first argue that Plaintiffs lack standing to bring the claims asserted in this case and lack standing to seek prospective injunctive relief. Mot. at 2. Defendants explain that throughout the Class Period, the Plan offered approximately fifty different investment options, each with different "investment styles, risk profiles, and investment management fees." *Id.* at 5. Defendants argue that Plaintiffs appear to challenge some subset of these investment funds offered by the Plan, but do not specify which funds Plaintiffs invested in and whether Plaintiffs remain

10

United States District Court
Northern District of California

invested in those funds.  *Id.* at 8.  Accordingly, Defendants argue that Plaintiffs lack standing to bring both Claims I and II and any injunctive relief sought.  *Id.*  The Court addresses each argument in turn.

### 1.  Standing to Bring Claims I and II

Defendants argue that the Court lacks subject matter jurisdiction over Plaintiffs' claims regarding the challenged investment funds in the Plan because Plaintiffs have failed to allege that Plaintiffs were invested in each of the Plan's investment funds during the Class Period.  As such, Defendants argue, "Plaintiffs could not have been injured by investment options in which they were never invested and, therefore, have failed to establish Constitutional standing to assert their claims involving those options."  Mot. at 8.  Defendants further argue that "if any of the Plaintiffs took full distributions of their benefits during the relevant period, they no longer have standing to assert claims to recover any alleged losses based on the Plan's inclusion of the Challenged Funds after that date."  *Id.* at 9.

In opposition, Plaintiffs argue that Plaintiffs' complaint alleges that each of the named Plaintiffs invested "in the options offered by the Plan and which are the subject of this lawsuit." Opp. at 7 (quoting Compl. at ¶¶ 18–21).  Accordingly, Plaintiffs argue, "Defendants ask the Court to dismiss only the claims related to the Challenged Funds Plaintiffs did not personally hold in their plan accounts."  *Id.*  Plaintiffs further argue a lawsuit "under 29 U.S.C. § 1132(a)(2) is 'brought in a representative capacity on behalf of the plan as a whole,' and remedies under § 1109 'protect the entire plan.'"  *Id.* (quoting *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 593 (8th Cir. 2009).  As such, Plaintiffs argue that Plaintiffs may seek recovery on behalf of all Plan participants, even if Plaintiffs personally did not invest in every individual fund offered by the Plan.  *Id*.

The Ninth Circuit provided guidance on how to resolve issues of this kind in *Melendres v. Arpaio*, 784 F.3d 1254 (9th Cir. 2014).  In *Melendres*, the Ninth Circuit explained the difference between a "standing approach" and a "class certification approach."  *Id.* at 1261.  The Ninth Circuit provided the following guidance:

Case No. 20-CV-06081-LHK
ORDER GRANTING WITH LEAVE TO AMEND MOTION TO DISMISS COMPLANT

United States District Court
Northern District of California

The "standing approach" treats dissimilarities between the claims of named and unnamed plaintiffs as affecting the "standing" of the named plaintiff to represent the class. In other words, if there is a disjuncture between the injuries suffered by named and unnamed plaintiffs, courts applying the standing approach would say the disjuncture deprived the named plaintiff of standing to obtain relief for the unnamed class members. The "class certification approach," on the other hand, holds that once the named plaintiff demonstrates her individual standing to bring a claim, the standing inquiry is concluded, and the court proceeds to consider whether the Rule 23(a) prerequisites for class certification have been met.

*Id.* at 1261–62 (internal quotation marks and citations omitted).  The Ninth Circuit went on to adopt the class certification approach and explained that "representative parties who have a direct and substantial interest have standing," and "the question whether they may be allowed to present claims on behalf of others who have similar, but not identical, interests depends not on standing, but on an assessment of typicality and adequacy of representation."  *Id.* at 1262.  As such, "any issues regarding the relationship between the class representative and the passive class members—such as dissimilarity in injuries suffered—are relevant only to class certification, not to standing."  *Id.*

In the instant case, Plaintiffs' complaint alleges that each of the named Plaintiffs "invest[ed] in the options offered by the Plan and which are the subject of this lawsuit."  Compl. at ¶¶ 18–21.  The complaint further alleges that "[a]s a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plan suffered millions of dollars of losses due to excessive costs and lower net investment returns."  *Id.* at ¶ 136.  Plaintiffs have therefore alleged that they were invested in Plan funds and suffered harm as a result of Defendants' action.  Thus, under Ninth Circuit law, Plaintiffs are "representative parties who have a direct and substantial interest" in the claims brought in this case and accordingly "have standing."  *Melendres*, 784 F.3d at 1262.

The Court therefore follows other district courts in this Circuit that have founding standing in accordance with the Ninth Circuit's decision in *Melendres* when defendants raised similar standing challenges in ERISA actions.  *See, e.g., Bouvy v. Analog Devices, Inc.*, 2020 WL 3448385, at *7 (S.D. Cal. June 24, 2020) (finding that plaintiff had standing to bring claims even though he had not invested in every mutual fund challenged in the putative class claims); *Johnson*

12

United States District Court
Northern District of California

1    *v. Providence Health & Servs.*, 2018 WL 1427421, at *3 (W.D. Wash. Mar. 22, 2018) (same);

2    *Thompson v. Transamerica Life Insurance Co.*, 2018 WL 6790561, at *4 (C.D. Cal. Dec. 26,

3    2018) (same); *Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*, 250 F. Supp. 3d 460, 465 (N.D. Cal.

4    2017) (same).

