ROSMAN & GERMAIN LLP
Daniel L. Germain (Bar No. 143334)
16311 Ventura Boulevard
Suite 1200
Encino, CA  91436-2152
Telephone: (818) 788-0877
Facsimile: (818) 788-0885
E-Mail: Germain@Lalawyer.com

Counsel for Plaintiffs and the Putative Class

[Additional Counsel Listed on Signature Page]

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINA TOBIAS, ANTHONY BRIGGS, ANN MACDONALD and DAVID CALDER, individually and on behalf of all others similarly, <br><br> Plaintiffs, <br> v. <br><br> NVIDIA CORPORATION, THE BOARD OF DIRECTORS OF NVIDIA CORPORATION, THE 401(K) BENEFITS PLAN COMMITTEE OF NVIDIA CORPORATION, and JOHN DOES 1-30 <br><br> Defendants | CIVIL ACTION NO.: <br><br> 5:20-cv-06081-LHK <br><br><br> **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT** |

_____
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT

**TABLE OF CONTENTS**

I.     INTRODUCTION ...............................................................................................1

II.    STANDARD OF REVIEW ................................................................................3

III.   STATEMENT OF FACTS .................................................................................4

       A.     The Totality of Facts Give Rise to the Plausible Inference that Defendants
              Lacked A Prudent Process to Select and Monitor Plan  Investments ..............5

              1.   Many of the Plan's Mutual Funds Had Investment anagement Fees In
                   Excess of Fees for Funds in Similarly-Sized Plans ...............................5

              2.   Many of the Plan's Primary Mutual Funds Were Not in the Lowest Fee
                   Share Class Available to the Plan During the Class Period...................5

              3.   Failure to Investigate Availablilty of Lower-Cost Collective Trusts......6

              4.   Failure to Utilize Lower Cost Passively-Managed and Actively-
                   Managed Funds.....................................................................................6

              5.   Fidelity Received Unreasonable Fees at the Expense of Plan
                   Participatios.........................................................................................6

IV.    ARGUMENT.....................................................................................................7

       A.     Plaintiffs' Complaint Should Be Considered as a Whole, Not Parsed
              Paragraph By Paragraph..................................................................................7

       B.     Plaintiffs' Complaint Pleads Facts to Support a Plausible Claim that
              Defendants Implemented A Flawed Process for Selecting the Plan's
              Investment Options.........................................................................................11

              1.   Defendants Breached Their Fiduciary Duty By Maintaining Higher-
                   Cost Mutual Fund Shares When Identical Lower-Cost Shares Were
                   Available ............................................................................................11

              2.   ERISA Required Defendants to Timely Offer CITs Under the
                   Prevailing Circumstances ...................................................................17

              3.   Under the Prevailing Circumstances, Defendants Were Required to
                   Investigage the Prudence of Offering Other Passively and Actively-
                   Manged Investment Options ...............................................................18

_____
_____
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION
COMPLAINT

4.      The Fee Related and Performance Comparisons in Plaintiffs' Complaint Are Plausibly Alleged..........................................................20

C.      Defendants Breached Their Fiduciary Duties in Failing to Monitor the Plan's Recordkeeping Fees ...................................................................22

1.      The Plan's Recordkeeping Fees Were Excessive Based on Market Comparitons for Plan's of Similar Sizes ...............................................22

2.      Defendants Failed to Stay Informed About Overall Trends In the Marketplace Regarding Recordkeeping Fees.......................................23

D.      The Complaint Alleges Sufficient Facts to State A Claim for Failure to Monitor...................................................................................................25

V.      CONCLUSION ....................................................................................................25

## TABLE OF AUTHORITIES

**Cases**

*Baird et al. v. BlackRock Inst. Trust Co.*,
403 F.Supp.3d 765 (N.D. Cal. 2019) ............................................................................... 16, 20

*Bell v. Pension Committee of ATH Holding Company, LLC*,
2019 WL 387214 (S.D. Ind. Jan. 30, 2019) ........................................................................ 18

*Bell v. Pension Committee of ATH Holding Company, LLC*,
2017 WL 1091248 (S.D. Ind. March 23, 2017)................................................................... 24

*Bilello v. Estee Lauder, Inc., et al.*,
No. 1:20-cv-04770-JMF (S.D.N.Y., June 7, 2021)............................................................... 3

*In re Biogen ERISA Litig.*,
2021 WL 3116331 (D. Mass. July 22, 2021)..................................................................... 3, 25

*Blackmon v. Zachary Holdings, Inc.*,
2021 WL 2190907 (W.D. Tex. April 22, 2021) ..................................................................... 3

*Boley v. Universal Health Serv., Inc.*,
498 F.Supp.3d 715 (E.D. Pa. 2020) ...................................................................................... 3

*Bouvy v. Analog Devices, Inc.*,
2020 WL 3448385 (S.D. Cal. June 24, 2020)............................................................. 2, 3, 4, 21

*Braden v. Wal-Mart Stores, Inc.*,
588 F.3d 585 (8th Cir. 2009) ....................................................................................... Passim

*Brotherston v. Investments LLC*,
2016 WL 1397427 (D. Mass. April 7, 2016).......................................................................... 13

*Brotherston et al. v. Putnam Investments,* LLC,
907 F.3d 17 (1st Cir. 2018)................................................................................................... 19

*Cassell v. Vanderbilt*,
285 F.Supp.3d 1056 (M.D. Tenn. 2018)................................................................................ 16

*Creamer v. Starwood Hotels & Resorts Worldwide, Inc.*,
2017 WL 2909408 (C.D. Cal. May 1, 2017) ........................................................................ 14

*Cryer v. Franklin Templeton Resources Inc.*,
2017 WL 818788 (N.D. Cal. Jan. 17, 2017) ................................................................. 21

*Cunningham v. Cornell Univ.*,
2017 WL 4358769 (S.D.N.Y. Sept. 29, 2017) ........................................................... 9, 13

*Cunningham v. Cornell Univ.*,
2019 WL 4735876 (S.D.N.Y. Sept. 27, 2019).............................................................. 22

*Davis v. Magna Int'l of America, Inc.*,
2021 WL 1212579 (E.D. Mich. March 31, 2021) ............................................... 3, 20, 25

*Davis v. Salesforce.com, Inc.*,
No. 20-cv-1753, 2020 WL 5893405 (N.D. Cal. Oct. 5, 2020) ...................................... 12

*Davis v. Salesforce.com*,
2021 WL 1428259 (N.D. Cal. Apr. 15, 2021) ............................................................... 12

*Davis v. Salesforce*,
21-15867 (9th Cir.) ....................................................................................................... 12

*Davis, et al. v. Washington U.*,
960 F.3d 478 (8th Cir. 2020) ............................................................................. 2, 13, 21

*Dearing, et al. v. IQIVIA, Inc., et al.*,
No 1:20-cv-00574-WO-JEP (M.D.N.C. Sept. 21, 2021)................................................. 3

*Del Castillo v. Cmty. Child Care Council of Santa Clara Cty. Inc.*,
2019 WL 6841222 (N.D. Cal. Dec. 16, 2019) .............................................................. 24

*Disselkamp v. Norton Healthcare, Inc.*,
2019 WL 3536038 (W.D. Ky. Aug. 2, 2019) .......................................................... 12, 16

*Falberg v. Goldman Sachs Group, Inc.*,
2020 WL 3893285 (S.D.N.Y. July 9, 2020) ........................................................... 16, 17

*Fujitsu*,
250 F.Supp.3d ............................................................................................................... 25

*Garcia v. Alticor, Inc.*,
No. 1:20-cv-01078-PLM-PJG (W.D. Mich. Aug. 9, 2021)............................................ 3

*Hecker v. Deer & Co.*,
556 F.3d 575 (7th Cir. 2009) ....................................................................................... 24

*Henderson v. Emory Univ.*,
252 F.Supp.3d 1344 (N.D. Ga. May 10, 2017)............................................................................... 19

*Huang, et al. v. TriNet HR III, Inc., et al.*,
2022 WL 93571 (M.D. Fla. Jan. 10, 2022)...................................................................... 3, 4, 25

*Hughes v. Northwestern Univ.*,
953 F.3d 980 (7th Cir. 2020), *cert. granted* (U.S. July 2, 2021) (No. 19-1401) .......................... 26

*Johnson v. Fujitsu Tech. and Bus. Of Am., Inc.*,
250 F. Supp.3d 460 (N.D. Cal. 2017) ....................................................................... 12, 14, 18, 26

*Johnson v. Providence Health & Servs. et al.*,
2018 WL 1427421 (W.D. Wash. Mar. 22, 2018) ................................................................Passim

*Jones v. Coca-Cola Consolidated, Inc.*,
2021 WL 1226551 (W.D.N.C. March 31, 2021) ............................................................................. 3

*Kendall et al v. Pharmaceutical Product Development, LLC*,
2021 WL 1231415 (E.D.Pa. Mar. 31, 2020)..................................................................................... 3

*Khan v. PTC, Inc.*,
No. 1:20-cv-11710-WGY (D. Mass. April 6, 2021)........................................................................ 3

*Khoja v. Orexigen Therapeutics*,
899 F.3d 988 (9th Cir. 2018) .......................................................................................................... 4

*Kong v. Trader Joe's Co.*,
2020 WL 7062395 (C.D. Cal. Nov. 30, 2020) ("*Kong II*") .......................................................... 11

*Kong v. Trader Joe's Co.*,
No. 20-56415 (9th Cir.) ................................................................................................................. 11

*Krueger v. Ameriprise Fin., Inc.*,
2012 WL 5873825 (D. Minn. Nov. 20, 2012) ........................................................................ 13, 25

*Kruger et al. v. Novant Health, Inc.*,
131 F.Supp.3d 470 (M.D.N.C. 2015) .............................................................................. 11, 16, 25

*Loomis v. Exelon Corp.*,
658 F.3d 670 (7th Cir. 2011) ......................................................................................................... 24

*Lorenz et al. v. Safeway*,
241 F.Supp.3d 1005 (N.D. Cal. 2017) ........................................................................................... 17

*Main v. Am. Airlines, Inc.*,
248 F.Supp.3d 786 (N.D. Tex. 2017) ............................................................................. 21

