Clarissa A. Kang, No. 210660
Dylan D. Rudolph, No. 278707
Catherine L. Reagan, No. 327702
TRUCKER ✦ HUSS
A Professional Corporation
135 Main Street, 9th Floor
San Francisco, CA 94105
Telephone:     (415) 788-3111
Facsimile:     (415) 421-2017
E-mail:        ckang@truckerhuss.com
               drudolph@truckerhuss.com
               creagan@truckerhuss.com

Attorneys for Defendants
NVIDIA CORPORATION, THE BOARD OF
DIRECTORS OF NVIDIA CORPORATION,
THE NVIDIA 401(k) PLAN BENEFITS
COMMITTEE (incorrectly named and sued as
THE 401(k) BENEFITS PLAN COMMITTEE
OF NVIDIA CORPORATION)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

(OAKLAND DIVISION)

| | |
|---|---|
| CRISTINA TOBIAS, ANTHONY BRIGGS, ANN MACDONALD and DAVID CALDER, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>NVIDIA CORPORATION, THE BOARD OF DIRECTORS OF NVIDIA CORPORATION, THE 401(k) BENEFITS PLAN COMMITTEE OF NVIDIA CORPORATION, and JOHN DOES 1-30,<br><br>Defendants. | Case No. 5:20-cv-06081-JST<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**[Fed. R. Civ. Pro. 12(b)(6)]**<br><br>Date:   June 23, 2022<br>Time:   2:00 p.m. (PST)<br>Dept.:  Courtroom 6, 2nd Floor<br>Judge:  Hon. Jon S. Tigar |

Trucker ✦ Huss
A Professional Corporation
135 Main Street, 9th Floor
San Francisco, California 94105

# Table of Contents

| | | Page(s) |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | ISSUES PRESENTED | 4 |
| III. | RELEVANT FACTS | 4 |
| | A. The Plan. | 4 |
| | B. The Committee. | 5 |
| | C. The Plan's investment options. | 5 |
| | D. The Plan's recordkeeper. | 6 |
| IV. | STANDARD OF REVIEW | 7 |
| V. | ARGUMENT | 7 |
| | A. Plaintiffs' conclusory allegations regarding the Challenged Funds remain insufficient to create an inference of imprudence. | 9 |
| | 1. Plaintiffs fail to allege that any of the Challenged Funds underperformed such that the Committee had reason to remove them from the lineup. | 9 |
| | 2. Identifying supposedly less expensive investment options in the marketplace is insufficient to state an imprudence claim. | 10 |
| | 3. The median investment management fees from the ICI Study do not support Plaintiffs' imprudence claim. | 12 |
| | 4. Plaintiffs' identification of allegedly lower-cost share classes of certain Challenged Funds does not state an imprudence claim. | 13 |
| | 5. The Committee was not required to offer collective investment trusts. | 17 |
| | B. Plaintiffs failed to allege that the Plan paid unreasonable recordkeeping fees or that the Plan's revenue sharing arrangement was improper. | 18 |
| | 1. Plaintiffs again fail to sufficiently allege a viable benchmark to measure the reasonableness of the Plan's recordkeeping fees. | 18 |
| | 2. There is no requirement that the Plan conduct requests for proposals for recordkeeping services on any particular interval. | 21 |
| | 3. Plaintiffs' attacks on revenue sharing remain insufficient to state a claim. | 22 |
| | C. Plaintiffs' duty to monitor claim also fails. | 23 |
| | D. *Hughes* does not save Plaintiffs' imprudence claim from dismissal. | 24 |
| VI. | CONCLUSION | 25 |

Trucker ♦ Huss
A Professional Corporation
135 Main Street, 9th Floor
San Francisco, California 94105

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

i

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS
ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES; Case No. 5:20-cv-06081-JST
6995351.8

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................................7, 23

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ...................................................................................................7

*Brown v. Am. Life Holdings, Inc.*,
190 F.3d 856 (8th Cir. 1999) ....................................................................................8

*Davis v. Salesforce.com, Inc.*,
No. 21-15876, 2022 WL 1055557 (9th Cir. 2022)..............................................15, 18

*Davis v. Wash. Univ.*,
960 F.3d 478 (8th Cir. 2020) ..............................................................................11, 14

*Del Castillo v. Cmty. Child Care Council of Santa Clara Cty., Inc.*,
No. 17-cv-07243, 2019 WL 6841222 (N.D. Cal. Dec. 16, 2019) ........................21

*Dorman v. Charles Schwab Corp.*,
No. 17-cv-00285, 2019 WL 580785 (N.D. Cal. Feb. 8, 2019)................................4

*Dorman v. Schwab*,
No. 17-cv-00285-CW, 2018 WL 6803738 (N.D. Cal. Sept. 20, 2018)............11, 23

*First Resort, Inc. v. Herrera*,
860 F.3d 1263 (9th Cir. 2017) ...................................................................................1

*Gartenberg v. Merrill Lynch Asset Mgmt., Inc.*,
694 F.2d 923 (2d Cir.1982) .....................................................................................20

*Hecker v. Deere & Co.*,
556 F.3d 575 (7th Cir. 2009) .............................................................10, 11, 12, 17, 20

*Hughes v. Northwestern Univ.*,
142 S. Ct. 737 (U.S., 2022) .................................................................................7, 24

*Kong v. Trader Joe's Co.*,
No. CV-20-05790 PA (JEMx), 2020 WL 5814102 (C.D. Cal. Sept. 24, 2020) ....13

*Kong v. Trader Joe's Co.*,
No. 20-56415, slip op. (9th Cir. Apr. 15, 2022)..................................13, 14, 15, 17, 18

*Lockheed Corp. v. Spink*,
517 U.S. 882 (1996) .................................................................................................22

Trucker ♦ Huss
A Professional Corporation
135 Main Street, 9th Floor
San Francisco, California 94105

ii

*Loomis v. Exelon Corp.*,
    658 F.3d 667 (7th Cir. 2011) .................................................................................. 11, 22

*Marks v. Trader Joe's Co.*,
    No. CV 19-10942 PA, 2020 WL 2504333 (C.D. Cal. Apr. 24, 2020) ........... 15, 16, 21, 22, 23

*Martin v. CareerBuilder, LLC*,
    No. 19-cv-6463, 2020 WL 3578022 (N.D. Ill. July 1, 2020) ................................. 7, 11, 13, 21

*Meiners v. Wells Fargo & Co.*,
    898 F.3d 820 (8th Cir. 2018) .................................................................................. 8, 11, 12

*Moitoso v. FMR LLC*,
    No. CV 18-12122-WGY, 2020 WL 1495938 (D. Mass. Mar. 27, 2020) ................................. 17

*In re Nokia ERISA Litig.*,
    No. 10-cv-3306, 2011 WL 7310321 (S.D.N.Y. Sept. 6, 2011) ................................................ 24

*Pinson v. Ivey*,
    801 Fed. Appx. 591 (9th Cir. 2020) ....................................................................................... 1

*Renfro v. Unisys Corp.*,
    671 F.3d 314 (3d Cir. 2011) ........................................................................................ 11, 19, 20

*Sacerdote v. N.Y. Univ.*,
    328 F. Supp. 3d 273 (S.D.N.Y. 2018) ..................................................................................... 12

*SEB Inv. Mgmt. AB v. Align Tech., Inc.*,
    No. 18-CV-06720-LHK, 2020 WL 5408056 (N.D. Cal. Sept. 9, 2020) (Koh, J.) ................... 7

*Terraza v. Safeway Inc.*,
    241 F. Supp. 3d 1057 (N.D. Cal. 2017) ......................................................................... 3, 4, 10

*Tibble v. Edison Int'l*,
    729 F.3d 1110 (9th Cir. 2013), *rev'd on other grounds*, 575 U.S. 523 (2015) ........... 16, 17, 24

*Tobias v. NVIDIA Corp.*,
    No. 20-cv-06081-LHK, 2021 WL 4148706 (N.D. Cal. Sept. 13, 2021) ........................*passim*

*Turner ex rel. Davis N.Y. Venture Fund v. Davis Selected Advisers, LP*,
    626 F. App'x 713, 717 (9th Cir. 2015) ................................................................................... 11

*Tussey v. ABB, Inc.*,
    746 F.3d 327 (8th Cir. 2014) ........................................................................................ 15, 16, 22

*Wehner v. Genentech, Inc.*,
    No. 20-cv-06894-WHO, 2021 WL 2417098 (N.D. Cal., Jun. 14, 2021) .......................... 8, 19

Trucker ♦ Huss
A Professional Corporation
135 Main Street, 9ᵗʰ Floor
San Francisco, California 94105

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

iii

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS
ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES; Case No. 5:20-cv-06081-JST
6995351.8

*White v. Chevron Corp.*,
   No. 16-cv-0793-PJH, 2017 WL 2352137 (N.D. Cal. May 31, 2017) (*White II*),
   *aff'd* 752 F. App'x 453 (9th Cir. 2018) ............................................................*passim*

*White v. Chevron Corp.* (*White I*),
   No. 16-cv-793-PJH, 2016 WL 4502808 (N.D. Cal. Aug. 29, 2016).....................7, 21, 23, 24

*Wildman v. Am. Century Servs., LLC*,
   362 F. Supp. 3d 685 (W.D. Mo. 2019).................................................................11

*Young v. Gen. Motors Inv. Mgmt. Corp.*,
   325 F. App'x 31 (2d Cir. 2009)....................................................................19, 21

