1  Clarissa A. Kang, No. 210660
   Dylan D. Rudolph, No. 278707
2  Catherine L. Reagan, No. 327702
   TRUCKER ✦ HUSS
3  A Professional Corporation
   135 Main Street, 9th Floor
4  San Francisco, CA  94105
   Telephone:    (415) 788-3111
5  Facsimile:    (415) 421-2017
   E-mail:    ckang@truckerhuss.com
6            drudolph@truckerhuss.com
             creagan@truckerhuss.com
7
   Attorneys for Defendants
8  NVIDIA CORPORATION, THE BOARD OF
   DIRECTORS OF NVIDIA CORPORATION,
9  THE NVIDIA 401(k) PLAN BENEFITS
   COMMITTEE (incorrectly named and sued as
10 THE 401(k) BENEFITS PLAN COMMITTEE
   OF NVIDIA CORPORATION)

11

12                    UNITED STATES DISTRICT COURT

13                  NORTHERN DISTRICT OF CALIFORNIA

14                        (OAKLAND DIVISION)

15

16 CRISTINA TOBIAS, ANTHONY              Case No. 5:20-cv-06081-JST
   BRIGGS, ANN MACDONALD and
17 DAVID CALDER, individually and on     **REPLY TO PLAINTIFFS' OPPOSITION
   behalf of all others similarly situated,  TO DEFENDANTS' MOTION TO
18                                        DISMISS PLAINTIFFS' FIRST
                   Plaintiffs,           AMENDED COMPLAINT**
19
          vs.                            **[Fed. R. Civ. Pro. 12(b)(6)]**
20
   NVIDIA CORPORATION, THE               Date:   June 30, 2022
21 BOARD OF DIRECTORS OF NVIDIA          Time:   2:00 p.m. (PST)
   CORPORATION, THE 401(K) BENEFITS      Dept.:  Courtroom 6, 2nd Floor
22 PLAN COMMITTEE OF NVIDIA              Judge:  Hon. Jon S. Tigar
   CORPORATION, and JOHN
23 DOES 1-30,

24                 Defendants.

25

26

27

28

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ..................................................................................................................1

II.    ARGUMENT ........................................................................................................................3

      A.    Plaintiffs' allegations regarding the Challenged Funds remain insufficient to create a plausible inference that Defendants acted imprudently. ................................ 3

            1.    The Committee was not required to replace the American Beacon, MainStay, Victory RS, Fidelity Money Market, JPMorgan, Fidelity Contrafund, or T. Rowe Price options with passively managed options..........3

            2.    Allegations that the expense ratios of the American Beacon, MainStay, Victory RS, Fidelity Money Market, Fidelity Contrafund, to T. Rowe Price options were too high, without more, are insufficient to state an imprudence claim. .................................................................................................4

            3.    Plaintiffs' allegations that the T. Rowe Price, American Funds, and Fidelity Contrafund K options were not in the lowest cost share class do not support their imprudence claim. ................................................................6

            4.    The Committee was not required to move the T. Rowe Price options to collective investment trust versions sooner than it did in 2018.......................9

            5.    *Hughes, Salesforce,* and *Trader Joe's* do not save Plaintiffs' claims. ...........10

      B.    Plaintiffs' recordkeeping allegations remain insufficient..........................................11

      C.    Plaintiffs' duty to monitor claim fails because their imprudence claim fails. ...........15

III.    CONCLUSION ...................................................................................................................15

Trucker ♦ Huss
A Professional Corporation
135 Main Street, 9th Floor
San Francisco, California 94105

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................................ 14

*Bell Atl. Corp v. Twombly*,
  550 U.S. 544 (2007) ........................................................................................ 14

*Davis v. Salesforce.com, Inc.*,
  2022 WL 1055557 (9th Cir. 2022) ................................................... 1, 4, 7, 10,11

*Davis v. Wash. Univ.*,
  960 F.3d 478 (8th Cir. 2020) ........................................................................ 3, 8

*Del Castillo v. Cmty. Child Care Council of Santa Clara Cty., Inc.*,
  2019 WL 6841222 (N.D. Cal. Dec. 16, 2019) .............................................. 13

*Disselkamp v. Norton Healthcare, Inc.*,
  2019 WL 3536038 (W.D. Ky. Aug. 2, 2019) .................................................. 8

*Dorman v. Schwab*,
  2018 WL 6803738 (N.D. Cal. Sept. 20, 2018) ................................................ 4

*Hecker v. Deere & Co.*,
  556 F.3d 575 (7th Cir. 2009) ............................................................ 5, 9, 10, 12

*Hughes v. Northwestern Univ.*,
  142 S. Ct. 737 (2022) ........................................................... 1, 10, 11, 14

*Johnson v. Fujitsu Tech. and Bus. Of AM., Inc.*,
  250 F. Supp. 3d 460 (N.D. Cal. 2017) ............................................................ 8

*Johnson v. Providence Health Servs. et al.*,
  2018 WL 1427421 (W.D. Wash. Mar. 22, 2018) ............................................ 9

*Kong v. Trader Joe's Co.*,
  2022 WL 1125667 (9th Cir. 2022) ..........................................................*passim*

*Lockheed Corp. v. Spink*,
  517 U.S. 882 (1996) ........................................................................................ 13

*Loomis v. Exelon Corp.*,
  658 F.3d 667 (7th Cir. 2011) ........................................................................ 5, 13

*Marks v. Trader Joe's Co.*,
  2020 WL 2504333 (C.D. Cal. Apr. 24, 2020) ............................................ 13, 14

Trucker ♦ Huss
A Professional Corporation
135 Main Street, 9th Floor
San Francisco, California 94105

*Martin v. CareerBuilder*,
    2020 WL 3578022 (N.D. Ill. Jul 1, 2020) ........................................................... 3

*Meiners v. Wells Fargo & Co.*,
    898 F.3d 820 (8th Cir. 2018) ......................................................................... 4, 5

*Moitoso v. FMR LLC*,
    451 F. Supp. 3d 189 (D. Mass. 2020) .................................................. 10, 12, 13

*Renfro v. Unisys Corp.*,
    671 F.3d 314 (3d Cir. 2011) ................................................................. 5, 12, 13