5              Furthermore, to the extent any named Plaintiffs took full distribution of benefits during the

6    Class Period, a former participant in a defined contribution plan may be injured by a loss

7    measured as the "difference between the benefit he received and what he would have received if

8    the Plans' assets had been prudently invested."  *Vaughn v. Bay Env't Mgmt., Inc.*, 567 F.3d 1021,

9    1026–27 (9th Cir. 2009) (holding that former plan participant had standing to bring ERISA suit

10   where he alleged that he received a distribution that was less than he would have received had the

11   plan fiduciary invested prudently); *Klawonn v. Board of Directors for the Motion Picture Industry

12   Pension Plans*, 2021 WL 3508534, at *4 (C.D. Cal. Aug. 9, 2021) (same).  Plaintiffs' complaint

13   alleges that "[a]s a direct and proximate result of the breaches of fiduciary duties alleged herein,

14   the Plan suffered millions of dollars of losses due to excessive costs and lower net investment

15   returns."  Compl. at ¶ 136.  Accordingly, to the extent any named Plaintiffs took full distribution

16   of benefits during the Class Period, under Ninth Circuit law those named Plaintiffs have Article III

17   standing to bring Counts I and II.

18             Accordingly, the Court DENIES Defendants' motion to dismiss Plaintiffs' complaint for

19   lack of Article III standing to bring Claims I and II on behalf of the putative class.

20             **2.  Standing to Seek Injunctive Relief**

21             Defendants next argue that Plaintiffs lack Article III standing to seek injunctive relief.

22   Mot. at 9.  Plaintiffs seek an order for injunctive relief (1) "requiring the Company Defendants to

23   disgorge all profits received from, or in respect of, the Plan, and/or equitable relief pursuant to 29

24   U.S.C. § 1132(a)(3) in the form of an accounting for profits, imposition of a constructive trust, or

25   a surcharge against the Company Defendant as necessary to effectuate said relief"; (2) enjoining

26   Defendants from any further violations of their ERISA fiduciary responsibilities, obligations, and

27   duties"; and (3) "Other equitable relief to redress Defendants' illegal practices and to enforce the

28                                                    13

1    provisions of ERISA as may be appropriate." Compl. at ¶ 145.  Defendants argue that Plaintiffs

2    have not alleged that any named Plaintiff is currently invested in a fund offered by the Plan.  Thus,

3    Defendants contend, as former participants in the Plan, Plaintiffs may not seek prospective

4    injunctive relief.  Mot. at 9.  In opposition, Plaintiffs argue that "Plaintiffs may seek relief on

5    behalf of the entire plan, even if they themselves will not personally benefit from some of the

6    relief sought – like injunctive relief."  Opp. at 9–10.

7         Defendants' arguments with respect to the adequacy of Plaintiffs' injuries in relation to the

8    putative class as a whole are once again properly decided at the class certification stage, not the

9    motion to dismiss stage.  Under Ninth Circuit law, Plaintiffs are "representative parties who have a

10   direct and substantial interest" in the claims brought in this case and accordingly "have standing."

11   *Melendres*, 784 F.3d at 1262.  Moreover, under ERISA, "a plaintiff may seek relief under §

12   1132(a)(2) that sweeps beyond his own injury.  Since [Plaintiffs] ha[ve] standing under Article III,

13   [the Court] conclude[s] that § 1132(a)(2) provides [Plaintiffs] a cause of action to seek relief for

14   the entire Plan." *Braden*, 588 F.3d at 593.  Accordingly, the Court finds that it may exercise

15   subject matter jurisdiction over Plaintiffs' claims brought on behalf of the putative class.  The

16   Court therefore DENIES Defendants' motion to dismiss for lack of subject matter jurisdiction.

17        The Court now turns to Defendants' argument that Plaintiffs have failed to state a claim

18   with respect to Counts I and II.

19   **B.  Count I: Breaches of Fiduciary Duty Under ERISA § 404(a)**

20        Plaintiffs first allege that the Committee Defendants committed various breaches of

21   fiduciary duty under ERISA § 404(a).  Under ERISA, plan fiduciaries are required to act in

22   accordance with the duty of prudence, duty of loyalty, duty to diversify investments, and duty to

23   act in accordance with the documents governing the plan. 29 U.S.C. § 1104(a)(1).  Here,

24   Plaintiffs allege in Count I that Committee Defendants breached the first and second of these

25   duties.  The Court first addresses whether Plaintiffs have stated a claim for breach of the duty of

26   prudence.  The Court then turns to whether Plaintiffs have stated a claim for breach of the duty of

27   loyalty.

28

United States District Court
Northern District of California

United States District Court
Northern District of California

### 1.  Breach of the Duty of Prudence

ERISA requires that plan fiduciaries exercise "the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." *Id.* § 1104(a)(1)(B).  Under this standard, the Court must determine "whether the individual trustees, at the time they engaged in the challenged transactions, employed the appropriate methods to investigate the merits of the investment and to structure the investment."  *Donovan v. Mazzola*, 716 F.2d 1226, 1232 (9th Cir. 1983); *see also White v. Chevron Corp.* ("*White II*"), 2017 WL 2352137, at *4 (N.D. Cal. May 31, 2017) (same).  This duty extends to not only the initial selection of investments, but also to the continuous monitoring of investments, and requires that imprudent investments be removed.  *See Tibble v. Edison Int'l*, 575 U.S. 523, 529 (2015) (explaining ongoing duty to monitor investments).

Importantly, this standard "focus[es] on a fiduciary's conduct in arriving at an investment decision, not on its results, and ask[s] whether a fiduciary employed the appropriate methods to investigate and determine the merits of a particular investment."  *Pension Benefit Guar. Corp. ex rel. St. Vincent v. Morgan Stanley Inv. Mgmt.* ("*St. Vincent*"), 712 F.3d 705, 716 (2nd Cir. 2013).  Where a plaintiff fails to allege any evidence regarding the methods or conduct of a plan fiduciary in arriving at investment decisions, "a claim alleging a breach of fiduciary duty may still survive a motion to dismiss if the court, based on circumstantial factual allegations, may reasonably infer from what is alleged that the process was flawed."  *Id.* at 718 (quoting *Braden*, 588 F.3d at 596 (internal quotation marks omitted)).