*Marks v. Trader Joe's Company,*
2020 WL 2504333 (C.D. Cal. Apr.24, 2020) ................................................................. 17

*Marshall v. Northrop Grumman Corp.*,
2019 WL 4058583 (C.D. Cal. Aug. 14, 2019)................................................................ 18

*Martin v. CareerBuilder*,
2020 WL 3578022 (N.D. Ill. July 1, 2020)...................................................................... 9

*McCool v. AHS Management Company, Inc.*,
2021 WL 826756 (M.D. Tenn. March 4, 2021)................................................... 3, 21, 22

*McGowan v. Barnabas Health, Inc.*,
2021 WL 1399870 (D.N.J. April 13, 2021) ..................................................................... 3

*McNeilly v. Spectrum Health Sys.*,
No. 1:20-cv-00870-PLM-PJG (W.D. Mich. July 16, 2021) ........................................... 3

*In re Medstar ERISA Litig.*,
2021 WL 391701 (D. Md. Feb. 4, 2021) ......................................................................... 3

*Meiners v. Wells Fargo & Co.*,
2017 WL 2303968 (D. Minn, May 25, 2017)............................................................ 9, 11

*Meiners. Meiners v. Wells Fargo & Co.*,
 898 F.3d 820 (8th Cir. 2018) ........................................................................................ 22

*Moitoso v. FMR LLC, et al.*,
2020 WL 1495938 (D. Mass. Mar. 27, 2020)................................................................ 25

*Moreno v. Deutsche Bank*,
2016 WL 5957307 (S.D.N.Y. Oct. 13, 2016) .......................................................... 10, 13

*In re M&T Bank Corp. ERISA Litig.*,
2018 WL 4334807 (WDNY Sept. 11, 2018) .................................................................. 18

*New Orleans Employers Int'l Longshoremen's Ass'n, AFL-CIO Pension Fund v. Mercer Inv. Consultants*,
635 F. Supp. 2d 1351 (N.D. Ga. 2009) .......................................................................... 22

*Nicolas v. Trustees of Princeton Univ.*,
2017 WL 4455897 (D.N.J. Sept. 25, 2017) .............................................................. 13, 20

*Nunez v. B. Braun Medical, Inc.*,
No. 5:20-cv-04195-EGS (E.D. Pa. June 4, 2021) ............................................................... 3

*In re Omnicom ERISA Litig.*,
2021 WL 3292487 (S.D.N.Y. Aug. 2, 2021) .............................................................. 3, 25

*Parmer, et al. v. Land O'Lakes, Inc., et al.*,
2021 WL 464382 (D. Minn. Feb 9, 2021) ................................................................... 3, 25

*Peterson, et al. v. Insurance Offices, Inc., et al.*,
2021 WL 1382168 (D.N.J. April 13, 2021) ................................................................ 3, 25

*Pinnell, et al. v. Teva, et al.*,
2020 WL 1531870 (E.D. Pa. Mar. 31, 2020) ........................................................... Passim

*In re Prime Healthcare ERISA Litig.*,
2021 WL 3076649 (C.D. Cal. July 16, 2021) ..................................................................... 3

*In re Quest Diagnostics Inc. ERISA Litig.*,
2021 WL 1783274 (D.N.J. May 4, 2021) ........................................................................... 3

*Ramos et al. v. Banner Health,*
2017 WL 4337598 (D. Col. Sept. 29, 2017) ............................................................. 20, 25

*Reetz v. Lowe's Companies, Inc.*,
2019 WL 4233616 (W.D.N.C Sept. 6, 2019) .................................................................. 11

*Rollins v. Dignity Health*,
398 F.Supp.3d 1025 (N.D. Cal. 2018) ............................................................................... 4

*Rosen v. Prudential Ret. Ins. & Annuity Co.*,
2016 WL 7494320 (D. Conn. Dec. 30, 2016) ................................................................... 9

*Sacerdote v. NYU*,
9 F.4th 95 (2d 2021) .......................................................................................................... 2

*Short v. Brown* U.,
320 F.Supp.3d 363, 370 (D.R.I. July 11, 2018) .............................................................. 24

*Silva v. Evonik Corp.,*
2020 U.S. Dist. LEXIS 250206 (D.N.J. Dec. 30, 2020) ............................................ 3, 9, 17, 21

*Starr v. Baca*,
652 F.3d 1202 (9th Cir. 2011) .......................................................................................... 4

*Sweda v. Univ. of Pennsylvania*,
923 F.3d 320 (3d Cir. 2019)................................................................................ 4, 17

*Terraza v. Safeway, Inc.*,
241 F.Supp.3d 1057 (N.D. Cal. 2017) ....................................................................Passim

*Tibble v. Edison Int'l*,
135 S. Ct. 1823 (2015).......................................................................................... 5, 21

*Tibble v. Edison Int'l*,
843 F.3d 1187 (9th Cir. 2016) ("*Tibble III*") ....................................................... 2, 17

*Tibble v. Edison Int'l*,
2017 WL 3523737 (C.D. Cal. Aug. 16, 2017)..................................................... 13, 15

*Tobias v. NVIDIA Corp.*,
2021 WL 4148706 (N.D. Cal. Sept. 13, 2021) ......................................... 8, 12, 13, 14

*Tracey v. Massachusetts Inst. of Tech.*,
2017 WL 4453541 (D. Mass. Aug. 31, 2017) ..................................................... 18, 26

*Troudt v. Oracle Corp.*,
2017 WL 1100876 (D. Col. Mar. 22, 2017) ....................................................... 16, 19

*Urakhchin v. Allianz Asset Mgmt. of Am., L.P.,*
2016 WL 4507117 (C.D. Cal. Aug. 5, 2016)............................................................. 2

*White v. Chevron Corp.*,
2017 WL 2352137 (N.D. Cal. May 31, 2017) ("*White II*")......................................... 17

*Wildman, et al. v. Am. Century Serv., LLC., et al.*,
237 F. Supp. 3d 902 (W.D. Mo. 2017) ......................................................... 6, 14, 20

**Other Sources**

*401(k) Averages Book* (20th ed. 2020) .................................................................... 23

*Assembling a Robust Investment Policy Statement for Endowments and Foundations*,
THE PNC FINANCIAL SERVICES GROUP, INC., Jan. 8, 2020............................................ 22

Cristina Tobias, Anthony Briggs, Ann MacDonald and David Calder ("Plaintiffs"), by and through their attorneys, respectfully submit their opposition to Defendants'[1] Motion to Dismiss Plaintiffs First Amended Class Action Complaint.[2]

## I. INTRODUCTION

The Court's decision on Defendants' motion to dismiss comes down to whether Plaintiffs have alleged enough facts to allege a plausible claim that gets them over the pleading finish line. Plaintiffs' amended complaint addresses the deficiencies the Court identified in the Order granting Defendants' motion to dismiss the initial complaint.[3] Plaintiffs' primary claim is that throughout the putative Class Period (August 28, 2014 through the date of judgment),[4] Defendants selected a slate of T.Rowe Price investment options for the NVIDIA Corporation 401(k) Plan (the "Plan") that were imprudent due to their high fees where *identical* alternative funds – differing only in price – were available in the marketplace. In other words, Defendants *had no need to scour the marketplace for cheaper funds* because an identical version of the funds was already in the Plan. This Court previously held, "[t]he Court can reasonably infer from this allegation Defendants acted imprudently by selecting the more expensive options, all else being equal." *Terraza v. Safeway, Inc.*, 241 F.Supp.3d 1057, 1077 (N.D. Cal. 2017). Having control of a $1 billion plan required the fiduciaries to leverage the Plan's considerable size – among the largest in the country – to obtain better investment products that were available. Simply put, "a trustee cannot ignore the power the trust wields to obtain favorable investment products…substantially identical – other than

---

[1] "Defendants" refers to NVIDIA Corporation ("NVIDIA"), The Board of Directors of NVIDIA Corporation (the "Board"), The 401(k) Benefits Plan Committee of NVIDIA Corporation (the "Committee"), and John Does 1-30.

[2] Defendants' Notice of Motion and Motion to Dismiss Plaintiffs' First Amended Class Action Complaint; Memorandum of Points and Authorities In Support Thereof (ECF No. 52) is referred to herein as "Defs. Mem." All references to "¶," "Cmplt.," or "Complaint" are to the Amended Class Action Complaint (ECF No. 51).

[3] "Order" refers to the Order Granting With Leave to Amend Motion to Dismiss Complaint (ECF No. 44) and *Tobias v. NVIDIA Corp.*, 2021 WL 4148706 (N.D. Cal. Sept. 13, 2021).

[4] Capitalized and undefined terms shall be ascribed the same meaning provided in the Complaint.

their lower cost – to products the trustee has already selected." *Tibble v. Edison Int'l*, 843 F.3d 1187, 1198 (9th Cir. 2016) ("*Tibble III*").

As addressed below, Plaintiffs "plead charts, comparative studies, and specific facts necessary to proceed into discovery." *Pinnell, et al. v. Teva, et al.*, 2020 WL 1531870, at *1 (E.D. Pa. Mar. 31, 2020) (denying defendants' motion to dismiss where plaintiffs like here alleged defendants failed to select lower cost T.Rowe Price share classes or collective trusts). The Eighth Circuit addressed a nearly identical fact pattern in *Davis, et al. v. Washington U.*, 960 F.3d 478 (8th Cir. 2020). Plaintiffs in *Davis* alleged the failure to replace certain shares with their lower-cost counterparts breached WashU's fiduciary duty because higher fees led to lower overall returns. *Id.* at 483. Defendants responded that the high-cost shares provided revenue sharing that paid for plan costs. *Id.* The Eighth Circuit stated:

> WashU has identified one plausible inference, but it is not the only one. On a motion to dismiss, we must draw every reasonable inference in favor of the plaintiffs. So the fact that mismanagement is another plausible inference means that this claim cannot end here.