**Federal Statutes**

ERISA
   § 104(b)(4), 29 U.S.C. § 1024(b)(4)...................................................................8
   § 413(1), 29 U.S.C. § 1113(1)..........................................................................9

**Other Authorities**

29 C.F.R. § 2509.75-8 ......................................................................................24

Fed. R. Civ. Proc. 12(b)(6) ................................................................................7

FRAP 32.1 ..................................................................................................15

FRAP 35, 35-1-3, 40, 40-1 ...............................................................................15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Trucker ♦ Huss
A Professional Corporation
135 Main Street, 9th Floor
San Francisco, California 94105

Trucker ♦ Huss
A Professional Corporation
135 Main Street, 9th Floor
San Francisco, California 94105

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on June 23, 2022 at 2:00 p.m. or as soon thereafter as this matter may be heard in the United States District Court, Northern District of California, located at the Oakland Courthouse, Courtroom 6 - 2nd Floor, 1301 Clay Street, Oakland, California 94612, Defendants NVIDIA Corporation ("NVIDIA"), the Board of Directors of NVIDIA Corporation (the "Board"), and the NVIDIA Corporation 401(k) Plan Benefits Committee (incorrectly named and sued as "The 401(k) Benefits Plan Committee of NVIDIA Corporation") (the "Committee") (collectively, "Defendants") will, and hereby do move pursuant to Federal Rule of Civil Procedure ("Federal Rule") 12(b)(6) for dismissal of the First Amended Class Action Complaint ("FAC," Dkt. 51) filed by Plaintiffs Cristina Tobias, Anthony Briggs, Ann MacDonald, and David Calder (collectively, "Plaintiffs") in its entirety and with prejudice because Plaintiffs failed to cure the deficiencies of their initial complaint through amendment to state any viable claims for relief against Defendants.

Defendants' Motion is based on this Notice of Motion and Motion, the incorporated Memorandum of Points and Authorities, the Declaration of Clarissa A. Kang and Exhibits thereto filed concurrently herewith, all of the files and records in this action, and further argument that may be offered at a hearing of this Motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiffs failed to cure the deficiencies in each of their claims for relief.  The order granting Defendants' first motion to dismiss ("Order"; Dkt. 44) held: "In sum, whether considered individually or collectively, Plaintiffs' allegations are insufficient to state a claim for breach of the duty of prudence." *Tobias v. NVIDIA Corp.*, No. 20-cv-06081-LHK, 2021 WL 4148706, *15 (N.D. Cal. Sept. 13, 2021).[1]   The Order also held that Plaintiffs' derivative duty to monitor claim "necessarily fails because Plaintiffs have failed to state an underlying ERISA violation." *Id.*, *17.  The FAC reasserts the same defective claims without adding any new, viable allegations.

---

[1] The Order also dismissed Plaintiffs' breach of loyalty claim. *See id.*, *16. Plaintiffs did not replead this claim in their FAC and have, therefore, abandoned it. *See Pinson v. Ivey*, 801 Fed. Appx. 591, 592 (9th Cir. 2020); *First Resort, Inc. v. Herrera*, 860 F.3d 1263, 1274 (9th Cir. 2017) (finding that the plaintiff "did not replead the claim, effectively abandoning it").

Trucker ♦ Huss
A Professional Corporation
135 Main Street, 9th Floor
San Francisco, California 94105

Plaintiffs' imprudence claim remains insufficient for two independent and dispositive reasons. *First,* Plaintiffs' imprudence claim remains fundamentally flawed because it is based on allegations about the cost of the Challenged Funds alone.[2]   In the FAC, Plaintiffs again attack the cost of the Challenged Funds from four primary angles, based on allegations that: (1) the expense ratios of the Challenged Funds were higher than the expense ratios of funds offered in purportedly similarly sized plans based on the BrightScope/ICI Defined Contribution Plan Profile: *A Close Look at 401(k) Plans* (June 2019) ("ICI Study") (FAC, Dkt. 51, ¶ 77); (2) the Committee should have offered passively managed options instead of actively managed Challenged Funds (*id.* ¶¶ 106, 108); (3) the Committee did not offer purportedly lower cost share classes of three of the Challenged Funds (*id.*, ¶¶ 82-95); and (4) the Committee should have offered collective investment trust ("CIT") versions of the T. Rowe Price target date funds sooner than when the Committee added them to the Plan (*id.* ¶ 101).

These attacks remain insufficient to state an imprudence claim.  The Order correctly held that Plaintiffs' allegations comparing the expense ratios of the Challenged Funds are inadequate because it is improper to compare distinct investment vehicles solely by cost. *See Tobias,* 2021 WL 4148706, *14.  The Order also held that allegations that the Plan should have offered more passively managed options were insufficient. *Id.*, *13.  In dismissing Plaintiffs' share class allegations, the Court recognized that the Committee *did* offer the "K" class of the Fidelity Contrafund, which Plaintiffs admit was a prudent choice. *Id.,* *11.  The Order also recognized that the difference in the investment management fees of the T. Rowe Price and American Funds share classes was attributable to revenue sharing offered by the share classes that the Plan offered, which was acceptable. *Id.*  Finally, the Order correctly held that plans are not obligated to offer alternatives to mutual funds, like CITs, and that CITs are fundamentally dissimilar to mutual funds. *Id*., *12.  Plaintiffs' imprudence claim should be dismissed with prejudice consistent with these findings.  But even if this Court were to find any of these allegations plausible, they are still based on the funds' *cost* alone, which is insufficient.

---

[2] Plaintiffs' FAC again challenges the inclusion of the same investment options: T. Rowe Price Retirement; Fidelity Contrafund K; American Beacon Large Cap Value Institutional; MainStay Large Cap Growth I; Victory RS Select Growth Y; Fidelity Money Market Trust Retirement Government Money Market Portfolio; American Funds Europacific Growth R5; and JP Morgan US Equity R6 investment funds (the "Challenged Funds"). (FAC, Dkt. 51, ¶¶ 77, 88, 89, 91, 100, 108; Declaration of Clarissa A. Kang ["Kang Dec."], Ex. 10-17, Participant Disclosures; Ex. 23, Appendix A.)

2

*Second,* Plaintiffs failed to allege that the Challenged Funds underperformed against their benchmarks such that the Committee had reason to remove them as an investment option in the Plan. This Court has previously held that a fiduciary's "failure to offer the investment option with the lowest expense ratio is not enough, on its own, to plausibly state a claim for breach of the duty of prudence" because the "fact that it is possible that some other funds might have had even lower ratios is beside the point; nothing in ERISA requires every fiduciary to scour the market to find and offer the cheapest possible fund." *Terraza v. Safeway Inc.*, 241 F. Supp. 3d 1057, 1076 (N.D. Cal. 2017). Simply alleging, as Plaintiffs do here, that investment options are too costly, without also plausibly alleging underperformance, is insufficient to state an imprudence claim. *Id.* The FAC is devoid of any allegations regarding the performance of the Challenged Funds, which demonstrate that those funds underperformed, and as noted, their claims are purely related to the funds' cost, which is insufficient.

Plaintiffs have also failed to cure the defects in their recordkeeping claim. The Court dismissed Plaintiffs' recordkeeping claim because Plaintiffs' allegation that the Plan's fees were unreasonably high failed to take into account the services that Fidelity provided to the Plan. *See Tobias,* 2021 WL 4148706 at *15. Notably, the Plan's recordkeeping fees, which are still paid by NVIDIA and not the Plan, have *decreased* since the time of the Court's order on Defendants' first motion to dismiss – from $52 to $48 per participant. (Kang Dec., Ex. 19, Fidelity Agreement, p. 7; Ex. 20, Fidelity Agreement, p. 3.) In an effort to salvage this claim, Plaintiffs' FAC added conclusory and baseless allegations that "national recordkeepers" can offer recordkeeping services at a low cost, and that all recordkeepers provide the "same level of service" with cost being the only difference. (FAC, Dkt. 51, ¶¶ 119-23.) These allegations are implausible because recordkeeping pricing structures vary significantly among recordkeepers and plans based on a number of factors, including investment options, participant population, and services. Further, the Order held that Plan fiduciaries are under no obligation to conduct requests for proposals ("RFPs") for recordkeeping services at any defined interval. *See Tobias,* 2021 WL 4148706, *15. Despite this holding, Plaintiffs repeated their insufficient claim that Defendants did not conduct RFPs at reasonable intervals (FAC, Dkt. 51, ¶ 130).

Finally, the Order dismissed Plaintiffs' derivative duty to monitor claim against NVIDIA and the Board because Plaintiffs did not plausibly allege that the Committee acted imprudently. *Tobias,*

Trucker ♦ Huss
A Professional Corporation
135 Main Street, 9th Floor
San Francisco, California 94105

2021 WL 4148706, *16.  Once again, Plaintiffs' amended monitoring claim fails because their amended imprudence claim fails.

In sum, Plaintiffs failed to cure the deficiencies that the Court found in the initial Complaint and, consistent with the Order (*id.*, * 17), the FAC should be dismissed with prejudice.

## II.  ISSUES PRESENTED

1.   Whether Plaintiffs failed to plausibly allege that the Committee acted imprudently based solely on allegations that the Committee should not have offered the Challenged Funds.

2.   Whether Plaintiffs failed to plausibly allege that the Committee acted imprudently by allowing the Plan to pay a fixed per participant annual recordkeeping fee to Fidelity.

3.   Whether Plaintiffs failed to plausibly allege that NVIDIA and/or the Board breached their duties to monitor the Committee to ensure it carried out its fiduciary responsibilities prudently.