*Schneider v. Cal. Dep't of Corr.*,
    151 F.3d 1194 (9th Cir. 1998) ........................................................................ 8

*Terraza v. Safeway Inc.*,
    241 F. Supp. 3d 1057 (N.D. Cal. 2017).......................................... 2, 5, 6, 7, 8, 14

*Tibble v. Edison Int'l*,
    575 U.S. 523 (2015) .............................................................................. 1, 6, 9

*Turner ex rel. Davis N.Y. Venture Fund v. Davis Selected Advisers, LP*,
    626 F. App'x 713 (9th Cir. 2015).................................................................... 4

*Tussey v. Abb, Inc.*,
    746 F.3d 327 (8th Cir. 2014) ..................................................................... 7, 13

*Wehner v. Genentech, No. 20-cv-06894*,
    2021 WL 507599 (N.D. Cal. Feb. 9, 2021) ................................................ 12, 13

*White v. Chevron Corp.*,
    2016 WL 4502808 (N.D. Cal. Aug. 29, 2016) ......................................... 10, 13, 15

*White v. Chevron Corp.*,
    2017 WL 2352137 (N.D. Cal. May 31, 2017), *aff'd* 752 F. App'x 453 (9th Cir.
    2018)............................................................................................... *passim*

*Wildman v. Am. Century Servs., LLC*,
    362 F. Supp. 3d 685 (W.D. Mo. 2019)............................................................. 3

*Young v. General Motors Inv. Mgmt. Corp.*,
    325 F. App'x. 31 (2d Cir. 2009) ............................................................... 12, 13

**Federal Statutes**

Securities Act of 1933,
    15 U.S.C.§ 77a *et seq.* ............................................................................... 10

Investment Company Act of 1940,
    15 U.S.C.§ 80a-1 *et seq.* ........................................................................... 10

Trucker ♦ Huss
A Professional Corporation
135 Main Street, 9ᵗʰ Floor
San Francisco, California 94105

iii

I.      **INTRODUCTION**

Contrary to Plaintiffs' repeated arguments in their Opposition ("Opp."; Dkt. 72), the Ninth Circuit's recent unpublished decisions do not save their inadequate pleading.  Plaintiffs rely heavily on *Davis v. Salesforce.com, Inc.*, 2022 WL 1055557 (9th Cir. 2022) and *Kong v. Trader Joe's Co.*, 2022 WL 1125667 (9th Cir. 2022).  But neither decision is pertinent to the majority of the Court's well-reasoned grounds for dismissing Plaintiffs' initial Complaint ("Order"; Dkt. 44) or Defendants' arguments for dismissal of the First Amended Complaint ("FAC"; Dkt. 51).  Plaintiffs imply that in dismissing Plaintiffs' initial Complaint, the Order relied entirely on the lower courts' decisions in *Salesforce* and *Trader Joe's*.  That is incorrect.  The Order, like Defendants' Motion ("Mot."; Dkt. 70), relied on numerous other decisions, including other Ninth Circuit authority, that were not overruled or impacted by *Salesforce* or *Trader Joe's*.  Because Plaintiffs failed to cure the flaws identified in the Order, their claims should be dismissed with prejudice.

Moreover, as detailed in Defendants' Motion, the Supreme Court's recent decision in *Hughes v. Northwestern Univ.*, 142 S. Ct. 737 (2022), does not have any impact on Plaintiffs' flawed pleading, Defendants' arguments, or the Order.  Mot. at 24-25.  *Hughes* simply reaffirmed the Court's prior decision in *Tibble v. Edison Int'l*, 575 U.S. 523 (2015), proscribing an ongoing duty to monitor investments, which is undisputed in this case.  Order at 6 (recognizing *Tibble*'s duty to monitor).  Plaintiffs' reliance on *Tibble* and its progeny (*e.g.,* Opp. at 2, 3, 7, 8, 13, 15, 17, 21) is misplaced because there are no arguments in Defendants' Motion, or holdings in the Order, that are inconsistent with *Tibble*.  Plaintiffs' FAC largely repleads flawed claims and adds only scattered, conclusory allegations and irrelevant, non-binding authority.  It should thus be dismissed with prejudice.

To support their claims, Plaintiffs allege that the Committee should have: (1) replaced actively managed options with passively managed options; (2) selected options with lower expense ratios; (3) moved to allegedly lower cost share classes of certain options; and (4) moved to collective investment trust ("CIT") versions of certain options.  As to each Challenged Fund, Plaintiffs have alleged those four categories of allegations as follows:

REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT
Case No: 5:20-cv-06081-JST
7014471.12

Trucker ♦ Huss
A Professional Corporation
135 Main Street, 9th Floor
San Francisco, California 94105

| Challenged Fund | Passive/Active | Exp. Ratios | Share Class | CIT Types |
|---|:---:|:---:|:---:|:---:|
| American Beacon Large Cap | ☑ | ☑ | | |
| MainStay Large Cap Growth | ☑ | ☑ | | |
| Victory RS Select Growth | ☑ | ☑ | | |
| Fidelity Money Market Trust | ☑ | ☑ | | |
| JPMorgan US Equity | ☑ | | | |
| American Funds Europacific | | | ☑ | |
| Fidelity Contrafund K | ☑ | ☑ | ☑ | |
| T. Rowe Price Retirement | ☑ | ☑ | ☑ | ☑ |

FAC at ¶¶ 77, 88-89, 100, 108.

These attacks all fail. *First,* Plaintiffs' allegations that the Committee should have replaced actively managed options with, among other supposed alternatives, dissimilar, passively managed options, are insufficient to create an inference of imprudence.[1] *Id.* at ¶ 105.  Courts consistently dismiss this type of apples-to-oranges comparison because Plaintiffs cannot "merely refer to the funds as 'comparable' or 'similar'" without providing a basis for those labels.  Order at 21-23.  *Second,* Plaintiffs' attack on the expense ratios of certain funds is superficial.  FAC at ¶ 77.  Plaintiffs merely compare the expense ratios of those options to other, supposedly lower cost options in the market, and to *median* expense ratios listed in a 2016 study titled *Brightscope/ICI Defined Contribution Plan Profile: A Close Look at 401(k) Plans, 2016* ("ICI Study").  *Id.* at ¶¶ 77, 79.  Attacking an expense ratio, without more, is insufficient to state an imprudence claim.  *See Terraza v. Safeway Inc*., 241 F. Supp. 3d 1057, 1076 (N.D. Cal. 2017) (Tigar, J.).