However, the Court must be especially cautious in this context to "not rely on the vantage point of hindsight" when assessing the prudence of the plan fiduciaries' conduct.  *Id.* (internal citation and quotation marks omitted).  Accordingly, "if the complaint relies on circumstantial factual allegations to show a breach of fiduciary duties under ERISA, those allegations must give rise to a 'reasonable inference' that the defendant committed the alleged misconduct," thus "'permit[ting] the court to infer more than the mere possibility of misconduct,'" *Id.* at 718

Case No. 20-CV-06081-LHK
ORDER GRANTING WITH LEAVE TO AMEND MOTION TO DISMISS COMPLANT

1   (quoting *Iqbal*, 556 U.S. at 678–79).  Thus, "[p]oor performance, standing alone, is not sufficient

2   to create a reasonable inference that plan fiduciaries failed to conduct an adequate investigation . .

3   . ERISA requires a plaintiff to plead some other indicia of imprudence."  *White II*, 2017 WL

4   2352137, at *20; *see also Dorman v. Charles Schwab Corp.*, 2019 WL 580785, at *6 (N.D. Cal.

5   Feb. 8, 2019) (same).

6        In the instant case, Plaintiffs allege that Committee Defendants breached their duty of

7   prudence in five ways.  First, Plaintiffs allege that Committee Defendants failed to utilize lower

8   cost share classes of mutual funds when available.  Compl. at ¶ 82.  Second, Plaintiffs allege that

9   Committee Defendants failed to utilize collective trusts when such options were available.  *Id.* at ¶

10  94.  Third, Plaintiffs allege that Committee Defendants failed to select lower cost passively

11  managed and actively managed mutual funds when such options were available.  *Id.* at ¶ 82.

12  Fourth, Plaintiffs allege that the expense ratios of several Plan funds were excessive in relation to

13  comparable funds available.  *Id.* at ¶ 78.  Finally, Plaintiffs allege that Committee Defendants paid

14  excessive fees to Fidelity, the Plan's recordkeeper.  *Id.* at ¶ 124.

15       Plaintiffs acknowledge their omission of any allegations regarding the actual knowledge,

16  methods, or investigations made by Committee Defendants at the time Plan investments were

17  made.  However, Plaintiffs argue that their complaint alleges facts sufficient to create a "plausible

18  inference of mismanagement (e.g., selection of higher-cost identical funds as well as numerous

19  other indicia of imprudence)" that is sufficient to "survive a motion to dismiss."  Opp. at 2.

20  Defendants, in turn, argue that Plaintiffs have failed to state a claim for breach of the duty of

21  prudence under ERISA § 404(a).  Mot. at 10–11.

22       Accordingly, the Court considers whether Plaintiffs have alleged sufficient facts to give

23  rise to a "reasonable inference" that the Committee Defendants engaged in conduct constituting a

24  breach of fiduciary duty.  The Court will consider Plaintiffs' arguments both individually and

25  collectively to evaluate whether Plaintiffs' allegations are sufficient to state a claim for breach of

26  the duty of prudence.  *See Davis v. Salesforce.com, Inc.* ("*Davis II*"), 2021 WL 1428259, at *7

27  (N.D. Cal. Apr. 15, 2021) (explaining that allegations are insufficient to state a claim for

United States District Court
Northern District of California

28

16

1   imprudence when viewed both individually and collectively).  The Court therefore considers in

2   turn Plaintiffs' five arguments in support of Plaintiff's claim for breach of the duty of prudence by

3   Committee Defendants.

4           **a.  Lower Cost Share Classes**

5           Defendants first argue that Plaintiffs' allegations regarding the availability of lower cost

6   share classes fail to state a claim for breach of the duty of prudence.  Plaintiffs' complaint alleges

7   that Committee Defendants' imprudence is evinced by Committee Defendants' failure to utilize

8   lower cost share classes of mutual funds offered by the Plan.  Specifically, Plaintiffs allege that

9   "more expensive share classes are targeted at smaller investors with less bargaining power, while

10  lower cost shares are targeted at institutional investors with more assets."  Compl. at ¶ 82.

11  Plaintiffs allege that "[t]here is no difference between share classes other than cost—the funds

12  hold identical investments and have the same manager."  *Id.*  Plaintiffs argue that they have

13  identified at least fourteen Plan investment funds for which "Defendants could have switched to

14  the lowest-fee share class."  Opp. at 11.  Specifically, Plaintiffs' complaint identifies twelve T.

15  Rowe Price Retirement funds, one Fidelity Contrafund fund, and one American Funds Europacific

16  Growth R5 fund that Plaintiffs allege could have been replaced as investment options by lower

17  cost share class funds.  Compl. at ¶¶ 86–87.

18          Defendants argue that Plaintiffs' allegations regarding lower cost share classes of mutual

19  funds offered by the Plan fail to state an imprudence claim for several reasons.  First, Defendants

20  argue that the Plan in fact offered the "K" class fund of the Fidelity Contrafund that Plaintiffs

21  argue should have been included in the Plan.  Mot. at 16.  Second, Defendants argue that the T.

22  Rowe Price Retirement funds and American Funds Europacific Growth R5 fund offered revenue

23  sharing, whereas lower cost share classes of those funds did not.  *Id.*  Finally, Defendants argue

24  that in 2018, the Committee Defendants replaced the T. Rowe Price Retirement funds with lower

25  priced "F" collective trust funds and the American Funds Europacific Growth "R5" fund with the

26  exact lower cost "R6" fund that Plaintiffs allege should have been offered in place of the R5 fund.

27  *Id.*  The Court finds Defendants' first and second arguments dispositive and therefore does not

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1    reach Defendants' third argument.  Accordingly, the Court addresses Defendants' first two

2    arguments in turn.