*Id.* at 483 (emphasis added). The Second Circuit similarly concluded the plaintiffs' allegations "that 'the only difference between the various share classes is fees,' and that large investors like the Plans 'can obtain [institutional] share classes with far lower costs than retail mutual fund shares'" adequately pled a lower-share class claim. *Sacerdote v. NYU*, 9 F.4th 95, 105 (2d 2021). Just like in *Davis* and *Sacerdote*, Plaintiffs have identified a plausible inference of mismanagement (*e.g.*, selection of higher-cost identical funds as well as numerous other *indicia* of imprudence) in order to survive a motion to dismiss. *See Bouvy v. Analog Devices, Inc.*, 2020 WL 3448385 (S.D. Cal. June 24, 2020) (joining the overwhelming majority of Ninth Circuit district courts that have upheld allegations analogous to those pled here.).[5]

---

[5] *See also Johnson v. Providence Health & Servs. et al.*, 2018 WL 1427421, at * 6 (W.D. Wash. Mar. 22, 2018) (upholding excessive fee claim); *Urakhchin v. Allianz Asset Mgmt. of Am., L.P.,* 2016 WL 4507117 (C.D. Cal. Aug. 5, 2016) (same).

Defendants not surprisingly fail to acknowledge the avalanche of decisions – no less than **twenty-three** to date that have upheld almost identical claims.[6]  Additionally, contrary to Defendants' assertion, the Complaint's primary claim does not compare distinct investment vehicles solely by cost.  It only compares **identical** investments by cost.  Lastly, the Plan's recordkeeping fees were unreasonable because they were above market rates when looking at suitable benchmarks such as other comparable plans and fee surveys.  For these reasons, Defendants' motion should be denied.

## II.  STANDARD OF REVIEW IN ERISA ACTIONS

When considering a motion to dismiss under Rule 12(b)(6), "the Court 'accept[s] the plaintiffs' allegations as true and construe[s] them in the light most favorable to the plaintiffs." *Bouvy*, 2020 WL 3448385, at *3 (citations omitted).  Of particular importance here, "[i]n an ERISA case, 'a complaint does

---

[6] *See, e.g., Huang, et al. v. TriNet HR III, Inc., et al.*, 2022 WL 93571 (M.D. Fla. Jan. 10, 2022) (upholding allegations that plan fiduciaries selected higher-cost investment options when lower cost options were available and overpaid for recordkeeping); *Dearing, et al. v. IQIVIA, Inc., et al.*, No 1:20-cv-00574-WO-JEP (ECF No. 30) (M.D.N.C. Sept. 21, 2021) (same) (attached to Gyandoh Decl. as Exhibit 1); *Garcia v. Alticor, Inc.,* No. 1:20-cv-01078-PLM-PJG (ECF No. 22), at *6 (W.D. Mich. Aug. 9, 2021) (same) (Gyandoh Decl. as Exhibit 2); *In re Omnicom ERISA Litig.*, 2021 WL 3292487 (S.D.N.Y. Aug. 2, 2021) (same); *In re Biogen ERISA Litig.*, 2021 WL 3116331 (D. Mass. July 22, 2021) (same); *In re Prime Healthcare ERISA Litig.*, 2021 WL 3076649 (C.D. Cal. July 16, 2021) (same); *McNeilly v. Spectrum Health Sys.*, No. 1:20-cv-00870-PLM-PJG (ECF No. 21) slip op. (W.D. Mich. July 16, 2021) (same) (attached to Gyandoh Decl. as Exhibit 3); *Khan v. PTC, Inc.*, No. 1:20-cv-11710-WGY (ECF No. 34) (D. Mass. April 6, 2021) (same); *Bilello v. Estee Lauder, Inc., et al.*, No. 1:20-cv-04770-JMF (ECF No. 67) (S.D.N.Y., June 7, 2021) (same) (attached to Gyandoh Decl. as Exhibit 4); *Nunez v. B. Braun Medical, Inc.*, No. 5:20-cv-04195-EGS (ECF 49) slip op. (E.D. Pa. June 4, 2021) (same) (attached to Gyandoh Decl. as Exhibit 5); *In re Quest Diagnostics Inc. ERISA Litig.*, 2021 WL 1783274 (D.N.J. May 4, 2021) (same); *Blackmon v. Zachary Holdings, Inc.*, 2021 WL 2190907 (W.D. Tex. April 22, 2021) (same); *Peterson, et al. v. Insurance Offices, Inc., et al.*, 2021 WL 1382168 (D.N.J. April 13, 2021) (same); *McGowan v. Barnabas Health, Inc.*, 2021 WL 1399870 (D.N.J. April 13, 2021) (same); *Kendall et al v. Pharmaceutical Product Development, LLC*, 2021 WL 1231415, at * 8, 10 (E.D.Pa. Mar. 31, 2020) (same);  *Davis v. Magna Int'l of America, Inc.*, 2021 WL 1212579 (E.D. Mich. March 31, 2021) (same); *Jones v. Coca-Cola Consolidated, Inc.*, 2021 WL 1226551 (W.D.N.C. March 31, 2021) (same); *McCool v. AHS Management Company, Inc.*, 2021 WL 826756 (M.D. Tenn. March 4, 2021) (same); *Parmer, et al. v. Land O'Lakes, Inc., et al.*, 2021 WL 464382 (D. Minn. Feb 9, 2021) (same); *In re Medstar ERISA Litig.*, 2021 WL 391701 (D. Md. Feb. 4, 2021) (same); *Silva v. Evonik Corp.*, 2020 U.S. Dist. LEXIS 250206 (D.N.J. Dec. 30, 2020) (same); *Pinnell, et al. v. Teva Pharmaceuticals USA, Inc., et al.*, 2020 WL 1531870 (E.D.Pa. Mar. 31, 2020) (same); *Boley v. Universal Health Serv., Inc.*, 498 F.Supp.3d 715 (E.D. Pa. 2020) (same).

---

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT

- 3 –

not need to contain factual allegations that refer directly to the fiduciary's knowledge, methods, or investigations at the relevant times,' *Terraza*, 241 F.Supp.3d at 1070, because '[t]hese facts will frequently be in the exclusive possession of the breaching fiduciary.'" *Bouvy*, 2020 WL 3448385, at *3.[7] Thus, in cases alleging imprudent fiduciary process, "[r]equiring a plaintiff to rule out every possible lawful explanation for the conduct he challenges would invert the principle that the complaint is construed most favorably to the nonmoving party." *Sweda v. Univ. of Pennsylvania*, 923 F.3d 320, 326 (3d Cir. 2019) (citing *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 597 (8th Cir. 2009)); *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("If there are two alternative explanations, one advanced by defendants and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)."). At the motion to dismiss stage, a "complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Braden*, 588 F.3d at 594; *see also Sweda*, 923 F.3d at 331.

### III. STATEMENT OF FACTS[8]

---

[7] *See also Johnson*, 2018 WL 1427421, at * 4 ("it is enough for Plaintiff to make circumstantial allegations that allow the Court to draw reasonable inferences that a fiduciary's process in selecting investments was imprudent.").

[8] Defendants ask this Court to take judicial notice of over 1,000 pages of documents spanning twenty-four exhibits attached to the Declaration of Clarissa A. Kang In Support of Defendants' Motion to Dismiss Plaintiffs' First Amended Class Action Complaint ("Kang Decl."). *See* ECF No. 52-1 through 52-25. Under Fed. R. Evid. 201(b)(2), a court may only "judicially notice a fact that is not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." However, where, as here, defendants seek to use the additional material to rebut allegations in plaintiffs' complaint, the court must deny the request for judicial notice. *See Rollins v. Dignity Health*, 398 F.Supp.3d 1025, 1031 (N.D. Cal. 2018) ("[Defendant] is not explaining or arguing the allegations in Plaintiffs' FAC – it is trying to factually rebut them. As *Khoja v. Orexigen Therapeutics*, 899 F.3d 988 (9th Cir. 2018)] makes clear, to grant the request for judicial notice would improperly convert this Rule 12(b)(6) motion into a motion for summary judgment under Rule 56."). In *Huang, et al. v. Trinet HR III, Inc.*, an analogous ERISA action, the defendants filed "voluminous records" in support of their motion to dismiss and the court "decline[d] to take judicial notice of nearly 1,000 pages of submitted documents" as "many of the documents submitted by Defendants are precisely the sort of evidence that might be submitted at summary judgment or at trial and are subject to the typical rules for admission. *Huang, et al. v. TriNet HR III, Inc., et al.*, 2022 WL 93571, at *4 (M.D. Fla. Jan. 10, 2022).

---

### A. The Totality of Facts Give Rise to the Plausible Inference that Defendants Lacked A Prudent Process to Select and Monitor Plan Investments.

Under ERISA a fiduciary "has a continuing duty to monitor [plan] investments and remove imprudent ones" that exists "separate and apart from the [fiduciary's] duty to exercise prudence in selecting investments." *Tibble v. Edison Int'l*, 135 S. Ct. 1823, 1828 (2015). Measured by several different benchmarks, it is obvious considering the totality of circumstances that during the Class Period Defendants breached the duties they owed to the Plan.

#### 1. Many of the Plan's Mutual Funds Had Investment Management Fees In Excess of Fees for Funds in Similarly-Sized Plans

In 2017, for example, similar to all years of the Class Period, many of the funds in the Plan, including the T. Rowe Price Target Date funds, were more expensive than comparable funds found in similarly sized plans. *Id.* at ¶ 77 (listing 11 funds). The expense ratios for many of the funds in the Plan in some cases had a difference of 100% (in the case of Fidelity Money Market Trust) and a difference of 92% (in the case of Victory RS Select Growth Y) above the median expense ratios in the same category. *Id.*

#### 2. Many of the Plan's Primary Mutual Funds Were Not in the Lowest Fee Share Class Available to the Plan During the Class Period

During the Class Period, twelve T.Rowe Price target date funds and two other funds in the Plan had identical lower share counterparts that were never selected by the Plan's fiduciaries. *Id.* at ¶¶ 88-89. More expensive investor share classes are targeted at smaller investors with less bargaining power, while lower cost shares are targeted at institutional investors. *Id.* at ¶ 85. There is no difference between the share classes other than cost and the funds hold identical investments and have the same manager. *Id.* The amount Plan participants were overcharged ranged from 8% to 32% above what they should have been paying. *Id.* at ¶¶ 88-89. At all times during the Class Period, each of the Plan funds had assets under management that satisfied the minimum needed to qualify for investment in the lower-priced share classes. *Id.* at ¶ 91. There is no good-faith explanation for using high-cost classes when lower-cost share classes are available for the exact same investment. *Id.* at ¶ 93. Defendants' failure to investigate

the use of lower cost share classes caused the Plan to pay millions of dollars per year in unnecessary fees. *Id.* at ¶ 95.