## III.  RELEVANT FACTS

### A.   The Plan.

The Plan provides participants with individual accounts. (Kang Dec., Ex. 1, Plan Document, § 7.01, p. 38.)[3]  Amounts allocated to each participant's Plan account are comprised of participant salary deferrals, after-tax participant contributions, and employer qualified nonelective and matching contributions. (*Id.*, Ex. 2, Summary Plan Description ["SPD"], pp. 6-7.)  Between 2014 and 2020, the Plan's assets increased from roughly $500 million to over $2 billion. (*Id.*, Ex. 3, 2014 Form 5500, p.

[3] Defendants requested judicial notice of Exhibits 1-17 to the Declaration of Clarissa A. Kang in support of their first motion to dismiss, which consisted of: Plan documents; Forms 5500; participant investment disclosures; the Plan's services agreement with its recordkeeper, Fidelity Management Trust Company ("Fidelity"); and the ICI Study. (Dkt. 24-2.)  The Court determined that those Exhibits were properly the subject of judicial notice. *See Tobias*, 2021 WL 4148706 at *5. In support of this motion, Defendants request that the Court take judicial notice of those documents – and five new documents that fall within the same categories of documents that the Court previously determined were judicially noticeable: the 2020 Form 5500; 2020 and 2021 participant disclosures; updated recordkeeping service agreement; and a new article referenced in Plaintiffs' FAC. (Kang Dec., Exs. 9, 16, 17, 20, 22.)  These documents are judicially noticeable because, as the Court determined with respect to the documents attached to Defendants' first motion, they are documents upon which Plaintiffs' FAC relies, are central to Plaintiffs' claims, and their authenticity cannot be questioned. *See Tobias*, 2021 WL 4148706 *5; *Dorman v. Charles Schwab Corp.*, No. 17-cv-00285, 2019 WL 580785, at *3 (N.D. Cal. Feb. 8, 2019) (taking judicial notice of "various notices to plan participants regarding the Plan's investment options"); *Terraza*, 241 F. Supp. 3d at 1067 (taking judicial notice of the Plan document, summary plan description, Forms 5500, and participant fee disclosures "because the Plaintiff's complaint incorporates each of those documents by reference, the complaint necessarily relies on those documents, and neither party questions their authenticity or relevance").

Trucker ♦ Huss
A Professional Corporation
135 Main Street, 9th Floor
San Francisco, California 94105

89; Ex. 9, 2020 Form 5500, p. 108.)  During this period, the Plan's active participants nearly doubled from 4,981 to 9,392. (*Id.*, Ex. 3, 2014 Form 5500, p. 2; Ex. 9, 2020 Form 5500, p. 2.)  Plaintiffs participated in the Plan at some point during the relevant period. (FAC, Dkt. 51, ¶¶ 19-22.)

### B.   The Committee.

NVIDIA is the Plan's Sponsor, Administrator, and named fiduciary. (Kang Dec., Ex. 1, Plan Document, § 19.04, p. 68; Adoption Agreement § 1.02(a), p. 89.)  As the Administrator, NVIDIA has "the full power and the full responsibility to administer the Plan in all of its details," and may "allocate and delegate its fiduciary responsibilities . . . to an administrative committee." (*Id.*, Plan Document, § 19.01, p. 67.)  NVIDIA appointed the Committee to manage the operation and administration of the Plan. (*Id.*; Ex. 8, 2019 Form 5500, p. 81.)

### C.   The Plan's investment options.

During the relevant period, the Plan offered approximately fifty different investment options with a range of investment styles, risk profiles, and management fees. (Kang Dec., Ex. 3-9, 2014-2020 Forms 5500; Ex. 23, Appendix A.)[4]  During this period, the Committee actively monitored and made several significant changes to the Plan's investment lineup. (Kang Dec., Ex. 3-9, 2014-2019 Forms 5500; Ex. 10-17, 2014-2021 Participant Disclosures; Ex. 23, Appendix A.)  The Committee removed and replaced at least twenty-four investment options. (*Id.*)  These changes included replacing options with lower cost alternatives.  For example, the Committee replaced the Fidelity Government Money Market fund with the Vanguard Federal Money Market fund in 2017; the JP Morgan U.S. Equity L fund with the JP Morgan U.S. Equity R6 fund in 2018; American Funds EuroPacific Growth R5 fund with the American Funds EuroPacific R6 fund in 2018; the suite of T. Rowe Price Retirement target date funds with the T. Rowe Price Retirement "F Class" suite in 2018; and the Fidelity Contrafund K fund with the Fidelity Contrafund Commingled Pool 1 in 2019. (*Id.*)

Moreover, since the Order, the Committee made additional changes to the Plan's investments that further reduced investment management fees. (*Id.*)  Notably, the Committee again replaced the

---

[4] During the relevant period, the Plan offered a suite of thirteen T. Rowe Price Retirement options. (Kang Dec., Ex. 3-9; Ex. 23, Appendix A.)  This suite, like the "F" and "B" class suites of T. Rowe Price target date options, are counted as each including thirteen separate investment options. (*Id.*)

Trucker ♦ Huss
A Professional Corporation
135 Main Street, 9th Floor
San Francisco, California 94105

T. Rowe Price target date options with the lower cost "B" share class of those investments, which lowered management fees for the T. Rowe Price options from 0.43% to 0.37%. (*Id.*)  The Committee also added the Vanguard Small Cap Index I Plus Shares fund, which is a passively managed option that carries a 0.03% investment management fee. (*Id.*)  And the Committee successfully reduced the management fees for a number of the Plan's investments: JP Morgan U.S. Equity R6 (from 0.49% to 0.48%); Vanguard Mid Cap Index I Signature (from 0.04% to 0.03%); and Fidelity Managed Income Portfolio II (from 0.54% to 0.31%). (*Id.*)

Despite the holdings in the Order, Plaintiffs still challenge the inclusion of the Challenged Funds, which are comprised of twenty of the roughly fifty investment options that the Plan offered during the relevant period. (FAC, Dkt. 51, ¶¶ 77, 88, 89, 100, 108; Kang Dec., Ex. 23, Appendix A.) Notably, the Committee replaced eighteen of the twenty Challenged Funds during the relevant period. (Kang Dec., Ex. 3-9, 2014-2020 Forms 5500; Ex. 23, Appendix A.)

### D.    The Plan's recordkeeper.

Fidelity served as the Plan's recordkeeper throughout the relevant period. (FAC, Dkt. 51, ¶ 116.)  During this period, the Plan paid Fidelity a fixed per-participant recordkeeping fee that ranged from $63 to $48. (FAC, Dkt. 51, ¶ 131; Kang Dec., Ex. 20, Fidelity Agreement, p. 3.)  Some of the Plan's investment options offered revenue sharing. (*See, e.g.,* Kang Dec., Ex. 3-9, 2014-2020 Forms 5500.)  Amounts collected through revenue sharing were used to offset Fidelity's fixed recordkeeping fee. (*Id.,* Ex. 19, Fidelity Agreement, p. 2; Ex. 20, Fidelity Agreement, p. 3.)  Before April 1, 2018, any shortfall between Fidelity's fixed fee and the amounts collected through revenue sharing was paid from participant accounts. (*Id.,* Ex. 19, Fidelity Agreement, p. 2.)  Effective April 1, 2018, the Fidelity agreement was amended such that NVIDIA paid the recordkeeping fees directly. (*Id.,* p. 3.)

If any revenue sharing amounts remained after Fidelity's recordkeeping offsets, those amounts were deposited into a Revenue Credit Account (later referred to as a Participant Revenue Account; these two suspense accounts are referred to collectively as the "RCA"). (Kang Dec., Ex. 1, Plan Document, Adoption Agreement § 19.05, p. 68; Ex. 18, Fidelity Agreement, pp. 2-4; Ex. 19, Fidelity Agreement, pp. 3-11.)  The Committee was authorized to direct Fidelity to use amounts in the RCA to offset Plan administrative expenses, including but not limited to expenses for Fidelity's services,

Trucker ♦ Huss
A Professional Corporation
135 Main Street, 9th Floor
San Francisco, California 94105

1  and to allocate any remaining amounts in the RCA to Plan participants' accounts. (*Id*.)

2  **IV.   <u>STANDARD OF REVIEW</u>**

3       To survive a motion to dismiss under Federal Rule 12(b)(6), plaintiffs must plead "enough

4  facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

5  570 (2007).  Complaints with "[t]hreadbare recitals of the elements of a cause of action, supported by

6  mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In ruling

7  on a motion under Federal Rule 12(b)(6), "the Court is not required to 'assume the truth of legal

8  conclusions merely because they are cast in the form of factual allegations.'" *SEB Inv. Mgmt. AB v.*

9  *Align Tech., Inc.*, No. 18-CV-06720-LHK, 2020 WL 5408056 at *3 (N.D. Cal. Sept. 9, 2020) (Koh,

10 J.) (citing *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011)). "Mere 'conclusory allegations of

11 law and unwarranted inferences are insufficient to defeat a motion to dismiss.'" *Id*.