*Third,* Plaintiffs' share class allegations are based on allegations that the Plan should have offered the Fidelity Contrafund "K" class, but Plaintiffs also admit that the Plan *did* offer this share class through the entire putative class period.  FAC at ¶¶ 79, 87.  The Order dismissed Plaintiffs' share class allegations involving the Fidelity Contrafund K option on this basis (*see* Order at 17-20),

---

[1] In their FAC, Plaintiffs compare certain Challenged Funds to dissimilar passively managed options, as well as actively managed options with supposedly lower expense ratios. FAC at ¶ 108.  For clarity, Defendants address the insufficiency of those allegations separately. *See, e.g.,* Mot., Section V(A)(2) (addressing passively managed options allegations) and Section V(A)(3) (addressing expense ratio allegations); *infra* at Section II(A)(1) (addressing passively managed options allegations) Section II(A)(2) (addressing expense ratio allegations).

Trucker ♦ Huss
A Professional Corporation
135 Main Street, 9th Floor
San Francisco, California 94105

and these allegations remain insufficient.  The Order further held that Plaintiffs' remaining share class allegations against the T. Rowe Price and American Funds options were insufficient because the difference in price between the Plan's options, and the share classes that the Plaintiffs allege should have been offered, was due to revenue sharing, which is acceptable to use to offset the Plan's administrative expenses.  Order at 5-6.   Plaintiffs' attacks on these funds are nothing more than arguing that revenue sharing is *per se* imprudent—a position that Plaintiffs admit is contrary to the law and remains unchanged by *Salesforce* or *Trader Joe's*.  *Fourth,* fiduciaries have no obligation to offer CITs instead of mutual funds because those investments differ greatly. Order at 12.

Plaintiffs also allege that the Committee allowed the Plan's recordkeeper, Fidelity Management Trust Company ("Fidelity"), to charge the Plan unreasonable recordkeeping fees.  These allegations are also insufficient because Plaintiffs cannot provide a viable benchmark for those fees and fail to consider the services that Fidelity provides to the Plan in exchange for those fees.  Although Plaintiffs added allegations in their FAC regarding the Plan's size and national trends for recordkeeping costs, those allegations are baseless and conclusory, and do not support Plaintiffs' claim that the Plan's recordkeeping fees were unreasonable *in this case*.  Plaintiffs also reallege that the Committee should have solicited more frequent bids for the Plan's recordkeeping services, even though the Order rejected that argument outright, consistent with the majority of courts.

Even taken as a whole, Plaintiffs' allegations remain insufficient to state a claim for breach of the duty of prudence or failure to monitor because they fail to cure the deficiencies in their claims.  Under the Order, Plaintiffs' FAC should be dismissed in its entirety, with prejudice.

## II.   <u>ARGUMENT</u>

### A. Plaintiffs' allegations regarding the Challenged Funds remain insufficient to create a plausible inference that Defendants acted imprudently.

#### 1. The Committee was not required to replace the American Beacon, MainStay, Victory RS, Fidelity Money Market, JPMorgan, Fidelity Contrafund, or T. Rowe Price options with passively managed options.

There is *no requirement* that a plan offer a certain amount of passively (versus actively) managed funds. *See White v. Chevron Corp.*, 2017 WL 2352137 at *11 (N.D. Cal. May 31, 2017) (*White II*), *aff'd* 752 F. App'x 453 (9th Cir. 2018); *Davis v. Wash. Univ.*, 960 F.3d 478, 485 (8th Cir. 2020); *Martin v. CareerBuilder*, 2020 WL 3578022 at *4 (N.D. Ill. Jul. 1, 2020); *Wildman v. Am.*

Trucker ♦ Huss
A Professional Corporation
135 Main Street, 9th Floor
San Francisco, California 94105

Trucker ♦ Huss
A Professional Corporation
135 Main Street, 9th Floor
San Francisco, California 94105

*Century Servs., LLC*, 362 F. Supp. 3d 685, 704 (W.D. Mo. 2019).  This is because passively managed and actively managed options have different investment styles, and plan fiduciaries have "latitude to value investment features other than price." *White II*, 2017 WL 2352137 at *11; *see also Turner ex rel. Davis N.Y. Venture Fund v. Davis Selected Advisers, LP,* 626 F. App'x 713, 717 (9th Cir. 2015); *Dorman v. Schwab*, 2018 WL 6803738 at *3 (N.D. Cal. Sept. 20, 2018).  Consequently, passively managed investment funds "cannot serve as meaningful benchmarks for actively managed funds, because the two types of funds 'have different aims, different risks, and different potential rewards that cater to different investors.'" *Davis v. Salesforce.com, Inc.*, 2020 WL 5893405 at *3-4 (N.D. Cal. Oct. 5, 2020), *rev'd on other grounds by* 2022 WL 1055557 (9th Cir. 2022); *Meiners v. Wells Fargo & Co.,* 898 F.3d 820, 823–24 (8th Cir. 2018) (dismissing claim based on allegations that compared challenged funds to dissimilar alternatives because an "ERISA plaintiff must offer more than 'labels and conclusions' about the fees").  That is, "simply labeling funds as 'comparable' or 'materially similar' is insufficient to establish that those funds are meaningful benchmarks to compare the performance of the challenged funds."  Order at 23.

Like with their initial Complaint, Plaintiffs fail to allege or explain *how* the passively managed funds identified in their FAC are "materially similar" to the Challenged Funds and, crucially, to provide any legal basis for their claim that the Committee was required to offer passively managed options.  There is no such requirement, and, therefore, these allegations remain fundamentally flawed.  Order at 17.  Dismissal based on the flawed allegations regarding passively managed alternatives will impact alleged breaches as to all but one of the Challenged Funds (i.e., the American Beacon, MainStay, Victory RS, Fidelity Money Market, JPMorgan, Fidelity Contrafund, and T. Rowe Price options). FAC at ¶ 108.