3    First, Defendants note that although Plaintiffs' complaint alleges that the Committee

4    Defendants should have offered the "K" class fund of the Fidelity Contrafund in place of the

5    regular Fidelity Contrafund, Plan documents demonstrate that the Plan did in fact offer the "K"

6    class Fidelity Contrafund from the beginning of the putative Class Period until 2018.  *Id.* (citing

7    Ex. 9–13).  In 2018, the Committee Defendants replaced the "K" class fund with the lower cost

8    Fidelity Commingled Pool I fund.  *Id.*  Thus, Defendants argue, Plaintiffs' allegation that it was

9    imprudent for Plaintiffs to not offer the "K" class fund instead of the regular Fidelity Contrafund

10   lacks any factual basis because Committee Defendants did offer that option to Plan participants.

11   Plaintiffs do not dispute this argument in the opposition brief.  Accordingly, Plaintiffs' allegations

12   regarding the availability of the "K" class Fidelity Contrafund are insufficient to state a claim for

13   breach of the fiduciary duty of prudence.

14   Second, Defendants argue that any difference in price between the T. Rowe Price

15   Retirements funds and American Funds Europacific Growth R5 fund and the lower cost share

16   classes of those funds is attributable to the fact that the higher cost funds offered by the Plan

17   provided revenue sharing, whereas the lower cost funds that Plaintiffs prefer did not.  *Id.*  Thus,

18   Defendants argue, it is not true that there is no difference between share classes other than cost.

19   Specifically, the higher priced funds offered revenue sharing, whereas the lower priced funds did

20   not.  Although Plaintiffs do not dispute that the higher cost share classes offered revenue sharing,

21   Plaintiffs argue that the savings achieved on Plan recordkeeping and administrative costs by

22   revenue sharing fees do not excuse the choice to select higher cost funds in the instant case.  Opp.

23   at 13.

24   As the Court has already explained, *see supra* Section I(A)(4), revenue sharing is a practice

25   by which fees charged in connection with specific funds are used "to pay for recordkeeping and

26   other administrative services provided by the Plan."  *Davis I*, 2020 WL 5893405, at *5.  Courts in

27   this district have observed that revenue sharing is an "acceptable investment industry practice []

28
Case No. 20-CV-06081-LHK
ORDER GRANTING WITH LEAVE TO AMEND MOTION TO DISMISS COMPLANT

1    that frequently inures[s] to the benefit of ERISA plans." *Terraza*, 241 F. Supp. 3d at 1081 n.8

2    (alterations in original) (quoting *Tussey v. Abb, Inc.*, 746 F.3d 327, 336 (8th Cir. 2014)); *see also*

3    *Davis I*, 2020 WL 5893405, at *5 (same).

4           Plaintiffs acknowledge that revenue sharing fees generated in connection with the fourteen

5    mutual funds in the Plan that Plaintiffs challenge were used to pay for recordkeeping and other

6    administrative services provided by the Plan.  *See* Compl. at ¶ 54, 124.  Thus, Defendants argue,

7    there is an "obvious, alternative explanation" for why the Committee Defendants selected higher

8    cost class shares rather than lower cost class shares: the higher cost class shares provided revenue

9    sharing fees that off-set recordkeeping and administrative costs charged by Fidelity.  Mot. at 17

10   (quoting *White II*, 2017 WL 2352137, at *14).  Accordingly, Defendants argue, Plaintiffs have

11   failed to state a claim for imprudence on the basis of Committee Defendants' selection and

12   retention of the higher cost class shares.  *Id.*

13          The Court agrees.  Plaintiffs admit that the higher cost share classes of the challenged

14   mutual funds offered revenue sharing, which courts in this district have recognized provides an

15   "obvious alternative explanation for why the Plan did not offer the lowest-cost share class for

16   those funds."  *Davis II*, 2021 WL 1428259, at *3 (internal quotation marks and citation omitted).

17   Thus, the fact that the higher cost share classes offered revenue sharing demonstrates that

18   Plaintiffs' conclusory allegation that "[t]he Plan did not receive any additional services or benefits

19   based on its use of more expensive share classes" lacks merit and is insufficient to plead that

20   Committee Defendants breached their duty of prudence by selecting and retaining the more

21   expensive share classes of mutual funds.  *Id.*

22          Thus, following other courts in this circuit that have considered similar allegations, the

23   Court finds that Plaintiffs' allegations regarding the availability of lower cost share classes are,

24   without more, insufficient to state a claim for breach of the duty of imprudence.  *See Davis II*,

25   2021 WL 1428259, at *4 (dismissing imprudence claim where Plaintiffs alleged that lower cost

26   share classes where available, but ignored that higher cost share classes provided revenue sharing);

27   *see also Kong v. Trader Joe's Co. ("Kong II"),* 2020 WL 7062395, at *5 (C.D. Cal. Nov. 30,

28

United States District Court
Northern District of California

19

Case No. 20-CV-06081-LHK
ORDER GRANTING WITH LEAVE TO AMEND MOTION TO DISMISS COMPLANT

1    2020) (finding that plaintiff failed to state a claim where fiduciaries chose higher cost retail shares

2    over lower cost institutional shares of mutual funds)*; Marks,* 2020 WL 2504333, at *7–8 (same);

3    *White II*, 2017 WL 2352137, at *13–14 (finding "ample authority holds that merely alleging that a

4    plan offered retail rather than institutional share classes is insufficient to carry a claim for

5    fiduciary breach").

### b.  Collective Trusts

7    Second, Defendants argue that Plaintiffs' allegations regarding the availability of collective

8    trusts fail to state a claim for breach of the duty of prudence by the Committee Defendants.  Mot.