### 3. Failure to Investigate Availability of Lower Cost Collective Trusts

During the entire Class Period and beginning in 2012, T. Rowe Price offered collective trust versions of its target date funds. *Id.* at ¶ 94. Plan participants were overcharged by as much as 56% due to Defendants' failure to timely transfer the Plan's funds into the identical collective trusts. *Id.* at ¶ 100. At all times during the Class Period, the Plan maintained sufficient assets under management to qualify for collective trusts. *Id.* Defendants inexcusably failed to transition to the T.Rowe Price collective trusts until 2018. *Id.* at ¶¶ 101-102. Other funds were moved into lower share classes in January 2018. *Id.* Failure to make changes before 2018 was a breach that baked in the Plan and participants' losses that had accrued up to that time. *Wildman, et al. v. Am. Century Serv., LLC., et al.*, 237 F. Supp. 3d 902, 915 (W.D. Mo. 2017) (rejecting argument that "delaying the transfer of Plan assets to a lower-cost share class" does not support an inference of flawed decision-making).

### 4. Failure to Utilize Lower Cost Passively Managed and Actively Managed Funds

During the Class Period, Defendants failed to consider materially similar but cheaper passively-managed and actively-managed alternatives to the Plan's investment options. *Id.* at ¶¶ 105-113. Such alternative investments had no material difference in risk/return profiles with the Plan's funds and there was a high correlation of the alterative funds' holdings with the Plan's funds holdings such that any difference was immaterial. *Id.* at ¶ 105. The alternative funds also demonstrated better performances than the Plan's funds in their 3 and 5 year average returns as of June 2020. *Id.* at ¶ 107. The funds in the Plan were up to 1,360% more expensive than the lower cost alternatives. *Id.* at ¶ 108. Defendants' failure to investigate lower cost actively and passively managed funds cost the Plan and its participants millions of dollars. *Id.* at ¶ 112.

### 5. Fidelity Received Unreasonable Fees at the Expense of Plan Participants

Fidelity was the Plan's recordkeeper during the Class Period. *Id.* at ¶ 116. In fact, Fidelity has been the Plan's recordkeeper for at least 18 years and there is no evidence Defendants sent out RFPs to

try to obtain lower recordkeeping costs.  *Id.* at ¶ 128.  ***"[A]ll recordkeepers provide the same level of service and costs are what differentiate them."***  *Id.* at ¶ 123.  For the bulk of the Class Period (August 28, 2014 through the date of Judgment), Defendants failed to negotiate a low cost contractual per participant recordkeeping fee and instead permitted Fidelity to charge a flat $63 per participant rate annual beginning in 2015 which was reduced to $53 per participant in 2017 while at the same time still collecting revenue sharing which was deposited into a revenue sharing account.  *Id.* at ¶ 131.  This amount is clearly unreasonable as it is well above the recognized reasonable rates for large plans, which averages $35 per participant.  *Id.* at ¶ 139.  Further, the amount of revenue sharing collected during the Class Period ranged from $391,731.00 in 2015 to $641,277.00 in 2017.  *Id.* at ¶ 131.  The excess amount of money taken from revenue sharing that was never used to pay recordkeeping and administrative costs cannot justify Defendants' selection of high-priced investment options.  *Id.* at ¶ 140.

### IV.    ARGUMENT

#### A. Plaintiffs' Complaint Should Be Considered as a Whole, Not Parsed Paragraph By Paragraph

Plaintiffs have plausibly pled that considering the totality of at least *five* factors (*see* Section III.A), Defendants implemented a flawed system in monitoring Plan investments and fees.  Defendants wrongly suggest "Plaintiffs present no plausible allegations that the Committee's methods were inappropriate or lacking." Defs. Mem. at 8.  On the contrary, Plaintiffs have alleged numerous examples of Defendants' failure to prudently monitor the Plan based on information available to and ignored by Defendants at the start of the Class Period.  Specifically, Plaintiffs allege as early as 2015, T. Rowe Price offered the lower cost I share versions of the *same* T. Rowe Price Target date funds that were in the Plan "which were identical in all respects except for price," yet Defendants failed to investigate use of the lower cost share classes.  ¶¶ 87, 94; *see infra* Section IV.B.1.  Similarly, Plaintiffs allege "during the entire class period *and beginning in 2012*, T. Rowe offered collective trust versions of its target date funds" yet Defendants failed to switch to the T. Rowe CIT target date funds as early as 2012.  ¶¶ 10l, 102; *see infra* Section IV.B.2.

Additionally, Plaintiffs allege Fidelity charged each participant $63 annually in direct recordkeeping fees beginning in 2015, which was then reduced to $53 per participant in 2017, on top of revenue sharing that was collected from the Plan participants during the Class Period and deposited into a revenue sharing account. ¶ 131, *see infra* Section IV.C. Defendants permitted the Plan's participants to be subjected to the excessive fees during the Class Period yet failed to investigate as to whether Fidelity or another recordkeeper would provide the same or comparable recordkeeping services for a lower price or leverage the Plan's size to negotiate a lower recordkeeping fee. ¶¶ 132-141. Plaintiffs' allegations are based on information readily available to or easily attainable by Defendants throughout the Class Period that Defendants failed to avail themselves of and implement. According to Defendants, "[t]he test for prudence is whether the Committee, 'at the time they engaged in the challenged transactions, employed the appropriate methods to investigate the merits of the investment and to structure the investment.'" Defs. Mem. at 8 (quoting *Tobias*, 2021 WL 4148706, at \*9). Thus, by Defendants' own standard, Defendants failed to employ "the appropriate methods to investigate the merits of the investment and to structure the investment" at the time they engaged in the challenged transactions.

As noted above, at the motion to dismiss stage, a "complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Braden*, 588 F.3d at 594; *see also Terraza*, 241 F.Supp.3d at 1077 ("When viewed collectively, the Court can reasonably infer from these allegations that the Defendants engaged in a flawed decision-making process by selecting and retaining the challenged investment options."). A few courts have already found substantially similar allegations to state a prudence claim. In *Evonik*, the Court reasoned that based on plaintiffs' citations to "news articles, academic scholarship and specific examples of cheaper investment funds," plaintiffs adequately claimed defendants breached their duty of prudence:

> Plaintiffs allege that (1) the Plan offered mutual funds in a higher cost share class, despite the availability of lower cost share mutual funds that were identical in every way except for their lower cost, id. ¶¶ 103-08; (2) Defendant's [sic] failed to investigate the availability of collective trusts or separate accounts, which are "materially similar but cheaper alternatives" to the mutual funds in the Plan, id. ¶¶ 109-13; and (3) the Plan maintained

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT

three actively managed funds, despite the comparable returns and lower costs offered by passively managed funds, id. ¶¶ 114-15. Citing news articles, academic scholarship and specific examples of cheaper investment alternatives, Plaintiffs contend that a prudent fiduciary would have fully investigated each of the above options and selected investments with cheaper costs. See, e.g., Compl. ¶¶ 82-87, 90-94. More generally, Plaintiffs allege that most of the investment options in the Plan charged higher-than-average fees, with reference to median fees published by the Investment Company Institute and the fees of alleged comparators. Id. ¶¶ 100-02, 112-13.

*Silva,* 2020 U.S. Dist. LEXIS 250206, at *12.[9]  As in *Evonik*, Plaintiffs' Complaint here alleges near analogous – if not identical – facts, comparisons to examples of lower cost funds and alternatives, and citations to various articles, academic scholarship, and the median fees published by the Investment Company Institute and the fees of alleged competitors.  *See* Complt., ¶¶ 68-73, 84, 88-90, 98, 100-101, 107-112, 114, 121-122; *see also Cunningham v. Cornell Univ.*, 2017 WL 4358769, at *6 (S.D.N.Y. Sept. 29, 2017) ("defendants' argument that plaintiffs used inappropriate benchmarks to assess the performance of the challenged options raises factual questions that are not appropriate on a motion to dismiss"). Moreover, *Pinnell* involved almost an identical fact pattern. 2020 WL 1531870 at *1 (alleging failure to select lower-cost share classes of T.Rowe Price target date funds).[10]

_____

[9] *See also Bouvey*, 2020 WL 3448385, at * 2 (upholding allegations that "the Plan's investment expenses were higher than industry averages: at least 18 of the 20 mutual funds offered in 2016 had above-average expenses.").

[10] Defendants cite three cases where the court found plaintiffs did not allege sufficient circumstantial evidence to plausibly allege a breach of fiduciary duty.  None are dispositive.  *Martin v. CareerBuilder*, 2020 WL 3578022 (N.D. Ill. July 1, 2020), is inapposite because there the plan had less than $200 million in assets and so lacked the bargaining power of a plan the size of the Plan.  Further, Plaintiffs' Complaint stands in stark contrast to the allegations in *Rosen v. Prudential Ret. Ins. & Annuity Co.,* 2016 WL 7494320 (D. Conn. Dec. 30, 2016), where, unlike here, plaintiff failed to "include[] allegations regarding the size of the plan and the number of funds charging excessive fees … and provide[] 'specific comparisons of each Plan fund to an allegedly similar but more cost effective fund available in the market.'" *14 (citing *Braden*, 588 F.3d at 590).  Lastly, the district court in *Meiners v. Wells Fargo & Co.*, 2017 WL 2303968 (D. Minn, May 25, 2017) stated "[c]entral to Meiners's complaint [wa]s the allegation that the Wells Fargo funds consistently underperformed Vanguard funds." *Id*. at *2.  In other words, the plaintiffs' primary claim centered on a comparison between arguably different funds.  Here,