12 **V.   <u>ARGUMENT</u>**

13      Plaintiffs' imprudence claim should be dismissed with prejudice because Plaintiffs have again

14 failed to sufficiently allege facts that create a "reasonable inference" that the Committee acted

15 imprudently. *See Tobias*, 2021 WL 4148706, *10; *see also White v. Chevron Corp.*, No. 16-cv-0793-

16 PJH, 2017 WL 2352137, *11 (N.D. Cal. May 31, 2017) (*White II*), *aff'd* 752 F. App'x 453, 454 (9th

17 Cir. 2018) (plaintiffs must plausibly allege that the "process by which the fiduciaries chose the funds

18 was somehow flawed or imprudent").  ERISA fiduciaries "must discharge their duties with the care,

19 skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a

20 like capacity and familiar with such matters would use in the conduct of an enterprise of a like

21 character and with like aims." *Hughes v. Northwestern Univ.*, 142 S. Ct. 737, 739 (U.S., 2022) (citing

22 29 U.S.C. § 1104(a)(1)(B)).  The test for prudence is whether the Committee, "at the time they

23 engaged in the challenged transactions, employed the appropriate methods to investigate the merits

24 of the investment and to structure the investment." *Tobias*, 2021 WL 4148706, *9.

25      Plaintiffs' amended imprudence claim fails for the same reasons that their original imprudence

26 claim failed – Plaintiffs present no plausible allegations that the Committee's methods were

27 inappropriate or lacking. *See Tobias*, 2021 WL 4148706, *15; *Martin v. CareerBuilder, LLC*, No. 19-

28 cv-6463, 2020 WL 3578022, *4 (N.D. Ill. July 1, 2020) (finding "the prudence standard is processed-

Trucker ♦ Huss
A Professional Corporation
135 Main Street, 9th Floor
San Francisco, California 94105

based, not outcome-based" and dismissing a nearly identical imprudence claim because "without more, [a plaintiff] cannot proceed on its allegations that revenue sharing was too high, only institutional class funds should be on offer, and the Plan should offer exotic index funds") (citing *Rosen v. Prudential Ret. Ins. & Annuity Co.*, No. 3:15-cv-1839 (VAB), 2016 WL 7494320, *14 (D. Conn. Dec. 30, 2016) (dismissing claims where "Plaintiffs have not made any allegations directly addressing the methods used by [fiduciaries] to select investment options for the Plan").

As a preliminary matter, Plaintiffs' FAC alleges that they lack knowledge of the Committee's processes at this stage of the lawsuit because this information is solely in Defendants' possession.[5] (FAC, Dkt. 51, ¶¶ 64-65.)  But such an assertion does not relieve them of their obligation to meet the pleading standards necessary to state a viable claim. *See Tobias*, 2021 WL 4148706, *9.  Courts reject this type of superficial pleading, including where plaintiffs argue that they lack knowledge of a plan committee's internal processes as a basis for allowing their claims to proceed to discovery.  For example, the Eighth Circuit "disagree[d] with the rationale of [cases where such claims have been allowed to proceed] because we believe the existence of a cheaper fund" like Plaintiffs allege here, "does not mean that a particular fund is too expensive *in the market generally* or that it is otherwise an imprudent choice." *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 823-24 (8th Cir. 2018) (emphasis in original).  *Meiners* held, "[a]ny other conclusion would exempt ERISA plaintiffs both from pleading benchmarks for the funds and *from pleading internal processes* about selecting funds." *Id.* (emphasis added).  *Meiners* concluded that an "ERISA plaintiff must offer more than 'labels and conclusions' . . . before a complaint states a claim." *Id.* (citing *Twombly*, 550 U.S. at 555).

---

[5] Plaintiffs allege that they requested Committee meeting minutes from NVIDIA before filing this lawsuit to discover details about the Plan's management, but that Defendants did not provide to them. (FAC, Dkt. 51, ¶¶ 64-65).  Plaintiffs' prior document request was made under ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4), which allows Plaintiffs to request and receive copies of certain documents. The Committee's meeting minutes are not the type of documents that may be properly requested under ERISA § 104(b)(4). *See Wehner v. Genentech, Inc.*, No. 20-cv-06894-WHO, 2021 WL 2417098, *13 (N.D. Cal., Jun. 14, 2021); *Brown v. Am. Life Holdings, Inc.*, 190 F.3d 856, 861-62 (8th Cir. 1999). Plaintiffs imply that the minutes would provide them with additional facts to support their claims, but this is pure speculation, and this allegation, alone, does not cure the fundamental flaws in their claims.

Trucker ♦ Huss
A Professional Corporation
135 Main Street, 9th Floor
San Francisco, California 94105

8

**A.      Plaintiffs' conclusory allegations regarding the Challenged Funds remain insufficient to create an inference of imprudence.**

Like their initial claim, Plaintiffs' amended imprudence claim is based on their fundamental contention that the Challenged Funds were overly expensive. (*See, e.g.*, FAC, Dkt. 51, ¶ 12 [alleging that the Committee failed to "objectively and adequately review the Plan's investment portfolio with due care to ensure that each investment option was prudent, in terms of cost . . . "].)[6]  In a hollow attempt to support their amended imprudence claim, Plaintiffs' FAC references general statements from Department of Labor writings (*id.*, ¶¶ 70, 114) and two articles by Vanguard (*id.* ¶¶ 71-73, 84) – none of which contain actual legal authority or viable factual allegations.

**1.      Plaintiffs fail to allege that any of the Challenged Funds underperformed such that the Committee had reason to remove them from the lineup**.

Plaintiffs' attacks on the Challenged Funds remain incurably flawed because Plaintiffs still fail to allege that the Challenged Funds underperformed compared to appropriate benchmarks, such that the Committee had reason to remove them.  While Plaintiffs claim that the Committee offered the Challenged Funds in the Plan, "despite the availability of identical or materially similar investment options with lower costs and/or better performance histories" (FAC, Dkt. 51, ¶ 12), they do not allege that the Challenged Funds, *themselves*, poorly performed against viable benchmarks.  (*See id.*, ¶ 107 [alleging that "alternative funds" were "better performing alternatives to the Plan's funds," but not alleging that the *Challenged Funds* underperformed their benchmarks during this period].)

Plaintiffs further allege that NVIDIA and the Board breached their fiduciary duties by not removing Committee members who allegedly "continued to maintain imprudent, excessively costly, and poorly performing investments within the Plan." (FAC, Dkt. 51, ¶ 153(c).)  This bare assertion that certain investments were "poorly performing" in the context of Plaintiffs' duty to monitor claim (which, notably, is absent from Plaintiffs' allegations regarding the Committee's alleged fiduciary breaches) is not a plausible allegation that the Challenged Funds underperformed.

---

[6] Plaintiffs again allege that Defendants "select[ed]" and maintained the Challenged Funds in the Plan (*see id.,* ¶ 67), but they do not allege *when* any of these funds were *selected*.  To the extent that any of these funds were selected prior to six years before Plaintiffs filed this lawsuit (i.e., before August 28, 2014), any claims based on the *selection* of the funds are time-barred under ERISA's six-year statute of repose.  *See* ERISA § 413(1), 29 U.S.C. § 1113(1).

Trucker ✦ Huss
A Professional Corporation
135 Main Street, 9th Floor
San Francisco, California 94105

Trucker ♦ Huss
A Professional Corporation
135 Main Street, 9th Floor
San Francisco, California 94105

The only arguably specific allegation in the FAC regarding the performance of any of the Challenged Funds is Plaintiffs' allegation that the 5-year returns for the American Beacon Large Cap Value R5 fund were "worse than 73% of its peer funds" as of 2020. (FAC, Dkt. 51, ¶ 107.)  This misleading allegation, however, is not enough to establish that the American Beacon fund so poorly performed that the Committee should have removed it from the Plan's lineup during the relevant period.  Plaintiffs present only the 5-year performance record of this fund but ignore that this fund's performance matched its benchmark (the Russell 1000 index) over the past *10 years* (posting an 11.02% gain during this period versus 11.18% by the index). (Kang Dec., Ex. 15, 2019 Participant Disclosure, p. 10.)  Plaintiffs still assert no allegations that the American Beacon Large Cap Value R5 fund underperformed against its own benchmark in a manner that required its removal.[7]

Plaintiffs' failure to allege that the Challenged Funds underperformed is fatal to their claims that the Committee acted imprudently. *See Terraza*, 241 F. Supp. 3d at 1076 (a fiduciary's "failure to offer the investment option with the lowest expense ratio is not enough, on its own, to plausibly state a claim for breach of the duty of prudence," because the "fact that it is possible that some other funds might have had even lower ratios is beside the point; nothing in ERISA requires every fiduciary to scour the market to find and offer the cheapest possible fund") (citing *Hecker v. Deere & Co.*, 556 F.3d 575, 586 (7th Cir. 2009)).  *Terraza* held that alleging that investment options were too costly, without also plausibly alleging they underperformed, was insufficient to state an imprudence claim. *Id.* Plaintiffs' failure (and inability) to allege underperformance here warrants dismissal of this claim.

### 2. Identifying supposedly less expensive investment options in the marketplace is insufficient to state an imprudence claim.

The Order held that Plaintiffs' allegation that the Committee "fail[ed] to select funds with the lowest cost is insufficient to state a claim for breach of the duty of prudence." *Tobias*, 2021 WL 4148706, *14.  Nevertheless, the FAC again identifies other, purportedly "less expensive" investment funds and claim they were available in the market during the relevant period, offering no additional

---

[7] Even if Plaintiffs had viably alleged this fund performed poorly, which they have not, the Court previously concluded that "poor performance, standing alone, is not sufficient to create a reasonable inference that plan fiduciaries failed to conduct an adequate investigation . . . ERISA requires a plaintiff to plead some other indicia of imprudence." *Tobias*, 2021 WL 4148706, *9.