### 2. Allegations that the expense ratios of the American Beacon, MainStay, Victory RS, Fidelity Money Market, Fidelity Contrafund, to T. Rowe Price options were too high, without more, are insufficient to state an imprudence claim.

Allegations that there were purportedly cheaper funds in the market than the American Beacon, MainStay, Victory RS, Fidelity Money Market, Fidelity Contrafund, and T. Rowe Price options do not create an inference that the Committee acted imprudently.  Order at 21-23.  The Order warned that "the Court must be especially cautious in this context to 'not rely on the vantage point of

-4-

hindsight' when assessing the prudence of the plan fiduciaries' conduct." *Id.* at 15.  Plaintiffs simply repleaded this flawed claim without adding any new substantive allegations that any purported alternatives to the Challenged Funds were viable comparators.  Courts consistently reject this type of insufficient pleading.  Order at 23-24; *Meiners*, 898 F.3d at 823–24 ("the existence of a cheaper fund does not mean that a particular fund is too expensive *in the market generally* or that it is otherwise an imprudent choice") (emphasis in original); *White II*, 2017 WL 2352137 at *11 (dismissing similar claims because "the challenge was primarily based on speculation that Plan fiduciaries 'could have' provided identical, though lower-cost, versions of the funds").

As this Court concluded, challenging investment options based on their expense ratios, alone, is insufficient to state an imprudence claim.  *See Terraza*, 241 F. Supp. 3d at 1076 ("failure to offer the investment option with the lowest expense ratio is not enough, on its own, to plausibly state a claim for breach of the duty of prudence," because the "fact that it is possible that some other funds might have had even lower ratios is beside the point; nothing in ERISA requires every fiduciary to scour the market to find and offer the cheapest possible fund," citing *Hecker v. Deere & Co.*, 556 F.3d 575, 586 (7th Cir. 2009)).  *See also* Order at 23-24; *Loomis v. Exelon Corp.*, 658 F.3d 667, 670-72 (7th Cir. 2011); *Renfro v. Unisys Corp.*, 671 F.3d 314, 319, 326-28 (3d Cir. 2011).

Despite these holdings, Plaintiffs' Opposition claims that these allegations were included simply for their "usefulness" and to "lend support to Plaintiffs' allegations." Opp. at 20. This characterization is inaccurate because Plaintiffs use these allegations to attack many of the Challenged Funds, which are not implicated by Plaintiffs' share class or CIT allegations.  FAC at ¶ 77 (identifying the American Beacon, MainStay, Victory RS, and Fidelity Money Market funds, which are not implicated by Plaintiffs' share class or CIT allegations).  Notably, Plaintiffs' FAC again fails to present any plausible allegations that the Challenged Funds underperformed or that the Committee had any reason to remove them from the Plan's lineup.  *See Terraza*, 241 F. Supp. 3d at 1076; *Meiners*, 898 F.3d at 823 (dismissing claims because, among other reasons, the plaintiff "did not plead facts showing the [challenged options] were underperforming funds").

Instead of addressing their failure plead allegations that attack these options based on something more than their expense ratios, Plaintiffs attempt to spin this fundamental flaw by arguing

Trucker ♦ Huss
A Professional Corporation
135 Main Street, 9th Floor
San Francisco, California 94105

that Defendants' position on this issue is actually a contention that the alternative investments in the FAC were not *comparable* funds to the Challenged Funds.  While it is true that Plaintiffs' proposed alternatives are not comparable to the Challenged Funds, this mischaracterization of Defendants' Motion is an attempt to deflect from Plaintiffs' fundamental failure to present plausible allegations beyond high expense ratios – including but not limited to underperformance.  Mot. at Section V(A)(1), citing *Terraza*, *supra*.

Plaintiffs note that Defendants' Motion addressed the 5-year performance data that Plaintiffs included with their allegations regarding the American Beacon option.  Opp. at 22; Mot. at 10.  Although Plaintiffs attempt to link this position with *Tibble's* duty to monitor, they miss the point of Defendants' arguments regarding those allegations.  Defendants noted that it is misleading to select 5-year data with the benefit of hindsight because doing so would allow any plaintiff to cherry pick performance data to suit their position.  As noted in Defendants' Motion, broadening that data to 10-year returns for that option shows the option performed well.  Mot. at 10.

Finally, Plaintiffs' FAC again relies on the ICI Study to support their allegations that certain Challenged Funds' expense ratios were too high.  FAC at ¶ 77.  As detailed in Defendants' Motion, the ICI Study simply presents *median* expense ratios for various mutual funds offered by 401(k) plans.  Mot. at 13.  Under Plaintiffs' logic, therefore, *any* fund that is above the median fee in the ICI Study would be overpriced and imprudent, and the Court should not condone such an extreme result.  *Id*.  The ICI Study is irrelevant and should be disregarded.

### 3. Plaintiffs' allegations that the T. Rowe Price, American Funds, and Fidelity Contrafund K options were not in the lowest cost share class do not support their imprudence claim.

Plaintiffs' FAC does not cure the fundamental flaws in their allegations that the Plan fiduciaries imprudently maintained Plan investment options in more expensive share classes.  As an initial matter, the Order held that allegations regarding the Fidelity Contrafund "K" class were insufficient to state an imprudence claim because the Committee offered the very share class that Plaintiffs admit was prudent throughout the putative class period.  Order at 10.  In their Opposition, Plaintiffs note the Court's decision regarding the Fidelity Contrafund "K" class, but never address why they maintained these allegations despite the Order.  Opp. at 13-14.  These allegations remain

Trucker ♦ Huss
A Professional Corporation
135 Main Street, 9th Floor
San Francisco, California 94105

-6-

insufficient to state a claim.