9    at 18.  Plaintiffs allege that "Collective trusts, also referred to as CITs, are akin to low-cost share

10   classes because many if not most mutual fund strategies are available in a collective trust format,

11   and the investments in the collective trusts are identical to those held by the mutual fund, except

12   they cost less." *See* Compl. at ¶ 94.  Plaintiffs identify twelve T. Rowe Price Retirement target

13   date funds offered by the Plan that Plaintiffs allege were available in collective trust form

14   throughout the Class Period and charged lower fees.  Accordingly, Plaintiffs allege that "[a]

15   prudent fiduciary conducting an impartial review of the Plan's investments would have identified

16   all funds that could be converted to collective trusts at the earliest opportunity." *Id.* at ¶¶ 99–100.

17   Defendants argue that Plaintiffs' allegations fail to state a claim for two reasons.  First,

18   Defendants argue that "the Committee did in fact replace the T. Rowe Price Retirement suite with

19   the collective trust 'F Class' version of these funds in 2018."  Mot. at 18.  Second, Defendants

20   argue that "the Committee was not required to offer any amount of collective trust investment

21   options even if those options carried lower investment management fees." *Id.*

22   The Court agrees with Defendants that Plaintiffs' allegations regarding the availability of

23   collective trust funds fail to state a claim for imprudence.  First, as several courts have

24   recognized, "plans are under no duty to offer alternatives to mutual funds, even when the

25   plaintiffs argue they are markedly superior." *Davis I*, 2020 WL 5893405, at *6 (quoting *Moitoso*

26   *v. FMR LLC*, 451 F. Supp. 3d 189, 212 (D. Mass. 2020)); *see also Hecker v. Deere & Co.*, 556

27   F.3d 575, 586 (7th Cir. 2009) (explaining that "[w]e see nothing in the [ERISA] statute that

28

20

United States District Court
Northern District of California

1    requires fiduciaries to include any particular mix of investment vehicles in their plan.").

2           Second, courts have repeatedly recognized that collective trusts "differ so much from

3    mutual funds . . . in terms of their regulatory and transparency features that other courts have

4    found it impossible to make an 'apples-to-oranges' comparison of the two."  *Moitoso*, 451 F.

5    Supp. 3d at 212; *see also Davis I*, 2020 WL 5893405, at *6 (same); *White v. Chevron Corp.*

6    ("*White I"*), 2016 WL 4502808, at *12 (N.D. Cal. Aug. 29, 2016) (same).  For example,

7    collective trusts, unlike mutual funds, "are not subject to the reporting, governance, and

8    transparency requirements of the Securities Act of 1933, 15 U.S.C. § 77a *et seq.*, and the

9    Investment Company Act of 1940, 15 U.S.C. § 80a-1 *et seq.*"  *Davis I*, 2020 WL 5893405, at *6

10   (quoting *Moitoso*, 451 F. Supp. 3d at 212).  As such, it is "inappropriate to compare [these]

11   distinct investment vehicles solely by cost, since their essential features differ so significantly,"

12   including mutual funds' "unique regulatory and transparency features."  *White I*, 2016 WL

13   4502808, at *12.

14          Accordingly, following other courts in this district, the Court finds that Plaintiffs'

15   allegations regarding Committee Defendants' failure to offer collective trust funds in place of the

16   T. Rowe Price Retirement target date funds fail to state a claim for breach of the duty of

17   imprudence.  *See, e.g.*, *Davis I*, 2020 WL 589305, at *6 (dismissing imprudence claim where

18   plaintiffs alleged that plan fiduciaries could have provided less costly collective trusts as

19   investment options).

20                    **c.  Lower Cost Passively Managed and Actively Managed Funds**

21          Third, Defendants argue that Plaintiffs' allegations regarding less expensive passively

22   managed and actively managed funds fail to state a claim for imprudence.  Mot. at 11.  In support

23   of their claim for breach of the duty of prudence, Plaintiffs allege that Committee Defendants

24   failed to consider materially similar and less expensive passively managed and actively managed

25   alternatives to the Plan's investment options.  Compl. at ¶¶ 105–113.  Specifically, Plaintiffs

26   allege that Plaintiffs have identified twenty funds offered by the Plan that "were more expensive

27   by multiples of comparable passively-managed and actively-managed alternative funds in the

28
     Case No. 20-CV-06081-LHK
     ORDER GRANTING WITH LEAVE TO AMEND MOTION TO DISMISS COMPLANT

United States District Court
Northern District of California

same investment style." *Id.* at ¶ 108.  Thus, Plaintiffs allege, Committee Defendants' "failure to investigate lower cost alternative investments (both actively and passively managed funds) during the Class Period cost the Plan and its participants millions of dollars." *Id.* at ¶ 113.

Defendants, by contrast, argue that Plaintiffs' allegations regarding lower cost passively managed and actively managed funds fail to state a claim for breach of the duty of prudence because "[s]imply claiming that other funds may be preferable based on price, alone, is not sufficient to state a fiduciary breach claim." Mot. at 11.  Defendants also argue that the fees charged by the funds that Plaintiffs challenge fall within the expense ratios characterized as unexceptional by the Ninth Circuit in *Tibble v. Edison International*, 729 F.3d 1110, 1135 (9th Cir. 2013), *vacated on other grounds*, 575 U.S. 523 (2015).

*Tibble* does not stand for such a hard and fast rule with respect to the prudence of particular fees.  Rather, the Ninth Circuit warned in *Tibble* that courts should not take a bright line approach when evaluating whether particular fees are prudent.  *Id.*  Thus, the fees challenged in this case must be evaluated against comparable investments, not the challenged fees considered by the Ninth Circuit in *Tibble*.