_____

Defendants overly generalize Plaintiffs' allegations arguing, "Plaintiffs' amended imprudence claim is based on their fundamental contention that the Challenged Funds were overly expensive." Defs. Mem. at 9, but this mischaracterizes Plaintiffs claims. Plaintiffs instead claim that the Plan's excessively expensive funds and recordkeeping fees were a byproduct of Defendants' imprudent process. ¶¶ 63, 95, 99, 104, 111-113, 141. Plaintiffs attempted to obtain a "peek" into Defendants' monitoring process by requesting the Committee's meeting minutes by letter dated July 31, 2020, but that request was denied by Defendants. ¶¶ 64-65. "Plaintiffs did not have and do not have actual knowledge of the specifics of Defendants' decision-making process with respect to the Plan, including Defendants' processes (and execution of such) for selecting, monitoring, and removing Plan investments or monitoring recordkeeping and administration costs, because this information is solely within the possession of Defendants prior to discovery." ¶ 63 (citing *Braden v. Wal-mart Stores, Inc.*, 588 F.3d 585, 598 (8th Cir. 2009) ("If Plaintiffs cannot state a claim without pleading facts which tend systematically to be in the sole possession of defendants, the remedial scheme of [ERISA] will fail, and the crucial rights secured by ERISA will suffer.")). *See also Moreno v. Deutsche Bank*, 2016 WL 5957307, at * 3 (S.D.N.Y. Oct. 13, 2016) ("the Complaint explicitly alleges that Plaintiffs did not have knowledge of the 'comparison of Plan costs and investment performance versus other available alternatives, comparison to other similarly-sized plans, information regarding other available share classes, and information regarding separate and collective trusts' until "shortly before this suit was filed.' This allegation must be accepted as true on this motion.") As such, "[f]or purposes of this Complaint, Plaintiffs have drawn reasonable inferences regarding these processes based upon numerous factors." ¶ 66; *see also Johnson*, 2018 WL 1427421, at * 4 ("it is enough for Plaintiff to make circumstantial allegations that allow the Court to draw reasonable inferences that a fiduciary's process in selecting investments was imprudent.").[11]

Plaintiffs' primary claim is that Defendants selected a slate of investment options for the Plan that were *identical* to cheaper alternative funds in the marketplace.

[11] Defendants cite repeatedly to *Kong II* where the district court isolated each of plaintiffs' individual allegations outside of the context of the complaint as a whole and improperly relied on judicial noticed

**B. Plaintiffs' Complaint Pleads Facts to Support a Plausible Claim that Defendants Implemented A Flawed Process for Selecting the Plan's Investment Options.**

**1. Defendants Breached Their Fiduciary Duty By Maintaining Higher Cost Mutual Fund Shares When Identical Lower Cost Shares Were Available.**

Plaintiffs' primary claim is that Defendants failed to offer available identical lower-cost alternatives to some of the Plan's investments. Plaintiffs provide specific examples of at least 14 Plan investment options, 12 of which were T.Rowe Price target date funds, for which Defendants could have switched to the lowest-fee share class. *See* ¶¶ 88-89 (listing funds); *see also* Statement of Facts, Section III.A.1. This Court previously held that when a plaintiff "alleges that the Defendants could have offered the exact same investment option for a lower price based on the Plan's size […] The Court can reasonably infer from this allegation that the Defendants acted imprudently by selecting the more expensive option, all else being equal." *Terraza*, 241 F.Supp.3d at 1077. "Plaintiffs are not arguing that Defendants had a duty to scour the market to find and offer any cheaper investment. Instead, Plaintiffs allege that 'lower cost funds with the identical managers, investments styles, and stocks" (sic) should have been considered by the Plan.'" *Kruger et al. v. Novant Health, Inc.*, 131 F.Supp.3d 470, 476 (M.D.N.C. 2015); *see also Reetz v. Lowe' s Companies, Inc.*, 2019 WL 4233616, at * 6 (W.D.N.C Sept. 6, 2019) ("While Lowe's is correct that "no authority requires the fiduciary to pick the best performing fund," *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 823 (8th Cir. 2018), that is not the allegation made here."). Indeed, when it comes to the Plan funds being in the wrong share class, there was no need to scour the market because the cheapest funds were right under the fiduciaries' noses.

In the Order, the Court relied on the decision in *Davis v. Salesforce, Inc.* and concluded "the Court finds that Plaintiffs' allegations regarding the availability of lower cost share classes are, without more, insufficient to state a claim for breach of the duty of prudence." *Tobias v. NVIDIA*, 2021 WL 4148706, at

documents to resolve clear disputes of material fact at the motion to dismiss stage. *See, e.g., Kong v. Trader Joe's Co.*, 2020 WL 7062395, *6 (C.D. Cal. Nov. 30, 2020) ("*Kong II*"). Such an approach is wholly out of line with the standard of review for this District. *Kong II* is presently pending appeal in the Ninth Circuit. *See Kong v. Trader Joe's Co*., No. 20-56415 (9th Cir.).

*11 (N.D. Cal. Sept. 13, 2021) (citing *Davis II*, 2021 WL 1428259, at *4).  But it is unclear what "more" the *Davis* court is requiring that ERISA plaintiffs plead in order to advance an imprudence claim for failure to select the lowest cost share class.  The court in *Salesforce* also failed to consider the totality of the allegations as set forth in plaintiffs' complaint as a whole and instead, isolated each allegation in its conclusion it was "not persuaded by the reasoning" of "the cases on which plaintiffs rely [that] have held allegations identifying lower-cost share classes are, without more, sufficient to state a claim for imprudence." *Davis v. Salesforce.com, Inc.*, No. 20-cv-1753, 2020 WL 5893405 (N.D. Cal. Oct. 5, 2020).[12]  Such a requirement effectively shifts the burden on Plaintiffs to tap into the Defendants' psyche and plead the methodology they employed when they selected and retained the funds, which is wholly out of line with the majority of district courts' evaluation of a plaintiff's claims at the motion to dismiss stage.

Most "[c]ourts examining this issue have concluded that investment in a retail class fund where an identical institutional class fund with lower fees is available can violate the duty of prudence." *Disselkamp v. Norton Healthcare, Inc.,* 2019 WL 3536038, at * 4 (W.D. Ky. Aug. 2, 2019); *See also Johnson v. Fujitsu Tech. and Bus. Of Am., Inc.*, 250 F. Supp.3d 460, 466-67 (N.D. Cal. 2017) (holding that plaintiffs' allegations regarding share classes supported a claim for breach of fiduciary duty); *Johnson v. Providence Health Sevs. et al.*, 2018 WL 1427421, at * 5 (W.D. Wash. Mar. 22, 2018) (upholding claim where "Plaintiff argue[d] that Defendants' inclusion of specific retail shares of funds was imprudent because there were identical, lower-cost institutional shares available."); *Terraza*, 241 F.Supp.3d at 1077 ("Terraza alleges that the Defendants could have offered the exact same investment option for a lower price based on the Plan's size. The Court can reasonably infer from this allegation that the Defendants

---

[12] Defendants also repeatedly rely on *Davis v. Salesforce.com* to attack Plaintiffs' benchmarks.  *See* Defs. Mem. at *passim*.  The court in *Salesforce* failed to consider the totality of the allegations as set forth in plaintiffs' complaint as a whole and instead, isolated each individual allegation when granting the motion to dismiss.  *See, e.g., Davis v. Salesforce.com, Inc.*, 2020 WL 5893405, at *5 (N.D. Cal. Oct. 5, 2020).  *Davis v. Salesforce.com*, 2021 WL 1428259 (N.D. Cal. Apr. 15, 2021) is presently pending appeal before the Ninth Circuit.  *See Davis v. Salesforce*, 21-15867 (9th Cir.).

acted imprudently by selecting the more expensive option, all else being equal.").[13]  Failure to gain access to cheaper identical or materially similar funds given a plan's substantial size is a "failure of effort [or] competence" and "is enough to state a claim for breach of the duty of prudence."  *Davis*, 960 F.3d at 483.  Given the fee discrepancies of up to 32% between the funds selected by the Defendants and the cheaper ones available, Defendants' decision cost Plan participants millions of dollars.  ¶¶ 88-89, 95.

At the motion to dismiss the initial Complaint, the Court concluded "Plaintiffs' allegations regarding the availability of the 'K' class Fidelity Contrafund are insufficient to state a claim for breach of the fiduciary duty of prudence" because the Plan offered the 'K' class Fidelity Contrafund from the beginning of the putative Class Period and then replaced the 'K' class with the lower cost Fidelity Commingled Pool I fund in 2018.  *NVIDIA*, 2021 WL 4148706, at *10.  But, the fact that the Committee replaced the T. Rowe Price funds with collective trust funds and the American Funds Europacific Growth Funds with cheaper share classes in 2018 does not absolve Defendants from liability because a prudent fiduciary would have known immediately, not four years into the Class Period, that a change was needed. *See Tibble v. Edison Int'l*, 2017 WL 3523737, at * 12 (C.D. Cal. Aug. 16, 2017) ("Because the institutional share classes are otherwise *identical* to the retail share classes, but with lower fees, a prudent fiduciary would know immediately that a switch is necessary) (emphasis in original); *Creamer v. Starwood Hotels & Resorts Worldwide, Inc.*, 2017 WL 2909408, at *3 (C.D. Cal. May 1, 2017) (Because

---

[13] *See also Pinnell*, 2020 WL 1531870, at * 5 (upholding similar claims as here, and noting that plaintiffs plead "a table listing at least twelve investment options for which the Plan fiduciaries could have switched to lower-fee share classes, in addition to numerous other comparisons."); *Cunningham, v. Cornell Univ.*, 2017 WL 4358769,  at * 8 ("to the extent plaintiffs claim that defendants breached their fiduciary duties by selecting specific retail funds over lower-cost, but otherwise identical, institutional funds, (see Compl. at 67-78), these allegations are sufficient to survive the motions to dismiss."); *Nicolas v. Trustees of Princeton Univ.*, 2017 WL 4455897, *4 (D.N.J. Sept. 25, 2017) (court found analyzing similar allegations, including that defendants failed "to use significant bargaining power to negotiate lower fees," that "[a]ccepting as true the facts alleged in the Complaint and giving Plaintiff every favorable inference therefrom, Plaintiff's Complaint states a claim for relief."); *Brotherston v. Investments LLC*, 2016 WL 1397427, at *1 (D. Mass. April 7, 2016) (same); *Krueger v. Ameriprise Fin., Inc.*, 2012 WL 5873825, at *10-11 (D. Minn. Nov. 20, 2012) (same); *Moreno v. Deutsche Bank*, 2016 WL 5957307, at * 2 (S.D.N.Y. Oct. 13, 2016) (same).