10

support for Plaintiffs' prudence claim. (*See* FAC Dkt. 51, ¶ 77.)   Courts reject this type of thin pleading. *See Tobias*, 2021 WL 4148706, *14; *Meiners,* 898 F.3d at 823–24 ("the existence of a cheaper fund does not mean that a particular fund is too expensive *in the market generally* or that it is otherwise an imprudent choice") (emphasis in original); *White II*, 2017 WL 2352137, *11 (dismissing similar claims because "the challenge was primarily based on speculation that Plan fiduciaries 'could have' provided identical, though lower-cost, versions of the funds").   Simply claiming that other funds may be preferable based on price, alone, is not sufficient to state a fiduciary breach claim. *See Tobias*, 2021 WL 4148706, *13; This is true because ERISA does not require fiduciaries to "scour the market to find and offer the cheapest possible fund (which might, of course, be plagued by other problems)." *Hecker*, 556 F.3d at 586; *see also Loomis v. Exelon Corp.*, 658 F.3d 667, 670-72 (7th Cir. 2011) (a plan committee is not required to offer any particular share class); *Renfro v. Unisys Corp.*, 671 F.3d 314, 319, 326-28 (3d Cir. 2011) (same).

Plaintiffs again allege that the Plan should have offered more (or only) passively managed investment options in the place of active Challenged Funds. (*See, e.g.*, FAC, Dkt. 51, ¶¶ 107-08, 110.) Again, there is *no requirement* that a plan offer a certain amount of actively (versus passively) managed funds. *See Davis v. Wash. Univ.*, 960 F.3d 478, 485 (8th Cir. 2020); *CareerBuilder*, 2020 WL 3578022 at *4; *Wildman v. Am. Century Servs., LLC*, 362 F. Supp. 3d 685, 704 (W.D. Mo. 2019). This is because passively managed and actively managed options have different investment styles, and plan fiduciaries have "latitude to value investment features other than price." *White II*, 2017 WL 2352137 at *11; *see also Turner ex rel. Davis N.Y. Venture Fund v. Davis Selected Advisers, LP,* 626 F. App'x 713, 717 (9th Cir. 2015); *Dorman v. Schwab,* No. 17-cv-00285-CW, 2018 WL 6803738, *3 (N.D. Cal. Sept. 20, 2018).   Consequently, passively managed funds "cannot serve as meaningful benchmarks for actively managed funds, because the two types of funds 'have different aims, different risks, and different potential rewards that cater to different investors.'" *Salesforce*, 2020 WL 5893405, *3-4 (reversed on other grounds). That is, simply labeling funds as 'comparable' or 'materially similar' is insufficient to establish that those funds are meaningful benchmarks to compare the performance of the challenged funds." *Tobias*, 2021 WL 4148706, *13.

If Plaintiffs could simply allege that the Plan should have offered passive options in the place

Trucker ♦ Huss
A Professional Corporation
135 Main Street, 9th Floor
San Francisco, California 94105

11

of active options, then all a plaintiff would need to do to proceed to discovery would be to claim that a plan's fiduciaries did not offer the cheapest funds.  Courts refuse to take that unsupported and extreme position.  *See Meiners*, 898 F.3d at 823-24; *Sacerdote v. N.Y. Univ.,* 328 F. Supp. 3d 273, 313 n.114 (S.D.N.Y. 2018) ("ERISA does not mandate passive management (with lower fees) over active management," citing *Hecker*, 556 F.3d at 586).

The Order has already forewarned Plaintiffs that their allegations cannot rest solely on the availability of passively managed funds:

> Plaintiffs' complaint lacks factual allegations to support a finding that the funds that Plaintiffs identify therein provide a meaningful benchmark against which to evaluate the performance of the challenged funds. Without sufficient factual allegations to support Plaintiffs' argument that the complaint compares fees incurred by the challenged funds with a meaningful benchmark, the Court cannot discern whether Plaintiffs are comparing funds that have different aims, different risks, and different potential rewards that cater to different investors. Accordingly, Plaintiffs' allegations regarding the availability of lower cost passively managed and actively managed funds are insufficient to state a claim for breach of the duty of prudence.

*Tobias*, 2021 WL 4148706, *13 (internal quotations and citations omitted).  In an attempt to show that the alternative investments presented in the FAC are meaningful benchmarks to the Challenged Funds, Plaintiffs now refer to "the Pearson correlation," which they claim is a "measure of linear correlation between two sets of data." (FAC, Dkt. 51, ¶ 106, n. 14.)  Plaintiffs then summarily posit that this "Pearson correlation" demonstrates that the "alternative funds identified [in their FAC] have historical correlation of greater than 90% with the fund in the Plan." (*Id.*, ¶ 106.)  Plaintiffs provide no explanation whatsoever regarding how they reach this "90%" figure or, assuming that figure is even accurate, how this purported correlation supports their claim that the Challenged Funds were imprudent choices.  The suggested alternative funds that Plaintiffs identify are nothing of the sort, and Plaintiffs do not add any new factual allegations that could plausibly lead to another conclusion.

### 3.   The median investment management fees from the ICI Study do not support Plaintiffs' imprudence claim.

The Order also dismissed Plaintiffs' claim that the Committee "fail[ed] to select funds with the lowest cost," because such a claim "is insufficient to state a claim for breach of the duty of prudence." *Tobias*, 2021 WL 4148706, *14.  Despite this clear holding, Plaintiffs once again assert that the Challenged Funds were overpriced based on their cost, alone, and attempt to establish

Trucker ♦ Huss
A Professional Corporation
135 Main Street, 9th Floor
San Francisco, California 94105

Trucker ♦ Huss
A Professional Corporation
135 Main Street, 9th Floor
San Francisco, California 94105

purported benchmarks for the investment management fees of various investments based on median fees from the 2016 ICI Study. (FAC, Dkt. 51, ¶ 77, n. 7.)  Numerous courts have dismissed imprudence claims that also relied on this ICI Study, which were strikingly similar to the claims that Plaintiffs assert in their FAC.  *See, e.g., Kong v. Trader Joe's Co. ("Kong I")*, CV-20-05790 PA (JEMx), 2020 WL 5814102, *7 (C.D. Cal. Sept. 24, 2020); rev'd on other grounds No. 20-56415, slip op. (9th Cir. Apr. 15, 2022); *CareerBuilder*, 2020 WL 3578022, *6.  This is true for multiple reasons.

*First,* the ICI Study presents *median* expense ratios for various mutual funds offered by 401(k) plans. (Kang Dec., Ex. 21, p. 60, Exhibit 4.7.)  Plaintiffs then compare those median ratios to the management fees of certain Challenged Funds and claim that any management fees *above* the median are excessive. (FAC, Dkt. 51, ¶ 77.)  But under this logic, *any* fund that is above the median fee in the ICI Study would be overpriced and an imprudent selection, thereby eliminating half of the mutual funds available in the retirement plan marketplace from inclusion in any defined contribution retirement plan, like the Plan.  Such a result would be untenable and extreme.  *Second,* the ICI Study includes traditionally less expensive passively managed index funds in its calculation of the median ratios. (Kang Dec., Ex. 21, p. 8.)  Including lower fees for passive funds in the calculation of a median ratio lowers the ratio itself.  Yet, Plaintiffs rely on this ICI Study to attack the Plan's purely *active* options. (FAC, Dkt. 51, ¶ 77 [comparing ICI Study medians to the *actively* managed T. Rowe Price Retirement suite of target date, Fidelity Contrafund K, American Beacon Large Cap Value Institutional, MainStay Large Cap Growth I, Victory RS Select Growth Y, and Fidelity Money Market Trust Retirement Government Money Market Portfolio funds].)  A study based on median fees of investments having different investment styles is not an appropriate point of comparison for the Challenged Funds, all of which are actively managed. This ICI Study does nothing to establish that the investment management fees of the Challenged Funds were imprudently expensive.

**4.      Plaintiffs' identification of allegedly lower-cost share classes of certain Challenged Funds does not state an imprudence claim.**

In the FAC, Plaintiffs again attempt to state an imprudence claim based on allegations that the Committee did not offer lower priced share classes of the T. Rowe Price, Fidelity Contrafund, and American Funds options, but they fail to cure any of the defects that the Court found in their initial

Trucker ♦ Huss
A Professional Corporation
135 Main Street, 9th Floor
San Francisco, California 94105

pleading. (FAC, Dkt. 51, ¶¶ 88, 89.)  The Order previously held that Plaintiffs' initial complaint alleged that the Committee should have offered the "K" class of the Fidelity Contrafund, and that the Plan did, in fact, offer the "K" class in its lineup. *Tobias*, 2021 WL 4148706, *10.  The Order concluded that this claim was insufficient to state an imprudence claim because the Committee offered the same share class that Plaintiffs admit was a prudent choice. *Id.*  Despite this clear ruling, Plaintiffs again allege that the Committee should have offered the Fidelity Contrafund "K" class. (FAC, Dkt. 51, ¶ 89.)  This claim should, again, be dismissed.

Plaintiffs' claims regarding the T. Rowe Price and American Funds options once again fail. In the Order, the Court agreed with Defendants that the difference in price between the challenged share classes of the T. Rowe Price and American Funds options and Plaintiffs' proposed alternatives was "attributable to the fact that the higher cost funds offered by the Plan provided revenue sharing, whereas the lower cost funds that Plaintiffs prefer did not." *Tobias*, 2021 WL 4148706, *11.  Like "other courts in this circuit that have considered similar allegations," the Court held "that Plaintiffs' allegations regarding the availability of lower cost share classes are, without more, insufficient to state a claim for breach of the duty of imprudence." *Id.*  Plaintiffs' FAC does not address the Court's findings regarding this revenue sharing component whatsoever, and, consequently, their share class claim remains insufficient.