Regarding the T. Rowe Price and American Funds investment options, the Order held that Plaintiffs' allegations regarding those funds were implausible because the difference in price between the share classes was "attributable to the fact that the higher cost funds offered by the Plan provided revenue sharing, whereas the lower cost funds that Plaintiffs prefer did not." Order at 18. Contrary to Plaintiffs' arguments, Plaintiffs' FAC does not identify lower cost share classes of the T. Rowe Price and American Funds options that are *identical*. Instead, Plaintiffs' FAC simply identifies share classes of the T. Rowe Price and American Funds options that did not offer revenue sharing and then compares those investments to the share classes offered by the Plan that *did* offer revenue sharing.[2] *See, e.g.,* FAC at ¶¶ 87-90, 100-102; Kang Dec., Ex. 3, 2014 Form 5500 at 56-59; Ex. 6, 2017 Form 5500 at 7. These allegations are, therefore, nothing more than an attack on the practice of revenue sharing generally, which courts have consistently rejected. Order at 18-19 ("Courts in this district have observed that revenue sharing is an 'acceptable investment industry practice [] that frequently inures[s] to the benefit of ERISA plans,'" citing *Terraza*, 241 F. Supp. 3d at 1081 n. 8). These allegations remain insufficient, and, under the Order, they should be dismissed with prejudice.

Plaintiffs' Opposition relies heavily on the unpublished (therefore non-binding) decisions in *Salesforce* and *Trader Joe's* to support this claim, based on the assumption that, under *Salesforce* and *Trader Joe's,* Plaintiffs' share class allegations automatically survive Defendants' Motion. Notably, Plaintiffs incorrectly imply that the Order relied entirely on the district court opinions that were reversed by the Ninth Circuit in *Salesforce* and *Trader Joe's*. The Order, in fact, relied on numerous decisions that were not disturbed by *Salesforce* or *Trader Joe's*. Order at 18-19 (citing *Terraza*, 241 F. Supp. 3d at 1081 n. 8; *Tussey v. Abb, Inc.*, 746 F.3d 327, 336 (8th Cir. 2014); *White II*, 2017 WL 2352137 at *14). Plaintiffs' share class claims remain insufficient under these decisions, in particular *White II,* which was affirmed by the Ninth Circuit (*see* 752 F. App'x 453 (9th Cir. 2018)) and not addressed in *Salesforce* or *Trader Joe's*.

---

[2] Notably, the Committee replaced the T. Rowe Price Retirement suite with the lower priced "F" collective trust versions of these funds and the American Funds Europacific Growth R5 fund with the "R6" share class in 2018. Kang Dec., Ex. 3-9, 2014-2020 Forms 5500; Ex. 23, Appendix A.

Trucker ♦ Huss
A Professional Corporation
135 Main Street, 9th Floor
San Francisco, California 94105

-7-

Trucker ♦ Huss
A Professional Corporation
135 Main Street, 9th Floor
San Francisco, California 94105

Plaintiffs half-heartedly attempt to address the defects in their share class claims involving the T. Rowe Price and American Funds options by arguing that the Court may find that they have pleaded a sufficient imprudence claim based on allegations that it was unreasonable for Defendants to utilize revenue sharing in the first place.  Opp. at 15-16.  This allegation is not included in Plaintiffs' FAC and should be disregarded.  *See Schneider v. Cal. Dep't of Corr.,* 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss") (emphasis in original).  Nonetheless, even if pleaded, these allegations still would not support Plaintiffs' imprudence claim because, as Plaintiffs admit, "the practice of revenue sharing is not *per se* improper." Opp. at 14; FAC at ¶ 126.  Plaintiffs cannot have it both ways; if they admit— as they must—that revenue sharing is an acceptable practice, they cannot base an imprudence claim on allegations that the Committee should not have offered funds with a revenue sharing component.  Moreover, to the extent that Plaintiffs are now arguing that the *amount* of revenue sharing collected was unreasonable, (*see* Opp. at 15-16), that claim is conclusory and insufficient because Plaintiffs plead no factual allegations to support any assertion that the Plan collected excessive revenue sharing.

In their Opposition, Plaintiffs cite this Court's order in *Terraza* for the proposition that the "Court can reasonably infer from [a share class] allegation Defendants acted imprudently by selecting the more expensive options, all else being equal."  Opp. at 2 (citing 241 F. Supp. 3d at 1077).  In this case, however, all things are *not* equal because the difference in price between the share classes of the Plan's funds and the suggested alternatives was based on revenue sharing.  Plaintiffs confuse this lawsuit with other cases that addressed a situation where a "retail" share class (i.e., more expensive) was offered when an "institutional" share class of the same fund (i.e., less expensive) was available.  *See, e.g.,* Opp. at 2, 3, 7, 8, 13, 15, 17, 21.  That issue is not present in this lawsuit, and the cases that Plaintiffs rely on in their Opposition that involve this retail versus institutional share issue are irrelevant.  *See* Opp. at 12-13 (citing *Disselkamp v. Norton Healthcare, Inc.,* 2019 WL 3536038, at * 4 (W.D. Ky. Aug. 2, 2019); *Johnson v. Fujitsu Tech. and Bus. Of Am., Inc.,* 250 F. Supp.3d 460, 466-67 (N.D. Cal. 2017); *Johnson v. Providence Health Servs. et al.,* 2018 WL 1427421, at * 5 (W.D. Wash. Mar. 22, 2018); *Terraza,* 241 F.Supp.3d at 1077; *Davis v. Wash Univ.,* 960 F.3d 478, 483 (8th

-8-

Cir. 2020)).

Here, Plaintiffs do not allege that the Committee offered retail shares of the T. Rowe Price or American Funds options where less expensive institutional shares were available. FAC at ¶¶ 87-95. The nature of retail and institutional class shares is key to this distinction. The "institutional share classes are available to institutional investors, such as 401(k) plans, [they] require a certain minimum investment" and "institutional share classes often charge lower fees . . . because the amount of assets invested is far greater than the typical individual investor." *Tibble v. Edison Int'l,* 2017 WL 3523737, *1 (C.D. Cal. Aug. 16, 2017). Retail shares, conversely, are offered at the same price that is paid by individual investors. FAC at ¶ 77. Plaintiffs do not allege that the Committee offered retail class shares but point to two share classes of the same fund, only one of which offered revenue sharing. Order at 11. Plaintiffs' allegations are, therefore, a direct challenge to the practice of revenue sharing, an admittedly unsustainable position. Plaintiffs do not allege the Plan qualified for a less expensive share class based on its assets but failed to take an action that simply required the swipe of a pen.