However, on its own, Committee Defendants' failure to select the investment with the lowest fees is not sufficient to plausibly state a claim for breach of the duty of prudence.  As the Seventh Circuit has explained, "nothing in ERISA requires every fiduciary to scour the market to find and offer the cheapest possible fund (which might, of course, be plagued by other problems)." *Hecker*, 556 F.3d at 586.  Thus, "[i]t is inappropriate to compare distinct investment vehicles solely by cost, since their essential features differ so significantly." *White I*, 2016 WL 4502808, at *12.

Plaintiffs do allege that the twenty challenged funds are more expensive than "comparable" and "materially similar" alternative funds.  *Id.* at ¶ 113.  However, as Defendants correctly argue, the deficiency with these allegations is that although Plaintiffs allege comparisons of the twenty challenged funds to "materially similar" and "comparable" funds, Plaintiffs have failed to provide sufficient allegations to support their claim that these other funds are adequate benchmarks against

Case No. 20-CV-06081-LHK
ORDER GRANTING WITH LEAVE TO AMEND MOTION TO DISMISS COMPLANT

United States District Court
Northern District of California

which to compare the performance of the challenged funds.  *See* Reply at 6.  Where a plaintiff claims that "a prudent fiduciary in like circumstances would have selected a different fund based on the cost or performance of the selected fund, [plaintiff] must provide a sound basis for comparison—a meaningful benchmark."  *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 833 (8th Cir. 2018).

However, simply labeling funds as "comparable" or "materially similar" is insufficient to establish that those funds are meaningful benchmarks against which to compare the performance of the challenged funds.  *Davis II*, 2021 WL 1428259, at *7 (explaining that merely labeling funds as "materially similar" to challenged funds is insufficient to establish a meaningful benchmark); *Anderson v. Intel Corporation*, 2021 WL 229235, at *8 (N.D. Cal. Jan. 21, 2021) (labeling funds as "comparable" or "a peer" is insufficient to demonstrate that funds are a meaningful benchmark).  Plaintiffs' complaint lacks factual allegations to support a finding that the funds that Plaintiffs identify therein provide a "meaningful benchmark" against which to evaluate the performance of the challenged funds.  *See Davis I*, 2020 WL 5893405, at *4 (dismissing claim for breach of the duty of prudence in part because Plaintiffs failed to plead sufficient facts to establish that allegedly comparable funds were a meaningful benchmark).

Without sufficient factual allegations to support Plaintiffs' argument that the complaint compares fees incurred by the challenged funds with a meaningful benchmark, the Court cannot discern whether Plaintiffs are comparing funds that have different "aims, different risks, and different potential rewards that cater to different investors."  *Davis v. Wash. Univ.*, 960 F.3d 478, 485 (8th Cir. 2020).  Accordingly, Plaintiffs' allegations regarding the availability of lower cost passively managed and actively managed funds are insufficient to state a claim for breach of the duty of prudence.

### d.  Expense Ratios

Fourth, much like Plaintiffs' allegations regarding lower cost passively managed and actively managed funds, Plaintiffs argue that several funds in the Plan were more expensive than comparable funds found in similarly sized plans.  Opp. at 5.  Specifically, Plaintiffs allege that

23

United States District Court
Northern District of California

1    eleven funds offered by the Plan "were more expensive than comparable funds found in similarly

2    sized plans."  Compl. at ¶¶ 78, 79.

3          However, as the Court has already explained, Committee Defendants' failure to select

4    funds with the lowest cost is insufficient to state a claim for breach of the duty of prudence.  This

5    is because "[i]t is inappropriate to compare distinct investment vehicles solely by cost, since their

6    essential features differ so significantly."  *White I*, 2016 WL 4502808, at *12.  Moreover, where a

7    plaintiff claims that "a prudent fiduciary in like circumstances would have selected a different

8    fund based on the cost or performance of the selected fund, [plaintiff] must provide a sound basis

9    for comparison—a meaningful benchmark."  *Meiners*, 898 F.3d at 833.  Simply labeling funds as

10   "comparable" is insufficient to establish that those funds are meaningful benchmarks against

11   which to compare the performance of the funds that Plaintiffs challenge.  *Davis II*, 2021 WL

12   1428259, at *7 (explaining that merely labeling funds as "materially similar" to challenged funds

13   is insufficient to establish a meaningful benchmark); *Anderson*, 2021 WL 229235, at *8 (labeling

14   funds as "comparable" or "a peer" is insufficient to demonstrate that funds are a meaningful

15   benchmark).  Plaintiffs' complaint lacks factual allegations to support a finding that the funds that

16   Plaintiffs identify therein provide a "meaningful benchmark" against which to compare the eleven

17   funds that Plaintiffs claim were too expensive.  *See Davis I*, 2020 WL 5893405, at *4 (dismissing

18   claim for breach of the duty of prudence in part because Plaintiffs failed to plead sufficient facts to

19   establish that allegedly comparable funds were a meaningful benchmark).

20         Accordingly, Plaintiffs' allegations regarding the availability of funds with lower expense

21   ratios are insufficient to state a claim for breach of the duty of prudence.

22              **e.  Recordkeeping Expenses**

23         Plaintiffs next allege that the Committee Defendants' imprudence is demonstrated by the

24   recordkeeping expenses paid by the Plan to Fidelity.  Opp. at 20.  Specifically, Plaintiffs first

25   allege that Committee Defendants paid Fidelity recordkeeping fees that were excessive based on

26   market comparisons.  Opp. at 21.  Specifically, Plaintiffs allege that the recordkeeping fees paid to

27   Fidelity during the Class Period ranged from $53 to $63 and that fees in this range are

28

United States District Court
Northern District of California

24

Case No. 20-CV-06081-LHK
ORDER GRANTING WITH LEAVE TO AMEND MOTION TO DISMISS COMPLANT

United States District Court
Northern District of California

unreasonable in comparison to other funds of similar sizes.  Compl. at ¶¶ 123, 126.  Second, Plaintiffs allege that Committee Defendants failed to stay informed and evaluate the recordkeeping fees paid to Fidelity by conducting a Request for Proposal ("RFP") every three to five years to solicit competitive bids for recordkeeping services.  *Id.* at ¶ 121.  Defendants argue that these allegations fail to state a claim because Plaintiffs (1) fail to allege that recordkeeping fees paid to Fidelity were high when compared with recordkeepers offering services similar to those provided to the Plan; and (2) there is no obligation to conduct frequent RFPs as a fiduciary under ERISA.  Mot. at 19–21.