Starwood failed to exercise bargaining power to obtain lower fees for many years… "viewed in the light most favorable to Plaintiffs, the Court can infer from these facts that Starwood's recordkeeping and administrative fees were excessive prior to 2015 and are still excessive."); *Fujitsu*, 250 F.Supp.3d at 466 (upholding allegation of fiduciary's "failing to promptly remove imprudent investments and the target-date funds more broadly when it was apparent that each was imprudent"); *Wildman*, 237 F.Supp.3d at 915 (rejecting argument that "delaying the transfer of Plan assets to a lower-cost share class" does not support an inference of flawed decision-making); *see also McNeilly et al.*, slip op. at 17 (Defendants' belated decision to reduce costs "may indicate a breach of fiduciary duty, given that Defendants had an ongoing duty to monitor the Plan's expenses.") .

Defendants again attempt to justify their imprudence in selecting the higher cost version of T.Rowe Price funds by arguing the suite of funds offered within the Plan provided revenue sharing. Defs. Mem. at 22-24. While Plaintiffs acknowledge the practice of revenue sharing is not *per se* improper, "revenue sharing […] unchecked is devastating to Plan participants." ¶ 126. The Court previously agreed with Defendants that "revenue sharing […] provides an 'obvious alternative explanation for why the Plan did not offer the lowest-cost share class for those funds.'" *NVIDIA*, 2021 WL 4148706, at *11 (citing *Davis II*, 2021 WL 1428259, at *3). But this conclusion presumes that Defendants' decision to provide the higher cost share class in an effort to utilize revenue sharing was a reasonable decision. Without the exchange of discovery, it is impossible to assess whether revenue sharing was in fact a benefit to the Plan that justified the selection of the higher cost share class *in this case*. Should discovery reveal Defendants did engage in a prudent process in their selection of the higher cost share class, they will be able to raise that issue at summary judgment. *See Terraza*, 241 F.Supp.3d at 1077 (internal citations omitted) ("Although the Defendants may ultimately persuade the Court that they had legitimate reasons to select the challenged investment options, and thus did not act imprudently, Terraza has satisfied her burden at this stage of the litigation by alleging facts from which the Court can reasonably infer that the Defendants' decision-making process was flawed.").

Throughout the Class Period, Fidelity charged a flat $63 per participant annual fee that was reduced to $53 per participant annually in 2017 while at the same time collecting revenue sharing which was deposited into a revenue sharing account. ¶ 131. As such, between 2014 and 2018, the amount of revenue sharing collected ranged from $391,731.00 to $641,277.00, which reflects a lost opportunity cost to Plan participants as they could have had the funds available for other investments. *Id.* Plaintiffs allege "the manner in which recordkeeping costs were paid for by the Plan's fiduciaries was clearly imprudent and disloyal to the Plan participants" as Defendants permitted Fidelity to charge a flat per participant recordkeeping fee while also collecting money through revenue sharing "that was never used to pay for recordkeeping and administrative costs." ¶ 132.[14] As the Ninth Circuit described, additional fees of only 0.18% or 0.4% can have a large effect on a participant's investment results over time because "[b]eneficiaries subject to higher fees … lose not only money spent on higher fees, but also lost investment opportunity; that is, the money that the portion of their investment spent on unnecessary fees would have earned over time." *Tibble III*, 843 F.3d at 1198.

Importantly, fiduciaries should not "choose otherwise imprudent investments specifically to take advantage of revenue sharing." *Tibble, et al.*, 2017 WL 3523737, at * 11.[15] "[T]he question is not 'whether a revenue-sharing model is within the range of reasonable choices a fiduciary might make', but

---

[14] "At worst, revenue sharing is a way to hide fees. Nobody sees the money change hands, and very few understand what the total investment expense pays for. It's a way to milk large sums of money out of large plans by charging a percentage-based fee that never goes down (when plans are ignored or taken advantage of). In some cases, employers and employees believe the plan is 'free' when it is in fact expensive." Justin Pritchard, "Revenue Sharing and Invisible Fees" available at http://www.cccandc.com/p/revenue-sharing-and-invisible-fees (last visited March 19, 2020).

[15] Defendants' attempt to meaningfully distinguish *Tibble* by saying revenue sharing was not at issue in that case rings hollow given the court's specific statement regarding revenue sharing. *Tibble* also supports this action because it was decided after plaintiffs had a chance to conduct discovery. As the court in *Johnson et al. v. Providence Health* stated: "it is important to consider the procedural posture of *Tibble I*. The Court of Appeals was not reviewing an order on a motion to dismiss—as is the posture of this case—but a fully-developed factual record after both summary judgment and a bench trial. 729 F.3d at 1137. This illustrates that when assessing a fiduciaries' process for selecting, monitoring, and removing investment options, a court's inquiry is necessarily fact-heavy." 2018 WL 1427421, at * 6.

whether this revenue sharing arrangement was reasonable under all the circumstances." *Troudt v. Oracle Corp.*, 2017 WL 1100876, at *2 (D. Col. Mar. 22, 2017). But that "determination must account for all the factors which informed the fiduciaries' decision-making, not all of which are presently known to plaintiffs…." In *Disselkamp*, defendants argued for dismissal of plaintiffs' claim "because Defendants applied the higher fees collected from the retail class funds to pay administrative fees through revenue-sharing." 2019 WL 3536038, at * 5. The court rejected this argument because it was "not suited for a decision on a motion to dismiss." *Id.* It also noted that "while the revenue-sharing argument may eventually mitigate liability and damages, ***it still remains to be seen whether Defendants prudently investigated the higher share class investments before subjecting Plan participants to those higher fees***." *Id.* (emphasis added); *see also Cassell v. Vanderbilt*, 285 F.Supp.3d 1056 (M.D. Tenn. 2018) ("the appropriate inquiry on these claims involves issues of fact, which cannot be determined on a motion to dismiss.").[16] Whether the use of revenue sharing excuses Defendants' actions is not suitable for resolution at the motion to dismiss stage. *Terraza*, 241 F.Supp.3d at 1083 ("Terraza has plausibly alleged that the Defendants allowed the Plan to compensate the record-keeper through revenue-sharing payments that exceeded the underlying administrative fees that were supposed to cover all necessary services, thus resulting in unreasonable compensation and a breach of fiduciary duty" and judicially noticed documents do not refute the allegations, but instead "create a factual dispute that cannot be resolved on a motion to dismiss"); *Baird et al. v. BlackRock Inst. Trust Co.*, 403 F.Supp.3d 765, 777 (N.D. Cal. 2019) (analogous ERISA action finding "[a]t the motion to dismiss stage, the Court does not resolve factual disputes, but

---

[16] *See also Falberg v. Goldman Sachs Group, Inc.,* 2020 WL 3893285, at * 9 (S.D.N.Y. July 9, 2020) ("While it may turn out that defendants had legitimate and prudent reasons for making the challenged investments available to participants—or that the retail and corresponding institutional mutual funds were not truly identical—accepting the Complaint's allegations as true and drawing all reasonable inferences in favor of the plaintiffs, plaintiffs' allegations are sufficient, at this stage, to survive a motion to dismiss."); *Kruger*, 131 F.Supp.3d 470 at 478, n.8 ("Defendants also argue that … revenue sharing is not accounted for in Plaintiffs' allegations. These are all strong arguments proffered by Defendants. However, it does appear to this court, under the prudent man standard, that these arguments are better resolved at a later stage of the proceedings in light of the fact this court finds the allegations sufficient to allow the excessive fees claim to move forward.")

rather simply assesses whether the SAC plausibly pleads a claim for relief."); *Silva,* 2020 U.S. Dist. LEXIS 250206, at fn 15 (citing *Sweda*, 923 F.3d at 326) ("To the extent Defendants argue that Plaintiffs must allege additional facts, such as whether the higher cost share class offered any additional benefits, the Court disagrees.  Plaintiffs need not 'rule out every possible lawful explanation' for the challenged conduct in the Complaint.").    For that reason, the court's analysis in *White v. Chevron Corp*., 2017 WL 2352137, at *14 (N.D. Cal. May 31, 2017) ("*White II*") is incompatible with prevailing case law. Moreover, *White v. Chevron*, is distinguishable from the instant case because "unlike the plaintiff in *White*, [plaintiffs] do[] not challenge the overall investment lineup." *Lorenz et al. v. Safeway,* 241 F.Supp.3d 1005, 1023 (N.D. Cal. 2017).  Plaintiffs only challenge a subset of the Plan's funds.

Moreover, in *Marks v. Trader Joe's Company,* the court determined, "ample authority holds that merely alleging that a plan offered retail rather than institutional share classes is insufficient to carry a claim for fiduciary breaches."  *Marks v. Trader Joe's Company,* 2020 WL 2504333, at *7 (C.D. Cal. Apr.24, 2020).  But here, Plaintiffs allege *several* factors that taken together with allegations regarding the wrong share class, state a plausible claim of breach of fiduciary duty.

### 2. ERISA Required Defendants to Timely Offer CITs Under the Prevailing Circumstances.

Plaintiffs' Collective trusts ("CITs") allegations are similar to the share class allegations.  CITs are akin to low-cost share classes because many if not most mutual fund strategies are available in a collective trust format, and the investments in the collective trusts are identical to those held by the mutual fund, except they cost less.  ¶ 97.  Clearly, CITs are favorable investment products that should have been considered by Defendants by the start of the Class Period.  *Tibble III*, 843 F.3d at 1198 (fiduciaries must consider "favorable investment products, ***particularly when those products are substantially identical—other than their lower cost***—to products the trustee has already selected") (emphasis added).  In fact, during the entire class period and beginning in 2012, T. Rowe Price offered collective trust versions of its target date funds.  ¶ 100.  Accordingly, Defendants' failure to consider "favorable investment products" prior to 2018 is egregious. *See Falberg,* 2020 WL 3893285, at * 10 (noting several courts have upheld

similar claims at the motion to dismiss stage); *Pinnell,* 2020 WL 1531870, at * 6 (upholding claim that defendants failed to consider CITs or SMAs); *Tracey v. Massachusetts Inst. of Tech.*, 2017 WL 4453541, at * 11 (D. Mass. Aug. 31, 2017) (same); *In re M&T Bank Corp. ERISA Litig*., 2018 WL 4334807, at * 9 (WDNY Sept. 11, 2018) (same). The fact there is no evidence of the Plan's fiduciaries investigating the suitability of CITs before 2018 is a plausible breach.  After all, *Tibble* "reminded the Ninth Circuit that **[even]** one debate on the pros and cons of alternate funds is insufficient to fulfill a fiduciary duty under ERISA." *Bell v. Pension Committee of ATH Holding Company, LLC*, 2019 WL 387214, at * 5 (S.D. Ind. Jan. 30, 2019).