The Ninth Circuit Court of Appeals recently issued two unpublished opinions[8] that reversed two lower courts' dismissal orders and held that the plaintiffs had adequately pleaded an imprudence claim based, in part, on allegations that the defendants failed to offer an allegedly lower cost share class of certain investment options. *See Kong v. Trader Joe's Co.,* No. 20-56415, slip op. at 3 (9th Cir. Apr. 15, 2022); *Davis v. Salesforce.com, Inc.,* No. 21-15876, 2022 WL 1055557, *1 (9th Cir. 2022). The Ninth Circuit held that the plaintiffs in those cases plausibly alleged that the plan committees should have offered a lower cost share class of purportedly identical funds that were offered by those plans. *Kong,* No. 20-56415, *3; *Salesforce,* 2022 WL 1055557, *4-5.  While both

---

[8] Because these decision are unpublished, they are not precedential or binding on this Court under Federal Rule of Appellate Procedure ("FRAP") 36-3. FRAP 32.1 allows unpublished decisions issued after January 1, 2007 to be cited to courts within the circuit only as persuasive authority.

opinions acknowledged that the defendants had explained that the difference in price was due to the fact that the plans' funds offered revenue sharing, the Ninth Circuit concluded that was required to accept the plaintiffs' explanations as true at the pleading stage. *Id.*  Defendants respectfully posit that these holdings are incorrect and contradicted by Ninth Circuit law.[9]

In a prior decision, the Ninth Circuit affirmed the decision in *White II,* which reasoned:

> Plaintiffs continue to argue that defendants have an obligation to provide an alternative explanation for the selection of higher-cost share classes for certain funds (which would appear to shift the burden to defendants). However, plaintiffs themselves have already offered an explanation. For example, plaintiffs allege … [the plan's recordkeeper] received 10 bps of internal revenue sharing on the retail (Investor) share class [] mutual funds in order to pay for recordkeeping. This provides an "obvious, alternative explanation" for why the [] Plan included retail share classes of certain funds—those share classes paid the Plan's recordkeeping expenses.

2017 WL 2352137, *14 (dismissing similar claims; internal citations omitted); *aff'd* 752 F. App'x 453.  Courts have consistently agreed that revenue sharing is an acceptable practice (*see White II,* 2017 WL 2352137, *14; *Marks v. Trader Joe's Co.,* No. CV 19-10942 PA (JEMx), 2020 WL 2504333, *6-7 (C.D. Cal. Apr. 24, 2020); *Tussey v. ABB, Inc.,* 746 F.3d 327, 335 (8th Cir. 2014), as Plaintiffs admit (*see* FAC, Dkt. 51, ¶ 126).  If the only difference in price between two share classes is based entirely on revenue sharing (which Plaintiffs do not dispute in this case), and Plaintiffs admit that revenue sharing is acceptable, it is not plausible to allege that the Committee *should have* switched to an option that did not offer revenue sharing.  That is, if the only difference in price between the share classes is based on revenue sharing, this is not merely another explanation that must be considered by the court.  Revenue sharing, alone, is the reason for that difference in price, which renders Plaintiffs' allegations implausible.

In this case, the Committee replaced the T. Rowe Price Retirement suite with the lower priced "F" collective trust versions of these funds and the American Funds Europacific Growth R5 fund with the "R6" share class in 2018.  (Kang Dec., Ex. 3-9, 2014-2020 Forms 5500; Ex. 23, Appendix A.)  Although Plaintiffs claim that the "I" class versions of the T. Rowe Price Retirement funds "were

---

[9] The *Salesforce* and *Kong* defendants have the right to seek a panel rehearing or rehearing *en banc* of this decision (*see* FRAP 35, 35-1-3, 40, 40-1) and/or petition the Supreme Court for certiorari to review the Ninth Circuit's decision (S. Ct. R. 10), which Defendants believe they are likely to do.

Trucker ♦ Huss
A Professional Corporation
135 Main Street, 9th Floor
San Francisco, California 94105

identical" to the share class of these funds that the Plan offered until 2018 "in all aspects except for price" (*id.*), this difference in price was based on the fact that the T. Rowe Price Retirement suite offered 0.15% of revenue sharing while the "I" class did not. (*See, e.g.,* Kang Dec., Ex. 3, 2014 Form 5500, pp. 56-59.) Similarly, the difference in price between the R5 and R6 share classes of the American Funds Europacific Growth option is that the R5 version offered 0.05% in revenue sharing, and the R6 version did not. (*See, e.g.,* Kang Dec., Ex. 6, 2017 Form 5500, p. 8.) Plaintiffs' attack on these funds is *still* simply an attack on the acceptable practice of revenue sharing, which this Court has previously rejected (*see Tobias*, 2021 WL 4148706, *11), and which is addressed in Section V(B)(3) below. *See also Tussey,* 746 F.3d at 335-36; *Marks,* 2020 WL 2504333, *6.

*Tibble v. Edison International*, which Plaintiffs once again cite, is distinguishable because that case involved a set of true "retail class" shares of the same mutual funds where less expensive "institutional" shares were also available. No. CV 07-5359SVW(AGRx), 2017 WL 3523737, *7 (C.D. Cal. Aug. 16, 2017). The difference in price between the share classes at issue in *Tibble* had nothing to do with revenue sharing. *See id.* (noting that the defendants attempted to justify "selecting the retail-class shares because these shares had more public information available, because participants would be confused by proposed changes in the switch from retail to institutional shares, or because the Plan did not qualify for the investment minimum," and not because one share class offered revenue sharing and the other did not).

Moreover, even if Plaintiffs had alleged that the Plan offered higher-cost share classes of the same investments *independent* of revenue sharing, such a claim would still fail because merely alleging that a fiduciary did not offer a different share class of a particular investment option, is, without more, insufficient to state an imprudence claim. *See Tobias*, 2021 WL 4148706, *11 (citing *Marks,* 2020 WL 2504333, *7; "ample authority holds that merely alleging that a plan offered retail rather than institutional share classes is insufficient to carry a claim for fiduciary breach"); *White II*, 2017 WL 2352137, *11; "courts have dismissed claims that fiduciaries are required to offer institutional over retail-class funds, or are required to offer a particular mix of investment vehicles, as well as claims that fiduciaries were imprudent in failing to offer cheaper funds . . . fiduciaries have latitude to value investment features other than price (and indeed are required to do so)"; *Tibble v.*

16

*Edison Int'l*, 729 F.3d 1110, 1135 (9th Cir. 2013), *rev'd on other grounds*, 575 U.S. 523 (2015), where the Ninth Circuit rejected an argument that, in lieu of "retail-class mutual funds," fiduciaries "should have offered only . . . 'institutional' funds"; finding "[t]here are simply too many relevant considerations for a fiduciary, for that type of bright-line approach to prudence to be tenable").

### 5. The Committee was not required to offer collective investment trusts.

Plaintiffs' FAC again presents allegations that the Committee should have offered the CIT versions of the T. Rowe Price Retirement target date suite (FAC, Dkt. 51, ¶ 96), which the Order correctly held were meritless. *See Tobias*, 2021 WL 4148706, *12 (the "Court agrees with Defendants that Plaintiffs' allegations regarding the availability of collective trust funds fail to state a claim for imprudence . . . as several courts have recognized, plans are under no duty to offer alternatives to mutual funds, even when the plaintiffs argue they are markedly superior") (internal quotation omitted). Plaintiffs' FAC added no new allegations to this claim, which the Court determined "fail[ed] to state a claim for breach of the duty of imprudence." *Id.* For the same reasons that the Court rejected this claim in Plaintiffs' initial complaint, it should reject it in the FAC.

Moreover, the Committee *did in fact* replace the T. Rowe Price Retirement suite with the collective trust "F Class" version of these funds in 2018. (Kang Dec., Ex. 14, 2018 Participant Disclosure, pp. 11-13.) And since the time of the Order, the Committee once again replaced the T. Rowe Price target date suite with a yet *lower* cost CIT "B" class of these funds, lowering the management fees for these funds from 0.43% to 0.37%. (Kang Dec., Ex. 23, Appendix A.) In any event, the Order agreed that the Committee was not *required* to offer any amount of CIT options even if those options carried lower investment management fees. *See Tobias*, 2021 WL 4148706, *11; *see Moitoso v. FMR LLC,* No. CV 18-12122-WGY, 2020 WL 1495938,*13 (D. Mass. Mar. 27, 2020)); *Hecker*, 556 F.3d at 586 (noting, "[w]e see nothing in the [ERISA] statute that requires plan fiduciaries to include any particular mix of investment vehicles in their plan"); *White II*, 2017 WL 2352137, *11 (it is "inappropriate to compare [mutual funds and collective trusts] solely by cost, since their essential features differ so significantly"). This claim remains deficient and unsupported.

In the recent *Salesforce* and *Kong* decisions, noted above, the Ninth Circuit held that the plaintiffs had plausibly alleged that the retention of the mutual fund versions of certain funds when

Trucker ♦ Huss
A Professional Corporation
135 Main Street, 9th Floor
San Francisco, California 94105

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES; Case No. 5:20-cv-06081-JST
6995351.8

lower cost CIT versions of those funds were available was sufficient to create an inference of imprudence. *See* 2022 WL 1055557, *4-5. Defendants respectfully posit that this holding is incorrect and contradicted by other Ninth Circuit law. In *White II*, which the Ninth Circuit affirmed, the trial court held that "mutual funds have unique regulatory and transparency features, which make any attempt to compare them to other investment vehicles such as collective trusts and separate accounts an "apples-to-oranges" comparison." 2017 WL 2352137, *11; *aff'd* 752 F. App'x 453. Neither *Salesforce* nor *Kong* addresses or cites *White*.