### 4. The Committee was not required to move the T. Rowe Price options to collective investment trust versions sooner than it did in 2018.

The Order dismissed Plaintiffs' allegations that the Committee should have offered CIT versions of the T. Rowe Price options, finding that these allegations were insufficient to state an imprudence claim because the Committee was not obligated to offer a particular type of investment option in the Plan. Order at 20-21. In their FAC, Plaintiffs added no new allegations on this topic, whatsoever, so this claim remains insufficient under the Order. *See id.* ("Plaintiffs' allegations regarding the availability of collective trust funds fail to state a claim for imprudence . . . as several courts have recognized, plans are under no duty to offer alternatives to mutual funds, even when the plaintiffs argue they are markedly superior" (internal quotations, citations omitted)). The Committee was not required to offer CIT options over mutual funds. *See id.*; *Hecker v. Deere & Co.*, 556 F.3d 575, 586 (7th Cir. 2009) ("nothing in the [ERISA] statute that requires plan fiduciaries to include any particular mix of investment vehicles").[3]

---

[3] The Committee *did* replace the T. Rowe Price options with the CIT "F Class" version in 2018, and with an even lower cost version since the Order was issued. (Kang Dec., Ex. 14 at 11-13; Ex. 23.)

REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT
Case No: 5:20-cv-06081-JST
7014471.12

Trucker ♦ Huss
A Professional Corporation
135 Main Street, 9th Floor
San Francisco, California 94105

Trucker ♦ Huss
A Professional Corporation
135 Main Street, 9ᵗʰ Floor
San Francisco, California 94105

Once again, Plaintiffs' Opposition relies heavily on the Ninth Circuit's unpublished decision in *Salesforce* and a number of out-of-circuit district court cases to support this claim. As with Plaintiffs' share class claim, the Order dismissed Plaintiffs' CIT-based claim under several decisions that remain good law.  Order at 20-21 (citing *Moitoso v. FMR LLC*, 451 F. Supp. 3d 189, 212 (D. Mass. 2020); *Hecker v. Deere & Co.*, 556 F.3d 575, 586 (7th Cir. 2009); *White v. Chevron Corp.* ("*White I")*, 2016 WL 4502808, at *12 (N.D. Cal. Aug. 29, 2016)).  The Ninth Circuit has affirmed dismissals of similar claims.  *See e.g.*, *White II*, 752 F. App'x 453.

Further, Plaintiffs' Opposition likens their CIT allegations to their share class allegations because, they claim, "the collective trusts are identical to those held by the mutual fund, except any cost."  Opp. at 18.  Plaintiffs are wrong.  Order at 21 ("courts have repeatedly recognized that collective trusts 'differ so much from mutual funds . . . in terms of their regulatory and transparency features that other courts have found it impossible to make an 'apples-to-oranges' comparison of the two'" (citing *Moitoso v. FMR LLC*, 451 F. Supp. 3d 189, 212 (Mar. 27, 2020)); *White I*, 2016 WL 4502808 at *12 (same)).  The Order continued, "[f]or example, collective trusts, unlike mutual funds, 'are not subject to the reporting, governance, and transparency requirements of the Securities Act of 1933, 15 U.S.C. § 77a *et seq.*, and the Investment Company Act of 1940, 15 U.S.C. § 80a-1 *et seq.*" Order at 21.  The Order concluded that it was "inappropriate to compare [these] distinct investment vehicles solely by cost, since their essential features differ so significantly, including mutual funds' unique regulatory and transparency features." *Id.* (internal quotations omitted, citing *White I*, 2016 WL 4502808 at *12).  And the Committee was permitted to select investment options for reasons other than price.  *See* Order at 22 (citing *White I*, 2016 WL 4502808 at *12).  Nothing in *Salesforce* or *Trader Joe's* changes this outcome.  The fact remains that Plaintiffs failed to amend their CIT allegations to address the flaws identified in the Order, and this claim against the T. Rowe Price options should be dismissed with prejudice.

### 5.  *Hughes, Salesforce,* and *Trader Joe's* do not save Plaintiffs' claims.

The Supreme Court's decision in *Hughes v. Northwestern* does not disrupt either the Order or the basis for Defendants' Motion. Mot. at 24-25.  Plaintiffs mistakenly maintain that *Hughes* "confirms" the adequacy of their allegations.  Opp. at 7-9.  *Hughes* is not the watershed decision

-10-

Trucker ♦ Huss
A Professional Corporation
135 Main Street, 9th Floor
San Francisco, California 94105

1   Plaintiffs tout it to be, nor did it relax pleading standards across the board for fiduciary breach claims.

2   Notably, Plaintiffs' Opposition identifies the only substantive holding from *Hughes*: that it was an

3   error for the Seventh Circuit to affirm dismissal of the complaint on grounds that defendants had

4   provided an "array of choices, including 'the types of funds plaintiffs wanted . . .'"  Opp. at 8 (citing

5   *Hughes,* 142 S. Ct. at 742).  Neither the Order nor Defendants' Motion is based on this defense, which

6   renders *Hughes*, and any cases that Plaintiffs claim relied on *Hughes* in their favor, a red herring.

7           Plaintiffs' Opposition also relies heavily on the Ninth Circuit's decisions in *Salesforce* and

8   *Trader Joe's*.  Even if the Court were to allow Plaintiffs' share class and CIT allegations to stand

9   under these decisions, which it should not, *Salesforce* and *Trader Joe's* do not impact the Order's

10  holdings regarding Plaintiffs' allegations that the Committee should have (1) offered more passively

11  managed options or (2) that the expense ratios of certain Challenged Funds were too high.  *See*

12  *Salesforce*, 2022 WL 1055557; *Trader Joe's,* 2022 WL 1125667.  Defendants' Motion detailed how

13  Plaintiffs failed to cure the defects in those claims.  Mot. at Sections V(A)(1)-(3).  Therefore, even if

14  the Court were to find *Salesforce* and *Trader Joe's* persuasive, Plaintiffs still have no viable

15  allegations regarding the Challenged Funds that are not implicated by Plaintiffs' share class and CIT-

16  based allegations: American Beacon, Mainstay, Victory RS, Fidelity Money Market, and JPMorgan.