First, Defendants are correct that Plaintiffs have failed to allege that the fees paid by the Plan for recordkeeping services were excessive in relation to the services actually provided to the Plan.  "Federal district courts in California have held that a plaintiff must plead administrative fees that are excessive in relation to the *specific services* the recordkeeper provided to the specific plan at issue."  *Wehner v. Genetech, Inc.*, 2021 WL 507599, at *5 (N.D. Cal. Feb. 9, 2021) (emphasis added).  Thus, in order to state a claim for breach of the duty of prudence, a plaintiff must allege "facts from which one could infer that the *same services* were available for less on the market."  *White I*, 2016 WL 4502808, at *14 (emphasis added); *Kong v. Trader Joe's Co.* ("*Kong I*"), 2020 WL 5814102, at *5 (C.D. Cal. Sept. 24, 2020) (same).

In the instant case, Plaintiffs fail to provide any allegations regarding the specific services actually provided to the Plan by Fidelity.  Nor do Plaintiffs provide any allegations regarding the fees paid by plans receiving the same or materially similar services.  Instead, Plaintiffs only provide general statistics regarding the fees paid by plans of similar sizes.  For example, Plaintiffs allege that fees paid by the Plan "are well above recognized reasonable rates for large plans which typically average around $35 per participant, with costs coming down every day."  Compl. at ¶ 129.  However, Plaintiffs provide no basis for how they arrived at the $35 per participant figure.  Moreover, Plaintiffs provide no allegations regarding the average costs paid by plans receiving services that are the same or materially similar to those provided by Fidelity to the Plan in the instant case.  Accordingly, the Court finds that Plaintiffs have failed to "plead administrative fees

25

that are excessive in relation to the specific services the recordkeeper provided to the specific plan at issue." *Wehner*, 2021 WL 507599, at *5.

Second, Plaintiffs argue that Committee Defendants breached the fiduciary duty of prudence by failing to conduct an RFP every three to five years and otherwise monitor the recordkeeping fees paid by the Plan. Opp. at 21. However, as Defendants correctly point out, courts in this circuit have repeatedly held that fiduciaries are under no obligation to regularly conduct competitive bidding for recordkeeping services. *See, e.g., Kong I*, 2020 WL 5814102, at *6 (explaining that "nothing in ERISA compels periodic competitive bidding" (quoting *White I*, 2016 WL 4502808, at *14)); *Marks*, 2020 WL 2504333, at *7 (same); *Del Castillo v. Community Child Care Council of Santa Clara County, Inc.*, 2019 WL 6841222, at *5 (N.D. Cal. Dec. 16, 2019) (explaining that "absence of competitive bidding . . . without more, does not support Plaintiffs' allegations that the [defendants] acted imprudently").

Moreover, "Plaintiffs have failed to allege any facts from which one could infer that a competitive bidding service would have benefitted the Plan," such as allegations that the specific services offered by Fidelity "might have even been available on the market for less." *Kong I*, 2020 WL 5814102, at *6. Accordingly, Plaintiffs' allegation regarding Committee Defendants' failure to engage in more frequent competitive bidding for recordkeeping services fails to state a claim for breach of the duty of prudence. *Id.* (dismissing similar claims regarding failure to solicit competitive bids for recordkeeping services).

Accordingly, the Court finds that Plaintiffs' allegations regarding the allegedly high recordkeeping fees paid to Fidelity by the Plan fail to state a claim for breach of the duty of prudence.

In sum, whether considered individually or collectively, Plaintiffs' allegations are insufficient to state a claim for breach of the duty of prudence. *See Davis II*, 2021 WL 1428259, at *7 (explaining that allegations, whether viewed individually or collectively, are insufficient to state a claim for imprudence).

### 2.  Breach of the Duty of Loyalty

Case No. 20-CV-06081-LHK
ORDER GRANTING WITH LEAVE TO AMEND MOTION TO DISMISS COMPLANT

United States District Court
Northern District of California

1   Plaintiffs next allege that the Committee Defendants breached their duty of loyalty under

2   ERISA § 404(a).  Compl. at ¶¶ 124, 131; Opp. at 23.  ERISA § 404(a) requires plan fiduciaries to

3   act "solely in the interest of the participants and beneficiaries" of the plan, and "for the exclusive

4   purpose of . . . providing benefits to participants and their beneficiaries." *Id.* § 1104(a)(1)(A).  As

5   such, plan fiduciaries must act "with an eye single to the interests of the participants and

6   fiduciaries." *White I*, 2016 WL 4502808, at *4 (quoting *Donovan v. Bierwirth*, 680 F.2d 263, 271

7   (2nd Cir. 1982)).

8   Plaintiffs argue that the Committee Defendants breached their duty of loyalty by selecting

9   high cost investments with revenue sharing in order to use a portion of the fees generated by

10   revenue sharing to pay Fidelity inflated fees.  Opp. at 23.  Plaintiffs further allege that "these

11   actions support a strong inference Defendant's [sic] actions, were taken (1) to save itself costs at

12   the expense of Plan participants, and/or (2) to favor its recordkeepers over the Plan participants."