That nothing in ERISA compels a fiduciary to include collective trusts in 401(k) plans is beside the point, whereas here, Defendants, by converting Plan investments to an all collective trust format in 2018, acknowledged the benefits of such investment options.  And as argued in the prior section, the delay in converting the T.Rowe Price funds to collective trusts does not relieve Defendants of liability. *See Fujitsu*, 250 F.Supp.3d at 466.

### 3. Under the Prevailing Circumstances, Defendants Were Required to Investigate the Prudence of Offering Other Passively and Actively-Managed Investment Options

Defendants misunderstand the Complaint's non-share class related allegations regarding alternative funds.  Defs. Mem. at 10-12.  These allegations complement Plaintiffs' primary allegations that Defendants engaged in an imprudent process.  The thrust of the allegations is that the Defendants failed to investigate whether the selected actively managed funds could be replaced with comparable index and actively managed funds (Complaint, ¶¶ 105-112).  *See Marshall v. Northrop Grumman Corp.*, 2019 WL 4058583 at * 10 (C.D. Cal. Aug. 14, 2019) ("[a] trier of fact could reasonably view the [investment committee's] evaluations and discussions in Investment Committee meetings insufficient to disprove a breach of Defendants' fiduciary duties because the Investment Committee failed to adequately weigh the costs and benefits of an active management strategy against a passive management strategy.") As noted *supra*, ERISA is derived from trust law, under which a fiduciary may compare a trust's investments to "suitable index mutual funds or market indexes (with such adjustments as may be

appropriate)" to determine whether the trust's investments are appropriate. Restatement (Third) of Trusts § 100 cmt. b(1); *see also Brotherston et al. v. Putnam Investments,* LLC, 907 F.3d 17 (1st Cir. 2018), *writ of certiorari denied* 2020 WL 129535 (2020) ("So to determine whether there was a loss, it is reasonable to compare the actual returns on that portfolio to the returns that would have been generated by a portfolio of benchmark funds or indexes **comparable but for the fact that they do not claim to be able to pick winners and losers, or charge for doing so**.") (citing the Restatement (Third) of Trusts, § 100 cmt) (emphasis added). The Complaint provides various benchmarks in which both the Plan's funds and the alternative funds are compared to. *See ¶¶* 106-108. This satisfies any requirement to compare the Plan's funds to a meaningful benchmark.

Finally, Defendants' suggestion that the Plan's fund fees are within a reasonable range has been roundly rejected time and again. *Terraza*, 241 F. Supp. 3d at 1077 ("this approach would effectively carve out a presumption of prudence for expense ratios that fell within a certain range."); *Troudt*, 2017 WL 1100876, at *1 ("[h]eeding [] admonitions of [pertinent case law], the court cannot adopt defendants' proposal to dismiss Count I of the complaint on the theory that the plan's fee structure fell within a presumptively reasonable range of expense ratios."); *Henderson v. Emory Univ.*, 252 F.Supp.3d 1344, 1349 (N.D. Ga. May 10, 2017) (rejecting argument that "the Plans' investment options offer a range of expense ratios from .07% to 1.41%, and that many courts have found this range to be reasonable.").

### 4. The Fee-Related and Performance Comparisons in Plaintiffs' Complaint Are Plausibly Alleged

Defendants question the usefulness of the Complaint's utilization of median and average fee comparisons. Defs. Mem. at 13-14. Their argument is meritless. The median and average cost comparisons charts in the Complaint highlight a glaring failure in the Plan fiduciaries' investment selection and monitoring process. The fact that in 2017, for example, the expense ratios for many of the funds in the Plan in some cases had a difference of *100%* (in the case of Fidelity Money Market Trust) and a difference of *92%* (in the case of Victory RS Select Growth Y) above the median expense ratios in the same category shows imprudence. ¶ 77. In other words, the fund prices were not just slightly higher

than median prices but ***exorbitantly*** higher leaving no room to give the fiduciaries the benefit of the doubt. The chart lends support to Plaintiffs' allegations that the Plan fiduciaries caused the Plan and its participants to overpay for funds as highlighted by the Plan's high total Plan Costs. *Id.* Moreover, using the ICI chart is appropriate because it uses an objective benchmark for measuring fee expenses: plan size. Had the Plan's fiduciaries faithfully executed their fiduciary duties, the expectation would be the expense ratios for the majority of the Plan's funds would be at or below the median and average prices similarly situated plans paid. Instead, the opposite was true.

Further, Defendants raise questions of fact inappropriate to resolve at the motion to dismiss stage by attempting to improperly inject their interpretation of the ICI median fee data. Defs. Mem. at 13-14. *See Ramos et al. v. Banner Health,* 2017 WL 4337598, at \*6 (D. Col. Sept. 29, 2017) (defendants "seek to disprove Plaintiffs' allegations on their merits or to put into evidence facts beyond what Plaintiffs have pled. This again demonstrates that Plaintiffs' allegations may be contested, but not that they are implausible or insufficiently pled as a matter of law under Rule 12(b)(6)."); *Baird et al.*, 403 F.Supp.3d at 777 ("[a]t the motion to dismiss stage, the Court does not resolve factual disputes, but rather simply assesses whether the SAC plausibly pleads a claim for relief."); *Wildman*, 237 F. Supp. 3d at 914 (disagreement over interpretation of fees and fund comparison "raise factual issues that cannot be resolved in a motion to dismiss.") (citation omitted).

There is "no one-size-fits-all approach" when it comes to picking benchmarks. *Davis*, 960 F.3d at 484. Notwithstanding Defendants' criticism of the use of the ICI median and averages charts, several courts have upheld claims based in part on the chart. *See Silva,* 2020 U.S. Dist. LEXIS 250206, at \*13 ("Plaintiffs allege that most of the investment options in the Plan charged higher-than-average fees, with reference to median fees published by the Investment Company Institute and the fees of alleged comparators."); *Pinnell*, 2020 WL 1531870 at \*5 ("[Plaintiffs] included three tables comparing investment options offered by the Plan to similar or identical lower-fee alternatives and comparing expense ratios to median fees in the same category); *Bouvy*, 2020 WL 3448385, at \*2 ("the Plan's investment expenses were higher than industry averages: at least 18 of the 20 mutual funds offered in

2016 had above-average expenses."); *see generally McCool*, 2021 WL 826756 (upholding allegations based on ICI median charts); *Magna*, 2021 WL 1212579, at *7 (court rejected defendants challenges of the ICI study finding "[t]o the extent that Defendants argue the merits of Plaintiffs' comparisons, such arguments are premature in a motion to dismiss").

Similarly, Defendants argue Plaintiffs failed to allege the Plan funds underperformed. Defs. Mem. at 12-13. Simply put, Defendants' argument (and case law they rely on) is based on their contention that Plaintiffs' alternatives were not, in fact, comparable. Defs. Mem. at 13-14. In *Nicolas*, the court remarked that "Defendant raises factual questions about whether the alternative funds Plaintiff suggests ... are apt comparisons—and, therefore, whether the underperformance Plaintiff depicts is an accurate portrait ... Such questions do not warrant dismissal—to the contrary, they suggest the need for further information from both parties." 2017 WL 4455897, at * 5; *Cryer v. Franklin Templeton Resources Inc.*, 2017 WL 818788, at *4 (N.D. Cal. Jan. 17, 2017) (same); *see also Main v. Am. Airlines, Inc.*, 248 F.Supp.3d 786, 794 (N.D. Tex. 2017) (upholding similar allegations); *Pinnell*, 2020 WL 1531870, at * 1 (upholding similar allegations).

Further, Defendants' suggestion that it is inappropriate to rely on five-year return data is misplaced. Defs. Mem. at 13. Fiduciaries are required to continually monitor a Plan's funds for evidence of imprudence. *Tibble*, 135 S. Ct. at 1828-29. It makes little sense to say, as Defendants do that five years is an insufficient amount of time to evaluate the prudence of an investment. Such a finding would undercut the Supreme Court's decision in *Tibble*. [17]

---

[17] *See also Assembling a Robust Investment Policy Statement for Endowments and Foundations*, THE PNC FINANCIAL SERVICES GROUP, INC., Jan. 8, 2020 (a "fund's investment performance should be reviewed regularly, such as on an annual basis; however, the emphasis with regard to performance should be focused on results achieved over a full market cycle (typically a three-to-five year period)"), *available at* https://www.pnc.com/insights/corporate-institutional/manage-assets/assembling-a-robust-investment-policy-statement-for-endowments-foundations.html; *Cunningham v. Cornell Univ.*, 2019 WL 4735876, at *13 (S.D.N.Y. Sept. 27, 2019) (advisor satisfied fiduciary duty where it regularly presented "three and five-year benchmarks" of investment options); *New Orleans Employers Int'l Longshoremen's Ass'n, AFL-CIO Pension Fund v. Mercer Inv. Consultants*, 635 F. Supp. 2d 1351, 1361 (N.D. Ga. 2009) (similar).

Lastly, Defendants ultimately take issue with Plaintiffs' choice of comparators, but the argument raises issues of fact that require assessment on a more developed record.[18]  *See McCool*, 2021WL 826756, at *5 ("the appropriate inquiry on these claims involves issues of fact, which cannot be determined on a motion to dismiss").