**B.    Plaintiffs failed to allege that the Plan paid unreasonable recordkeeping fees or that the Plan's revenue sharing arrangement was improper.**

Plaintiffs again fail to plausibly allege that the Committee acted imprudently based on claims that the fixed, per participant recordkeeping fees paid to Fidelity during the relevant period were excessive. From the beginning of the relevant period to March 31, 2018, the Plan paid Fidelity a fixed, per participant annual fee that ranged from $63 to $52 per participant, which was offset through revenue sharing *up to* this contractual amount. (FAC, Dkt. 51, ¶ 131; Kang Dec., Ex. 19, Fidelity Agreement, p. 7.) On or after April 1, 2018, NVIDIA, as the Plan sponsor, paid Fidelity's recordkeeping fees that were not offset by revenue sharing directly, and these direct payments were not Plan expenses. (Kang Dec., Ex. 19, Fidelity Agreement, p. 9.) To the extent that Plaintiffs' recordkeeping claims are based on payments that NVIDIA made after April 2018, such claims are meritless because the Plan or its participants did not make those payments and they could not have been injured by supposed unreasonable recordkeeping fees that they did not pay. Moreover, since the Court's dismissal order, the Committee successfully negotiated lowering the Plan's recordkeeping fee even further to $48 per participant. (Kang Dec., Ex. 20, Fidelity Agreement, p. 3.) NVIDIA still pays these fees directly to Fidelity – not the Plan's participants. (*Id.*)

**1.    Plaintiffs again fail to sufficiently allege a viable benchmark to measure the reasonableness of the Plan's recordkeeping fees.**

The Order previously agreed that "Defendants are correct that Plaintiffs have failed to allege that the fees paid by the Plan for recordkeeping services were excessive in relation to the services actually provided to the Plan." *Tobias*, 2021 WL 4148706, *14. In reaching this conclusion, the Court

Trucker ♦ Huss
A Professional Corporation
135 Main Street, 9th Floor
San Francisco, California 94105

noted that "[f]ederal district courts in California have held that a plaintiff must plead administrative fees that are excessive in relation to the *specific services* the recordkeeper provided to the specific plan at issue." *Id.* (citing *Genentech,* 2021 WL 507599, *5). "Thus," the Order continued, "in order to state a claim for breach of the duty of prudence, a plaintiff must allege facts from which one could infer that the *same services* were available for less on the market" and "Plaintiffs fail to provide any allegations regarding the specific services actually provided to the Plan by Fidelity." *Id.*, *14-15 (emphasis in original).  Plaintiffs' FAC alleges no new facts that meet this burden to support a claim that the services that *Fidelity provided to the Plan* were available for a lower fee in the market, and their recordkeeping claim remains insufficiently pleaded.

In the FAC, Plaintiffs now attempt to support their recordkeeping claim by alleging: (1) the significant number of participants in the Plan gave the Plan greater bargaining power to obtain lower recordkeeping fees (FAC Dkt. 51, ¶¶ 11, 135, 140); and (2) large "national" recordkeeping firms provide all recordkeeping services at very little cost, those recordkeepers are "competent," and the difference between those services is only the cost (*id.*, ¶¶ 119, 121-23).[10]   These conclusory allegations fail to cure the defects in Plaintiffs' recordkeeping claim.  Regarding Plaintiffs' first allegation, it is incorrect to assume that recordkeeping fees are negotiated based on the number of participants *alone*, without taking into account what services the recordkeeper is providing to those participants – as the Order previously acknowledged. *See Tobias*, 2021 WL 4148706, *14.

Likewise, it is simply incorrect that all large recordkeeping firms provide the exact same services to every plan across the country, with the only difference being the price of those services. Recordkeeping services and fee structures vary widely among plans based on a number of factors, including the makeup of the participant population, amount of assets under management, and services rendered for those fees. *See, e.g., Renfro*, 671 F.3d at 327; *Young v. Gen. Motors Inv. Mgmt. Corp.*, 325 F. App'x 31, 33 (2d Cir. 2009) (dismissing an excessive fee claim because the plaintiffs "fail to

---

[10] Plaintiffs' FAC cites a 2015 article titled *Evaluating 401k Providers: Separating Commodity from Value-Added Services,* for the proposition that 401(k) services can be thought of as a "commodity service." (FAC, Dkt. 51, ¶¶ 121-22; Kang Dec., Ex. 22.)  This article is unhelpful to Plaintiffs' claims because it merely provides an author's opinion, is not legal authority, and still fails to address the services that Fidelity provides to the Plan or a reasonable fee for those specific services. (*Id.*)

Trucker ♦ Huss
A Professional Corporation
135 Main Street, 9th Floor
San Francisco, California 94105

Trucker ♦ Huss
A Professional Corporation
135 Main Street, 9th Floor
San Francisco, California 94105

allege that the fees were excessive relative to the services rendered"); *Gartenberg v. Merrill Lynch Asset Mgmt., Inc.*, 694 F.2d 923, 928 (2d Cir.1982) (to state an excessive fees claim, the fee must be "so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's-length bargaining"). Like their initial complaint, Plaintiffs' FAC provides "no allegations regarding the average costs paid by plans receiving services that are the same or materially similar to those provided by Fidelity to the Plan in the instant case." *Tobias*, 2021 WL 4148706, *15. Plaintiffs' failure to sufficiently allege a viable benchmark for the Plan's recordkeeping fees once again renders this claim deficient because Plaintiffs have not plausibly alleged that the Plan's recordkeeping fees were unreasonably high.

Moreover, Plaintiffs once again attempt to manufacture a benchmark to demonstrate that the Plan's recordkeeping fees were excessive by relying on a *401k Averages Book*, which, as they admit, is based on "studies [of] Plan fees for smaller plans . . . under $200 million in assets." (FAC, Dkt. 51, ¶ 136.) Plaintiffs further claim that they may rely on this purported data to "extrapolate from the data what a bigger plan like the Plan should be paying for recordkeeping." (*Id.*, ¶ 136.) This study of dissimilar plans does not provide a suitable comparator for the Plan's fees because it does not take into account the specific qualities of the Plan, as discussed below. And Plaintiffs' suppositions about the amount of the Plan's recordkeeping fees are plainly wrong. Plaintiffs claim that this study shows that a reasonable per participant, direct recordkeeping fee would have been $5 per participant. (*Id.*) Plaintiffs then claim that the Plan paid Fidelity "additional fees on top of direct compensation in the form of revenue sharing." (*Id.*, ¶ 137.) This incorrect characterization makes it seem like the Plan's $63 to $48 fixed, per participant fee was just one component of its overall recordkeeping fees, but in actuality these fixed fees were indeed fixed – they were the *total* amount of recordkeeping fees paid to Fidelity during the relevant period. (FAC, Dkt. 51, ¶ 131; Kang Dec., Ex. 19, Fidelity Agreement, p. 7; Ex. 20, Fidelity Agreement, p. 3.) That is, *both* direct and indirect compensation paid to Fidelity *combined* to amount to these fixed fees, and Fidelity received only this contracted rate.

The requirement is that the Plan's recordkeeping fees be "reasonable" based on the value of the services that Fidelity provides *for the Plan*. *See Hecker*, 556 F.3d at 586; *Renfro*, 2010 WL 1688540, *6 ("ERISA does not require fiduciaries to get the best deal imaginable for the Plan"), *aff'd*,

20

671 F.3d 314 (3d Cir. 2011)).  Plaintiffs do not allege that the per participant fees that the Plan paid Fidelity before NVIDIA paid the recordkeeping fees were unreasonable based on the services provided to the Plan, and such allegations are insufficient to state a claim.  *See Young*, 325 F. App'x. at 33 (plaintiffs must "allege that the fees were excessive relative to the services rendered" (internal cites omitted)).

Courts have dismissed similar "unreasonable recordkeeping fee" claims like Plaintiffs assert in their FAC – in cases involving fees that were higher than those the Plan paid Fidelity during the relevant period. *See, e.g., CareerBuilder,* 2020 WL 3578022, *1 ($136.39 to $222.43); *White II*, 2017 WL 2352137, *15–16 ($167 to $181).  And although Plaintiffs claim that "reasonable [per participant recordkeeping] rates for large plans . . . typically average around $35 per participant" (Dkt. 1, ¶ 129), they allege no factual support for this arbitrary number, and this claim should be dismissed.

### 2. There is no requirement that the Plan conduct requests for proposals for recordkeeping services on any particular interval.

Plaintiffs again claim that the Committee could have obtained a reasonable fee if it conducted more frequent RFPs for recordkeeping services. (FAC, Dkt. 51, ¶ 130.)  In the Order, the Court agreed that "Defendants correctly point out, courts in this circuit have repeatedly held that fiduciaries are under no obligation to regularly conduct competitive bidding for recordkeeping services." *Tobias*, 2021 WL 4148706, *15.  Plaintiffs ignored the Court's holding and simply realleged this claim.  The Committee was not required to conduct any amount of recordkeeping RFPs at any periodic interval. *See Id.; Marks*, 2020 WL 2504333, *7; *White v. Chevron Corp.* (*White I*), No. 16-cv-793-PJH, 2016 WL 4502808, *14 (N.D. Cal. Aug. 29, 2016); *see also Del Castillo v. Cmty. Child Care Council of Santa Clara Cty., Inc.*, No. 17-cv-07243, 2019 WL 6841222, *5 (N.D. Cal. Dec. 16, 2019) ("absence of competitive bidding, . . . without more, does not support Plaintiffs' allegations that the [defendants] acted imprudently")).  Further, such claims are properly dismissed where, as here, Plaintiffs do not allege that a "competitive bid would have benefitted the [Plan]," or "that the same service were available for less on the market." *Del Castillo*, 2019 WL 6841222, *5; *see also Tobias*, 2021 WL 4148706, *15 ("Plaintiffs have failed to allege any facts from which one could infer that a competitive bidding service would have benefitted the Plan").

Trucker ♦ Huss
A Professional Corporation
135 Main Street, 9th Floor
San Francisco, California 94105

### 3. Plaintiffs' attacks on revenue sharing remain insufficient to state a claim.

Plaintiffs again challenge to the acceptable practice of revenue sharing (*see, e.g.,* FAC, Dkt. 51, ¶¶ 125-27, 131-32, 137) – a challenge that courts have consistently rejected. *See White II*, 2017 WL 2352137, *14; *Marks*, 2020 WL 2504333, *6-7; *Tussey,* 746 F.3d at 335.  As noted, Plaintiffs admit that "utilizing a revenue sharing approach is not *per se* improper." (FAC, Dkt. 51, ¶ 126.)  Both ERISA and the Plan allow plan fiduciaries to pay permissible administrative expenses (like recordkeeping) using Plan assets. *See* U.S. Dep't of Lab., Emp. Benefits Security Admin., Field Assistance Bull. 2003-3 (May 19, 2003) (discussing how plans may properly use plan assets to pay "certain fixed administrative expenses of the plan, such as recordkeeping . . ."); *see also The 401(k) Handbook § 285, Plan Expenses,* 2018 WL 7953446 ("If a provision in the plan document permits payment of plan expenses out of plan assets expenses may be charged to a plan"). The Plan's revenue sharing arrangement did just that – amounts collected through revenue sharing were used to offset Fidelity's fixed recordkeeping fees, and any excess was deposited into the RCA and were then available for the Committee to offset the Plan's administrative expenses. (Kang Dec., Ex. 1, Plan Document, Adoption Agreement § 19.05, p. 68; Ex. 18, Fidelity Agreement, pp. 2-4; Ex. 19, Fidelity Agreement, pp. 3-11; Ex. 20, Fidelity Agreement, p. 3.)

Plaintiffs further claim that, instead of using revenue sharing to offset administrative expense, a "more prudent arrangement . . . would have been . . . for the Defendants to negotiate and/or obtain reasonable direct compensation per participant recordkeeping/administrative costs." (FAC, Dkt. 51, ¶ 132.)  But a decision to pay administrative expenses under such a structure would be a settlor function that cannot give rise to fiduciary liability. *See Loomis,* 658 F.3d at 671 (such a decision "is a question of plan design, not of administration" and "[f]iduciary duties under ERISA are limited to a requirement of honest and prudent management of the assets that are under an administrator's control," and "the participants' argument that [the plan sponsor] should have ponied up additional money . . . is a non-starter"); *Lockheed Corp. v. Spink*, 517 U.S. 882, 891 (1996) (finding plan sponsor "acted not as a fiduciary but as a settlor when it amended the terms of the Plan" and, therefore, ERISA's "requirement of fiduciary status [was] not met").

Moreover, while Plaintiffs allege there was an "excess amount of money taken from revenue

Trucker ♦ Huss
A Professional Corporation
135 Main Street, 9th Floor
San Francisco, California 94105

sharing that was never used to pay for recordkeeping and administrative costs . . ." (FAC, Dkt. 51, ¶ 132), they do not present sufficient factual details that this actually occurred.  A complaint, like Plaintiffs' here, is insufficient "if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal citations omitted).  Even assuming the revenue sharing numbers that Plaintiffs present in Paragraph 131 of their FAC are accurate (which Defendants deny), their chart shows that in certain years, the amounts collected through revenue sharing were *in*sufficient to cover Fidelity's contracted rates, making it impossible for Fidelity to have somehow retained excess revenue sharing. (*Id.*, ¶ 131 [showing that in 2014 and 2016, the Plan made "Hard Dollar Payments" to Fidelity in addition to amounts collected through revenue sharing].)  And, as noted, if there were any excess amount of revenue sharing in the RCA, those amounts could be used to offset the Plan's administrative expenses or be allocated to participants. (Kang Dec., Ex. 18, Fidelity Agreement, pp. 2-4; Ex. 19, Fidelity Agreement, pp. 3-11; Ex. 20, Fidelity Agreement, p. 3.)  Any claim that Fidelity was permitted to retain any such amounts remains entirely unsupported.

In conclusion, Plaintiffs have failed to cure the fundamental deficiencies in their imprudence claim and, like their initial complaint, "whether considered individually or collectively, Plaintiffs' allegations are insufficient to state a claim for breach of the duty of prudence." *Tobias*, 2021 WL 4148706 at *15. Consistent with the Order, Defendants respectfully request that the Court dismiss Plaintiffs' imprudence claim with prejudice. *Id.*, *17.

### C.    Plaintiffs' duty to monitor claim also fails.

Plaintiffs' second claim against NVIDIA and the Board should be dismissed because it is entirely dependent on the outcome of Plaintiffs' first claim (i.e., whether the Committee did in fact act imprudently), so it fails for the same reasons that Plaintiffs' first claim fails. *See Tobias*, 2021 WL 4148706, *16-17 (holding, "Plaintiffs' failure to monitor claim necessarily fails because Plaintiffs have failed to state an underlying ERISA violation"); *White I*, 2016 WL 4502808, *19 (agreeing that a duty to monitor claim was "derivative" of the plaintiffs' breach of prudence cause of action because "the claim as pled is wholly dependent on the breaches of duty alleged in the first through fourth causes of action," and dismissing the claim based on findings that the plaintiffs failed to state their prudence claims);; *Marks*, 2020 WL 2504333, *8; *Dorman*, 2018 WL 6803738, *7.

Trucker ♦ Huss
A Professional Corporation
135 Main Street, 9th Floor
San Francisco, California 94105

23

Trucker ♦ Huss
A Professional Corporation
135 Main Street, 9th Floor
San Francisco, California 94105

Moreover, to adequately plead a claim based on an alleged failure to monitor, Plaintiffs must plausibly allege that NVIDIA and/or the Board failed to review the Committee's performance at "reasonable intervals . . . in such manner as may be reasonably expected to ensure that [its] performance has been in compliance with the terms of the plan and statutory standards and satisfies the needs of the plan." 29 C.F.R. § 2509.75-8.  Plaintiffs present no such allegations here, and their duty to monitor claim fails on this basis as well. *See White I*, 2016 WL 4502808, *19 (dismissing claim because the "plaintiffs allege no facts showing how the monitoring process was deficient"); *In re Nokia ERISA Litig.*, No. 10-cv-3306, 2011 WL 7310321, *5 (S.D.N.Y. Sept. 6, 2011).

For the reasons noted, Plaintiffs failed to cure the deficiencies in their imprudence claim and, consequently, their derivative duty to monitor claim should be dismissed with prejudice as well consistent with the Order. *See Tobias*, 2021 WL 4148706, *15, 17.

**D.     *Hughes* does not save Plaintiffs' imprudence claim from dismissal.**

The Supreme Court's decision in *Hughes v. Northwestern University* does not spare Plaintiffs' imprudence claim from dismissal.  It has no impact on Defendants' arguments or the Order.  *Hughes* simply reaffirmed the Supreme Court's prior holding in *Tibble v. Edison Int'l*, 575 U.S. at 530-31, and remanded the case to the lower court to "consider whether petitioners have plausibly alleged a violation of the duty of prudence as articulated in *Tibble*." 142 S. Ct. at 742.  Specifically, *Hughes* held that the lower court's decision to dismiss the plaintiffs' imprudence claim was flawed because it was based on a holding "that petitioners' preferred type of low-cost investments were available as plan options." *Id.*  In *this* case, however, Defendants do not argue that the inclusion of any of Plaintiffs' preferred options (i.e., passively managed funds) in the Plan is a reason to dismiss Plaintiffs' imprudence claim. (*See* Section 5(A), *infra*.)  Likewise, the Order was not based on the flawed lower court holding described in *Hughes*. (*See Tobias*, 2021 WL 4148706.)

Moreover, Defendants have demonstrated that Plaintiffs' imprudence claim fails under the *Tibble* standard (*see, infra*, at p. 16), and the Order considered and cited *Tibble* in holding that Plaintiffs' imprudence claim should be dismissed (*see Tobias*, 2021 WL 4148706, *9)  There are no arguments in Defendants' present Motion, or any holdings in the Order, that are inconsistent with *Tibble* or, consequently, inconsistent with *Hughes*.  Plaintiffs' FAC should be dismissed, and *Hughes*

24

does not alter that conclusion.

## VI.   **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court dismiss Plaintiffs' FAC in its entirety and with prejudice because Plaintiffs failed to cure the deficiencies in each of their claims for relief.

DATED: April 15, 2022                     TRUCKER ✦ HUSS, APC

By: /s/ *Clarissa A. Kang*
Clarissa A. Kang
Dylan D. Rudolph
Catherine L. Reagan
Attorneys for Defendants
NVIDIA CORPORATION, THE BOARD OF DIRECTORS OF NVIDIA CORPORATION, THE 401(k) BENEFITS PLAN COMMITTEE OF NVIDIA CORPORATION

Trucker ✦ Huss
A Professional Corporation
135 Main Street, 9th Floor
San Francisco, California 94105