17  The claims against these options should be dismissed with prejudice.

18          **B.  Plaintiffs' recordkeeping allegations remain insufficient.**

19          *Hughes*, *Salesforce*, and *Trader Joe's* also have no impact on – and certainly do not resuscitate

20  – the FAC's defective allegations on the Plan's recordkeeping fees.  The Order held that Plaintiffs

21  failed to state an imprudence claim based on their allegations that the Committee allowed the Plan –

22  and, starting in 2018, NVIDIA – to pay unreasonable recordkeeping fees to the Plan's recordkeeper,

23  Fidelity.  Order at 24-26.  The Order held that Plaintiffs failed to sufficiently allege that the Plan's

24  recordkeeping fees were unreasonable based on the actual services that Fidelity provided to the Plan.

25  *Id.*  Attempting to save this claim from dismissal, the FAC added allegations regarding the number

26  of the Plan's participants and conclusory and unsupported claims about trends for recordkeeping fees

27  nationally.  Aside from being unfounded, those amendments do not address the central flaw in

28  Plaintiffs' recordkeeping claims: Plaintiffs failed to address whether the *services* that Fidelity

-11-

Trucker ♦ Huss
A Professional Corporation
135 Main Street, 9th Floor
San Francisco, California 94105

1   provided to the Plan justified Fidelity's recordkeeping fees. This failure once again renders Plaintiffs'

2   recordkeeping allegations insufficient to state an imprudence claim.

3          From the beginning of the relevant period to March 31, 2018, the Plan paid Fidelity a fixed

4   per participant annual fee that ranged from $63 to $52 per participant, which was offset through

5   revenue sharing *up to* this contractual amount. FAC at ¶ 131; Kang Dec., Ex. 19, Fidelity Agreement,

6   at 8-9. On or after April 1, 2018, NVIDIA directly paid Fidelity's recordkeeping fees that were not

7   offset by revenue sharing, and these direct payments were not Plan expenses. Kang Dec., Ex. 19,

8   Fidelity Agreement at 10-12. As a preliminary matter, any claims that are based on payments that

9   NVIDIA made after April 2018 are meritless because neither the Plan nor participants made those

10  payments and, accordingly, they could not have been injured by supposed unreasonable

11  recordkeeping fees they did not pay. Further, since the Order, the Committee has successfully

12  negotiated lowering the Plan's per participant recordkeeping fee to $48 per participant. Kang Dec.,

13  Ex. 20 at 4. NVIDIA still pays these fees directly to Fidelity. *Id.*

14         As to the fees before April 1, 2018, the Order correctly held that "[f]ederal district courts in

15  California have held that a plaintiff must plead administrative fees that are excessive in relation to

16  the *specific services* the recordkeeper provided to the specific plan at issue." Opp. at 25. (citing

17  *Wehner v. Genentech,* No. 20-cv-06894, 2021 WL 507599 at *5 (N.D. Cal. Feb. 9, 2021)). "Thus,"

18  the Order continued, "in order to state a claim for breach of the duty of prudence, a plaintiff must

19  allege facts from which one could infer that the *same services* were available for less on the market"

20  and "Plaintiffs fail to provide any allegations regarding the specific services actually provided to the

21  Plan by Fidelity." *Id.* at 24-26 (emphasis in original). The Plan's recordkeeping fees are required to

22  be "reasonable" based on the value of the services that Fidelity provided for the Plan. *See Hecker*,

23  556 F.3d at 586; *Renfro*, 2010 WL 1688540 at *6 ("ERISA does not require fiduciaries to get the best

24  deal imaginable"), *aff'd* 671 F.3d 314 (3d Cir. 2011)). Plaintiffs fail to allege that the fees paid

25  Fidelity were unreasonable based on the services that Fidelity rendered and therefore their excessive

26  fees claim is insufficiently pled. *See Young v. General Motors Inv. Mgmt. Corp.*, 325 F. App'x. 31,

27  33 (2d Cir. 2009) (plaintiffs must "allege that the fees were excessive relative to the services

28  rendered").

-12-

Trucker ♦ Huss
A Professional Corporation
135 Main Street, 9th Floor
San Francisco, California 94105

1    Plaintiffs further claim that "[r]ecent litigation demonstrates that Fidelity charges $14-$21 per

2   participant recordkeeping fees for large plans." Opp. at 25 (citing *Moitoso v. FMR LLC, et al.,* 451

3   F. Supp. 3d 189, 214 (D. Mass. 2020)). But *Moitoso* did not set a universal standard for a reasonable

4   per participant recordkeeping fee. The $14-$21 figure from *Moitoso* was based on a *stipulation*

5   *between the parties* in that case as to the value of services Fidelity provided to its own plan, and not

6   a fundamental rule for *all* large plans. *See Moitoso*, 451 F. Supp. 3d at 214. These arbitrary figures

7   do not establish any viable benchmark from which the Plan's fees can be measured.

8    Moreover, consistent with other courts in this district, the Order held that the Plan was not

9   required to conduct requests for proposals ("RFPs") for recordkeeping services at any regular interval.

10   Order at 24-26; *Marks v. Trader Joe's Co.,* 2020 WL 2504333 at *7 (C.D. Cal. Apr. 24, 2020); *Del*

11   *Castillo v. Cmty. Child Care Council of Santa Clara Cty., Inc.,* 2019 WL 6841222 at *5 (N.D. Cal.

12   Dec. 16, 2019) ("absence of competitive bidding, . . . without more, does not support Plaintiffs'

13   allegations that the [defendants] acted imprudently"); *White I,* 2016 WL 4502808 at *14. Undeterred,

14   Plaintiffs maintained their RFP allegations in their FAC and dedicated significant space to these

15   allegations in their Opposition. Plaintiffs cite *Trader Joe's* for the unremarkable proposition that

16   "[t]aking all the allegations as true, [*Trader Joe's* defendants] did not act with the purpose of

17   defraying reasonable administrative expenses." Opp. at 25 (citing *Trader Joe's,* 2022 WL 1125667

18   at *1). But *Trader Joe's* did not hold that more frequent RFPs should be conducted in that case, and

19   such a conclusion would be inconsistent with the majority of courts that have considered this issue.

20   *See, e.g.,* Order at 26; *Genentech,* 2021 WL 507599 at *5; *Renfro,* 671 F.3d at 327; *Young,* 325 F.

21   App'x at 33. These allegations fail for the same reasons that the Order concluded.

22    Likewise, Plaintiffs maintain their challenge to the acceptable practice of revenue sharing,

23   which courts have consistently rejected. *White II*, 2017 WL 2352137 at *14-15; *Marks*, 2020 WL

24   2504333 at *6-7; *Tussey,* 746 F.3d 327, 335 (8th Cir. 2014); *see also* U.S. Dep't of Lab., Emp.

25   Benefits Security Admin., Field Assistance Bull. 2003-3 (May 19, 2003) (discussing how plans may

26   properly use plan assets to pay "certain fixed administrative expenses of the plan, such as

27   recordkeeping . . ."). And, to the extent that Plaintiffs allege the Plan could have been designed such

28   that administrative fees were not paid from Plan assets for a short time during the relevant period,

-13-

Trucker ♦ Huss
A Professional Corporation
135 Main Street, 9th Floor
San Francisco, California 94105

1  that decision regarding plan design is a settlor function that is not subject to ERISA's fiduciary duties.

2  *See Loomis,* 658 F.3d at 671 (such a decision "is a question of plan design, not of administration");

3  *Lockheed Corp. v. Spink,* 517 U.S. 882, 891 (1996) (plan sponsor "acted not as a fiduciary but as a

4  settlor when it amended the terms of the Plan" and, therefore, ERISA's "requirement of fiduciary

5  status [was] not met").

6          As noted, Plaintiffs admit that the practice of revenue sharing is not *per se* improper. Opp. at

7  14.  Nonetheless, Plaintiffs still argue that the Plan's use of revenue sharing to offset administrative

8  expenses resulted in "lost opportunity cost to Plan participants as they could have had the funds

9  available for other investments." *Id.* at 15.  Plaintiffs cannot have it both ways – if revenue sharing

10  is an acceptable practice, as Plaintiffs admit, then it could not have been imprudent for the Committee

11  to offer funds that included a revenue sharing component.  That is, if the Court were to accept

12  Plaintiffs' allegations that amounts collected through revenue sharing resulted in lost opportunity

13  costs to participants, such a holding would condemn the practice of revenue sharing altogether and it

14  would be inconsistent with the settled law on this issue.  *See, e.g.,* Order at 26-28; *White II,* 2017 WL

15  2352137 at *14; *Marks,* 2020 WL 2504333 at *6-7.

16          Moreover, Plaintiffs misread the significance of the fact that NVIDIA began paying the Plan's

17  recordkeeping fees directly in 2018 (which they do not dispute).  Opp. at 23, n. 17.  Once NVIDIA

18  began paying the Plan's recordkeeping fees directly, the obligation to pay for recordkeeping was

19  removed from the Plan's participants and, therefore, fees paid during that period cannot serve as a

20  basis for Plaintiffs' claims that are purportedly asserted on behalf of Plan (i.e., the Plan's participants).

21          Finally, Plaintiffs provide no allegations to support their claim that any amounts that the Plan

22  collected through revenue sharing were "never used to pay for recordkeeping and administrative

23  costs."  Opp. at 7 (providing no citation to relevant allegations in the FAC).  This claim is entirely

24  baseless, conclusory, and insufficient to state a viable claim for relief.  *See Hughes,*142 S.Ct. at 741-

25  42 (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570

26  (2007)).  Further, Plaintiffs cite *Terraza* for the proposition that the Court cannot resolve their revenue

27  sharing claim in response to Defendants' Motion.  Opp. at 17 (citing 241 F. Supp. 3d at 1083).

28  *Terraza* is distinguishable.  In *Terraza,* the Court's ruling regarding the plaintiffs' revenue sharing

-14-

Trucker ✦ Huss
A Professional Corporation
135 Main Street, 9ᵗʰ Floor
San Francisco, California 94105

1   claims was based on allegations that revenue sharing in excess of a fixed amount may have reverted

2   back to the plan's recordkeeper. 241 F. Supp. 3d at 1081.  That is not the situation here, where there

3   are no allegations that any revenue sharing collected in excess of Fidelity's fixed recordkeeping fee

4   reverted back to Fidelity, or that it could have under the Plan's recordkeeping agreements.  *See* Kang

5   Dec., Dkt. 52-1, Ex. 18-20.

6          For these reasons, Plaintiffs' recordkeeping allegations have not been cured through

7   amendment, remain insufficient to state a viable imprudence claim, and should be dismissed.

8          **C.  Plaintiffs' duty to monitor claim fails because their imprudence claim fails.**

9          Finally, Plaintiffs' second claim against NVIDIA and the Board should be dismissed because

10  it is entirely dependent on the outcome of Plaintiffs' first claim (i.e., whether the Committee acted

11  imprudently), and it fails for the same reasons that Plaintiffs' imprudence claim fails. *See* Order at

12  28-29; *White I*, 2016 WL 4502808 at *19.

13  **III.    <u>CONCLUSION</u>**

14         For the forgoing reasons, Defendants respectfully request that the Court grant their Motion

15  and dismiss Plaintiffs' FAC in its entirety with prejudice.

16

17  DATED: June 3, 2022                              TRUCKER ✦ HUSS, APC

18                                          By: /s/ *Clarissa A. Kang*
19                                              Clarissa A. Kang
                                                Dylan D. Rudolph
20                                              Catherine L. Reagan
                                                Attorneys for Defendants
21                                              NVIDIA CORPORATION, THE BOARD OF
                                                DIRECTORS OF NVIDIA CORPORATION,
22                                              THE 401(k) BENEFITS PLAN COMMITTEE
                                                OF NVIDIA CORPORATION

23

24

25

26

27

28

REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT
Case No: 5:20-cv-06081-JST
7014471.12