13   *Id.*  Plaintiffs admit that they have "pled a breach of the intertwined fiduciary duties of loyalty and

14   prudence as a single count," rather than providing allegations specifically concerning Committee

15   Defendants' alleged breach of the duty of loyalty.  *Id.*

16   Defendants in turn argue first that Plaintiffs have failed to plead any allegations that

17   support Plaintiffs' claim that the Committee Defendants acted disloyally.  Mot. at 23.  Defendants

18   argue that Plaintiffs have provided only allegations of imprudence, which is a distinct breach of

19   fiduciary duty under ERISA § 404(a).  Second, Defendants argue that Plaintiffs' breach of the

20   duty of prudence allegations regarding revenue sharing cannot state a claim for breach of the duty

21   of loyalty.  *Id.*

22   The Court agrees.  First, the duty of prudence and the duty of loyalty are two different

23   requirements under ERISA § 404(a), and courts in this district dismiss claims for breach of the

24   duty of loyalty when those claims hinge entirely on breach of the duty of prudence allegations.

25   *See, e.g., White II*, 2017 WL 2352137, at *6–9 (noting that ERISA § 404(a) distinguishes the duty

26   of loyalty from the duty of prudence and noting that plaintiffs' allegations regarding high fees

27   were allegations of imprudence, not disloyalty); *Romero v. Nokia, Inc.*, 2013 WL 5692324, at *5

28   

27

1   (N.D. Cal. Oct. 15, 2013) (dismissing claim for breach of the duty of loyalty where it hinged

2   entirely on breach of the duty of prudence allegations).

3       Furthermore, even if the Court were to construe Plaintiffs' allegations regarding the

4   Committee Defendants' disloyalty as distinct from the breach of the duty of prudence allegations,

5   the Court finds that Plaintiffs have failed to provide sufficient allegations to establish a conflict of

6   interest or self-dealing on the part of the Committee Defendants. *See Terraza*, 241 F. Supp. 3d at

7   1069 (noting that the duty of loyalty prevents fiduciaries from "engaging in transactions that

8   involve self-dealing or that otherwise involve or create a conflict between the trustee's fiduciary

9   duties and personal interests"). Specifically, Plaintiffs argue in the opposition brief that

10  Committee Defendants selected investments with revenue sharing to "(1) to save itself costs at the

11  expense of Plan participants, and/or (2) to favor its recordkeepers over the Plan participants."

12  Opp. at 23.

13      However, Plaintiffs fail to point to any allegations in the complaint that support either

14  claim and the Court cannot identify any allegations that support Plaintiffs' claim. Absent

15  sufficient allegations that Committee Defendants conducted their fiduciary duties in a manner that

16  evinced a conflict of interest or self-dealing on the part of the Committee Defendants, Plaintiffs

17  have failed to state a claim for breach of the duty of loyalty. The Court therefore finds that

18  Plaintiffs have failed to state a claim for breach of the fiduciary duty of loyalty under ERISA §

19  404(a).

20      Accordingly, the Court finds that Plaintiffs' allegations regarding Committee Defendants'

21  alleged breaches of the duty of prudence and loyalty are insufficient to state a claim under ERISA

22  § 404(a). The Court therefore GRANTS Defendants' motion to dismiss Count I against the

23  Committee Defendants. Because granting Plaintiffs an opportunity to amend the complaint would

24  not be futile, cause undue delay, or unduly prejudice Defendants, and Plaintiffs have not acted in

25  bad faith, the Court grants leave to amend. *See Leadsinger*, 512 F.3d at 532.

26      **C. Count II: Failure to Monitor**

27      Defendants next argue that Plaintiffs' derivative claims necessarily fail because Plaintiffs

28

*United States District Court*
*Northern District of California*

28

have not plausibly alleged a primary violation of ERISA § 404(a).  Mot. at 24.  The Court agrees.

Plaintiffs allege that NVIDIA and the Board Defendants, who had the authority to appoint and

remove members of the 401(k) Benefits Plan Committee, breached their fiduciary duty by failing

to monitor the Committee Defendant appointees and by failing to remove those appointees.

Compl. at ¶¶ 139–45.  However, Plaintiffs' failure to monitor claim necessarily fails because

Plaintiffs have failed to state an underlying ERISA violation.  As such, Plaintiffs have failed to

state a claim for failure to monitor.  *See, e.g., In re HP ERISA Litig.*, 2014 WL 1339645, at *8

(N.D. Cal. April 2, 2014) (dismissing claims for failure to monitor and knowing participation in

co-fiduciaries' breaches of duty because these claims were derivative of the claims for breach of

the duties of prudence and disclosure); *Davis I*, 2020 WL 5893405, at *7 (dismissing failure to

monitor claim because plaintiffs had failed to state an underlying breach of fiduciary duty claim).

Accordingly, the Court GRANTS Defendants' motion to dismiss Count II against NVIDIA

and the Board Defendants.  Because granting Plaintiffs an opportunity to amend the complaint

would not be futile, cause undue delay, or unduly prejudice Defendants, and Plaintiffs have not

acted in bad faith, the Court grants leave to amend.  *See Leadsinger*, 512 F.3d at 532.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss Counts I and II of Plaintiffs'

complaint is GRANTED with leave to amend.  Should Plaintiffs choose to file an amended

complaint, they must do so within 30 days of this Order.  Failure to do so, or failure to cure the

deficiencies identified in this Order and in Defendants' motion to dismiss, will result in dismissal

of Plaintiffs' deficient claims with prejudice.  Plaintiffs may not add new claims or parties without

a stipulation or leave of the Court.  If Plaintiffs choose to file an amended complaint, Plaintiffs

must also file a redlined version of the amended complaint identifying the amendments.

**IT IS SO ORDERED.**

Dated: September 13, 2021

*Lucy H. Koh*
_____
LUCY H. KOH
United States District Judge

Case No. 20-CV-06081-LHK
ORDER GRANTING WITH LEAVE TO AMEND MOTION TO DISMISS COMPLANT