### C. Defendants Breached Their Fiduciary Duties in Failing to Monitor the Plan's Recordkeeping Fees.

#### 1. The Plan's Recordkeeping Fees Were Excessive Based on Market Comparisons for Plans of Similar Sizes.

It is common knowledge, and verified by the DOL, that recordkeeping fees should drop as the number of Plan participants increase.[19]  The cost of recordkeeping services depends on the number of participants (or participant accounts), not on the amount of assets in the participant's account.  Thus, the cost of providing recordkeeping services to a participant with a $100,000 account balance is the same for a participant with $1,000 in her retirement account.  Consequently, prudent fiduciaries negotiate a fixed dollar amount for the recordkeeper's annual compensation, usually based on a rate of a fixed dollar amount per participant.  Because of economies of scale, large plans get lower effective rates per participant than smaller plans.  Plaintiffs allege despite the increase in the number of participants over the course of the Class Period, the Plan continued to pay excessive per participant fees of $63 and $53.[20]  ¶ 131.

---

[18] Unsurprisingly, Plaintiffs' allegations are easily distinguishable from those in Defendants' authorities. Plaintiffs do not fault Defendants for failing to "pick the best performing fund," as in *Meiners*.  *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 823 (8th Cir. 2018).  Instead, Plaintiffs question Defendants' monitoring processes because the Plan, *inter alia*, retained high cost mutual funds when a lower cost share class identical in all ways except price was available to the Plan during the Class Period.

[19] The citation demonstrates the proposition that recordkeeping fees should decrease as a plan size increases.

[20] Defendants' argument that after April 1, 2018 NVIDIA paid the portion of recordkeeping fees not offset by revenue sharing misses the mark because Plan participants were still on the hook for paying a portion of the excessive fee.  *See* Defs. Mem. at 18. In other words, Plan participants would have paid less if the recordkeeping fees were reasonable.

Plaintiffs pled numerous examples of market comparisons and reasonable fee benchmarks to support the claims that the Plan's recordkeeping fees were excessive.  ¶¶ 77-78, 88-89, 100, 108, 136-139.  Plaintiffs cite to the *401(k) Averages Book* (20th ed. 2020), which studies fees for comparably smaller plans but allows one to extrapolate as to what fees a larger plan should be paying.  Based on the *401(k) Averages Book*, a plan with 200 participants and $20 million in assets has an average recordkeeping and administration cost (through direct compensation) of $12 per participant, while a plan with 2,000 participants and $200 million in assets has an average cost of $5 per participant.  *401(k) Averages Book* (20th ed. 2020) at 95, 98;[21] *see also* ¶ 136.

### 2. Defendants Failed to Stay Informed About Overall Trends In the Marketplace Regarding Recordkeeping Fees.

Yet again, isolating individual allegations outside the context of the Complaint on the whole, Defendants argue, "[t]here is no requirement that the Plan conduct requests for proposals for recordkeeping services on any particular interval."  Defs. Mem. at 21.  But, Plaintiffs never alleged Defendants were required to conduct RFPs on any particular interval.  Rather, Plaintiffs alleged in order to prudently monitor the Plan's recordkeeping fees, "the plan's fiduciaries must remain informed about overall trends in the marketplace regarding the fees being paid by other plans, as well as the recordkeeping rates that are available."  ¶ 128.  Conducting an RFP at reasonable intervals "and immediately if the plan's recordkeeping expenses have grown significantly or appear high in relation to the general marketplace" is one practice Defendants could and should have engaged in to remain informed about the recordkeeping rates paid by other plans. *Id.*

Fidelity has been the Plan's recordkeeper for more than 18 years and Plaintiffs allege "Defendants have wholly failed to prudently manage and control the Plan's recordkeeping and administrative costs by failing to, *among other things*, send out RFPs to try to obtain lower recordkeeping costs than Fidelity was charging.  ¶ 133 (emphasis added).  Cerulli Associates stated in early 2012 that more than half of the plan

[21] "Published since 1995, the *401k Averages Book* is the oldest, most recognized source for non-biased, comparative 401(k) average cost information." *401k Averages Book* at p. 2.

sponsors asked indicated that they "are likely to conduct a search for [a] recordkeeper within the next two years." These RFPs were conducted even though many of the plan sponsors indicated that "they have no intention of leaving their current recordkeeper."[22]  It was critically important for the Plan's fiduciaries to conduct RFPs in this case because it could have saved millions of dollars in costs. ¶ 141.  Specifically, this would have allowed Plan participants to determine whether they were obtaining the best rates from Fidelity.  *Bell v. Pension Committee of ATH Holding Company, LLC*, 2017 WL 1091248 at * 5 (S.D. Ind. March 23, 2017) (finding "that Plaintiffs were not required to allege that the recordkeeping fees were the result of any type of self-dealing, but were required to assert only that Defendants failed to act with prudence under § 1104 when failing to solicit bids and to monitor and control recordkeeping fees."); *Short v. Brown U.*, 320 F.Supp.3d 363, 370 (D.R.I. July 11, 2018) ("Plaintiffs' claim that a prudent fiduciary in like circumstances would have solicited competitive bids plausibly alleges a breach of the duty of prudence.").[23]

Courts have found that plaintiffs "[are] required to assert only that Defendants failed to act with prudence under § 1104 when failing to solicit bids and to monitor and control recordkeeping fees." *Bell*, 2017 WL 1091248 at * 5; *see also Ramos,* 2017 WL 4337598, at * 3 (upholding claims that defendant "failed to engage in a competitive bidding process in retaining Fidelity as the Plan's recordkeeper.").

---

[22] "Recordkeeper Search Activity Expected to Increase Within Next Two Years," *Cerulli Assoc.*, January 8, 2013, https://www.plansponsor.com/most-recordkeeping-rfps-tobenchmark-fees/

[23] *Del Castillo v. Cmty. Child Care Council of Santa Clara Cty. Inc.*, 2019 WL 6841222, at * 1 (N.D. Cal. Dec. 16, 2019) is not on point because the alleged failure to send out requests for proposals was related to "life annuity contracts" and "consulting services to" plan participants, and not recordkeeping contracts. The difference is that recordkeeping is a highly competitive business because nearly all recordkeepers in the marketplace offer the same range of services.  Additionally, Defendants' reliance on Seventh Circuit authority, such as *Hecker v. Deer & Co.*, 556 F.3d 575 (7th Cir. 2009) and *Loomis v. Exelon Corp.*, 658 F.3d 670 (7th Cir. 2011) is unhelpful.  The Seventh Circuit diverges from other circuits regarding allegations a plaintiff needs to plead in order to survive a motion to dismiss claims of excessive fees.  The majority of courts have followed the lead of *Braden* which implored courts to "be attendant to ERISA's remedial purpose and evident intent to prevent through private civil litigation 'misuse and mismanagement of plan assets.'" *Id.*, 588 F.3d at 597.

---

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT

Market surveys show that a large plan like the Plan could command recordkeeping fees as low as $18 to $27 per participant. ¶ 139. Recent litigation demonstrates that $14-21 per participant recordkeeping fees is achievable for large plans. *See Moitoso v. FMR LLC, et al.*, 2020 WL 1495938, at * 15 (D. Mass. Mar. 27, 2020). Defendants' argument that Plaintiffs failed to allege the fee Fidelity charges is excessive to the services it provides has been rejected by other courts because of the factually intensive nature of the scope of services. *See, e.g., TriNet*, at *9 ("Defendants' argument that Plaintiffs failed to plead which specific services were offered to the Plans has been rejected by other courts."); *Kruger*, 131 F.Supp.3d at 479 ("same); *Krueger*, 2012 WL 5873825, at *20 (same); *Magna,* 2021 WL 1212579, at * 11 (same); *Parmer,* 518 F.Supp.3d at 1308. *Peterson*, 2021 WL 1382168, at * 6; *Omnicom*, 2021 WL 3292487, at *16-17 (same*); Biogen*, 2021 WL 3116331, at *10 (same).

### D.  The Complaint Alleges Sufficient Facts to State A Claim for Failure to Monitor

Defendants incorrectly argue Plaintiffs have failed to allege facts that support a claim for failure to monitor fiduciaries.  Defs. Mem. at 24-25.  Many courts have upheld the same type of allegations pled by Plaintiffs once the court sustains the underlying merits claim. *See Fujitsu*, 250 F.Supp.3d at 466-67 (upholding plaintiffs' claims defendants failed "to monitor and evaluate the performance of their appointees […] monitor their appointees' fiduciary processes […] and […] remove appointees whose performance was inadequate"); *Tracey*, 2017 WL 4478239, at *4.

### CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' motion to dismiss in its entirety, or in the alternative, grant Plaintiffs leave to amend especially in light of forthcoming potential guidance from the Supreme Court in an analogous matter.. *See Hughes v. Northwestern Univ.*, 953 F.3d 980 (7th Cir. 2020), *cert. granted* (U.S. July 2, 2021) (No. 19-1401).[24]

Dated:  January 20, 2022                         Respectfully submitted,

---

[24]  Also accessible at: https://www.supremecourt.gov/docket/docketfiles/html/qp/19-01401qp.pdf.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT

- 25 –

**CAPOZZI ADLER, P.C.**

*/s/ Mark K. Gyandoh*
Mark K. Gyandoh, Esquire
Attorney ID No. 88587
Gabrielle Kelerchian
Attorney ID No. 324248
312 Old Lancaster Road
Merion Station, PA 19066
Tel: (610) 890-0200
Fax (717) 233-4103
Email: markg@capozziadler.com
          gabriellek@capozziadler.com

**CAPOZZI ADLER, P.C.**
Donald R. Reavey, Esquire
Attorney ID No. 82498
2933 North Front Street
Harrisburg, PA 17110
(717) 233-4101
Fax (717) 233-4103

Counsel for Plaintiffs and
the Putative Class

**ROSMAN & GERMAIN LLP**
Daniel L. Germain (State Bar No. 143334)
16311 Ventura Boulevard, Suite 1200
Encino, CA  91436-2152
Telephone: (818) 788-0877
Facsimile: (818) 788-0885
Email: germain@lalawyer.com

Counsel for Plaintiffs and the Putative Class

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT

## CERTIFICATE OF SERVICE

I hereby certify that on January 20, 2022 a true and correct copy of the foregoing document was filed with the Court utilizing its ECF system, which will send notice of such filing to all counsel of record.

By:  /s/ Mark K. Gyandoh
     Mark K. Gyandoh, Esquire

---

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT