**ROSMAN & GERMAIN APC**
Daniel L. Germain (Bar No. 143334)
5959 Topanga Canyon Boulevard
Suite 360
Woodland Hills, CA  91367-7503
Telephone: (818) 788-0877
Facsimile: (818) 788-0885
E-Mail: Germain@Lalawyer.com

Counsel for Plaintiffs and the Putative Class

[Additional Counsel Listed on Signature Page]

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRISTINA TOBIAS, ANTHONY BRIGGS, ANN MACDONALD and DAVID CALDER, individually and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br>  v.<br><br>NVIDIA CORPORATION, THE BOARD OF DIRECTORS OF NVIDIA CORPORATION, THE NVIDIA CORPORATION 401(K) PLAN BENEFITS COMMITTEE, and JOHN DOES 1-30.<br><br>      Defendants. | Case No. 4:20-cv-06081-JST<br><br>**PLAINTIFFS' NOTICE OF REVISED MOTION AND UNOPPOSED REVISED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, PRELIMINARY CERTIFICATION OF A CLASS FOR SETTLEMENT PURPOSES, APPROVAL OF FORM AND MANNER OF CLASS NOTICE, SCHEDULING A FINAL APPROVAL HEARING, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:   May 8, 2025<br>Time:   2:00 p.m.<br>Location:  Oakland Courthouse<br>     Courtroom 6<br>     2nd Floor<br>     1301 Clay Street<br>     Oakland, CA 94612<br>Judge:   Hon. Jon Tigar |

## NOTICE OF REVISED MOTION AND UNOPPOSED REVISED MOTION

**PLEASE TAKE NOTICE** that Plaintiffs, Cristina Tobias, Anthony Briggs, Ann MacDonald and David Calder ("Plaintiffs"), on behalf of the proposed Settlement Class and the NVIDIA Corporation 401(k) Plan (the "Plan"), hereby move (the "Revised Motion"), before the Honorable Jon S. Tigar and pursuant to Federal Rules of Civil Procedure 23, for entry of an Order that: (1) preliminarily approves the Settlement Agreement between Defendants, NVIDIA Corporation, the Board of Directors of NVIDIA Corporation, the NVIDIA Corporation 401(k) Plan Benefits Committee (collectively, "Defendants") and Plaintiffs (with Defendants, collectively, the "Parties");[1] (2) preliminarily certifies the proposed Settlement Class; (3) approves the proposed notice plan; and (4) sets a final approval hearing at least 90 calendar days after the entry of a preliminary approval order. This Revised Motion addresses the Court's concerns in its January 16, 2025 Order (ECF No. 135) denying without prejudice, Plaintiffs' motion for preliminary approval of class action settlement.   A proposed Preliminary Approval Order is submitted herein. The proposed Settlement Class is defined as follows:

> All persons, except Defendants and their immediate family members, who were participants in or beneficiaries of the Plan who participated in the Plan, at any time between August 28, 2014 through the date of the Preliminary Approval Order.

The Class excludes NVIDIA Corporation, the Board of Directors of NVIDIA Corporation, the NVIDIA Corporation 401(k) Plan Benefits Committee.

Plaintiffs propose the following schedule associated with the Notice Plan and Final Approval Hearing:

---

[1] The Settlement Agreement and its exhibits are attached as Exhibit 1 to the accompanying Declaration of Mark K. Gyandoh ("Gyandoh Declaration" or "Gyandoh Decl."). Terms not defined herein shall have the same meaning as in the Settlement Agreement.

| Event | Reference to Preliminary Approval Order | Proposed Deadline |
|---|---|---|
| Preliminary approval hearing | | If the Court deems necessary, on 5/8/25 at 2:00 p.m. or another date convenient for the Court |
| Settlement Administrator to set up settlement website | ¶ 7 | Within 35 days of entry of Preliminary Approval Order |
| Send Settlement Notice to Class Members | ¶ 7 | Within 35 days of entry of Preliminary Approval Order |
| Final approval motion and applications for attorneys' fees, expenses, and case contribution awards | ¶ 8 | 35 days before Objection deadline |
| Deadline for filing of objections | ¶ 10 | Not later than 30 days before the Final Approval Hearing |
| Deadline for Parties to respond to objections or file any additional papers in support of Settlement | ¶ 11 | Not later than 7 days before Final Approval Hearing |
| Final Approval Hearing | ¶ 5 | On a date convenient for the Court no sooner than 90 days after the date the Preliminary Approval Order is filed |

The Revised Motion is based on this Notice of Revised Motion, the incorporated memorandum of points and authorities, the supporting Gyandoh Declaration and all supporting papers, as well as the record in this litigation, and any other matters the Court may consider. Plaintiffs respectfully submit that the proposed settlement memorialized in the Settlement Agreement (the "Settlement") and letter agreement amending the Settlement Agreement and Plan of Allocation (described below and attached as Ex. 9 to the Gyandoh Decl.) is fair, reasonable, and

1  adequate, and should be preliminarily approved as that notice can be provided to the Settlement

2  Class.

3      The Settlement is the product of arm's-length negotiations between the Parties and their

4  counsel, all of whom comprehensively litigated this matter, are well-informed regarding all the

5  issues in this litigation, and have significant experience in complex litigation of this type.

6      Pursuant to the inquiries provided in the Procedural Guidance for Class Action Settlement of

7  this District,[2] Plaintiffs state as follows:

8  **1.  PRELIMINARY APPROVAL**

9      **a.  Any differences between the settlement class and the class proposed in the**

10         **operative complaint (or, if a class has been certified, the certified class) and an**

11         **explanation as to why the differences are appropriate.**

12     The definition of the Settlement Class members and beginning of the Class Period is the

13  same as the proposed class in the operative Second Amended Complaint, ECF No. 102 (hereinafter

14  "Complaint" or "Compl."). The only difference is that the proposed Settlement Class period ends

15  when the "Preliminary Approval Order is entered by the Court" rather than the "date of judgment."

16     **b.  Any differences between the claims to be released and the claims in the**

17         **operative complaint (or, if a class has been certified, the claims certified for**

18         **class treatment) and an explanation as to why the differences are appropriate.**

19     None.

20     **c.  The class recovery under the settlement (including details about and the value**

21         **of injunctive relief), the potential class recovery if plaintiffs had fully prevailed**

22         **on each of their claims, claim by claim, and a justification of the discount**

23         **applied to the claims.**

24

25  [2] https://www.cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/

26  PLAINTIFFS' NOTICE OF REVISED MOTION AND UNOPPOSED REVISED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT, PRELIMINARY CERTIFICATION OF A CLASS FOR
27  SETTLEMENT PURPOSES, APPROVAL OF FORM AND MANNER OF CLASS NOTICE, SCHEDULING A
FINAL APPROVAL HEARING, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
THEREOF
28  4:20-cv-06081-JST
-3-

The class recovery under the settlement will be $2,500,000, which represents roughly 18.3% to 19.1% of Plaintiffs' potential maximum recoverable losses, of $13,063,078.30 to $13,689,361.30 as calculated by Plaintiffs. Plaintiffs have refined their damages calculations and included more detail regarding the figures and justification of the discount than previously provided to the Court, and this information is provided in the supporting memorandum. *See* Memorandum of Law in Support, Section III.B.1.

      **d.**    **Any other cases that will be affected by the settlement, an explanation of what claims will be released in those cases if the settlement is approved, the class definitions in those cases, their procedural posture, whether plaintiffs' counsel in those cases participated in the settlement negotiations, a brief history of plaintiffs' counsel's discussions with counsel for plaintiffs in those other cases before and during the settlement negotiations, an explanation of the level of coordination between the two groups of plaintiffs' counsel, and an explanation of the significance of those factors on settlement approval. If there are no such cases, counsel should so state.**

None.

      **e.**    **The proposed allocation plan for the settlement fund.**

The *pro rata* amount paid to each Class Member will be determined by the proposed Plan of Allocation that is based on the year-end balances (or quarterly balances if readily available) of each Class Member's account for each year of the period between August 28, 2014, through the date of the Preliminary Approval Order (the "Class Period"). *See* Gyandoh Decl., ¶ 44, at Exhibit 1.C, Plan of Allocation. Participants, and Beneficiaries and Alternate Payees with Active Accounts in the NVIDIA Corporation 401(k) Plan, do not need to do anything affirmatively to receive payment under the Settlement, as their accounts will automatically be credited the amount due to them under

1     the Settlement. For Class Members who had a balance in their accounts at the beginning of the

2     Class Period, but liquidated their account before the end of the Class Period, the balance in their

3     account at the time of their last quarterly statement before distribution will be the balance used for

4     purposes of calculating an award under this Plan of Allocation. *Id*. Former Participants with a Final

5     Entitlement Amount shall be paid by check from the Settlement Administrator. *Id*.

6         **f.**      **If there is a claim form, an estimate of the expected claim rate in light of the**

7             **experience of the selected claims administrator and/or counsel based on**

8             **comparable settlements, the identity of the examples used for the estimate, and**

9             **the reason for the selection of those examples**.

10     There is no claim form.

11         **g.**      **In light of Ninth Circuit case law disfavoring reversions, whether and under**

12             **what circumstances money originally designated for class recovery will revert to**

13             **any defendant, the expected and potential amount of any such reversion, and an**

14             **explanation as to why a reversion is appropriate.**

15     Under the Settlement, no Settlement funds shall revert to any Defendant. The Net Settlement

16     Fund shall be distributed to all Class Members (Current and Former Participants, and their

17     beneficiaries).  The Parties have agreed to amend the Settlement Agreement and Plan of Allocation

18     such that any remaining money after the initial distribution of the Net Settlement Fund to Class

19     Members shall be redistributed as follows: (i) first, to pay any amounts mistakenly omitted from the

20     initial distribution to Class Members; (ii) second, to pay any additional Notice and Administrative

21     Costs incurred in administering the Settlement; and (iii) finally, to make a second distribution to

22     make a second distribution *pro rata* to Plan accounts of the Class Members who have active Plan

23     accounts at the time of the re-distribution. *See* Letter Agreement Amending Plan of Allocation,

24     attached to Gyandoh Decl. as Exhibit 9.

25

26     PLAINTIFFS' NOTICE OF REVISED MOTION AND UNOPPOSED REVISED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT, PRELIMINARY CERTIFICATION OF A CLASS FOR
27     SETTLEMENT PURPOSES, APPROVAL OF FORM AND MANNER OF CLASS NOTICE, SCHEDULING A
FINAL APPROVAL HEARING, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
THEREOF
28     4:20-cv-06081-JST
-5-

## 2. SETTLEMENT ADMINISTRATION

**a.** **Identify the proposed settlement administrator, the settlement administrator selection process, how many settlement administrators submitted proposals, what methods of notice and claims payment were proposed, and the lead class counsel's firms' history of engagements with the settlement administrator over the last two years.**

The Settlement Administrator shall be Analytics Consulting LLC ("Analytics"), a settlement administrator with over 50 years of experience administering class action settlements. *See* Gyandoh Decl., ¶ 55; *see also* https://www.analyticsllc.com/claims-administration/. Class Counsel has worked with Analytics on at least half a dozen ERISA class action cases over the past several years. *See* Gyandoh Decl., ¶ 55.

Class Counsel solicited bids from three companies. *See* Gyandoh Decl., ¶ 56  Each bid included toll free phone and email support, a website, and first-class mail distribution with procedures for updating addresses and resending notices as needed. *Id.* Analytics' bid was the most cost-effective bid that ensured the highest level of service. *Id.*

**b.** **Address the settlement administrator's procedures for securely handling class member data (including technical, administrative, and physical controls; retention; destruction; audits; crisis response; etc.), the settlement administrator's acceptance of responsibility and maintenance of insurance in case of errors, the anticipated administrative costs, the reasonableness of those costs in relation to the value of the settlement, and who will pay the costs.**

Analytics will destroy undeliverable notice mail on the effective date of the settlement or the date that the disposition of the case is no longer subject to appeal or review, whichever is later.

PLAINTIFFS' NOTICE OF REVISED MOTION AND UNOPPOSED REVISED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, PRELIMINARY CERTIFICATION OF A CLASS FOR SETTLEMENT PURPOSES, APPROVAL OF FORM AND MANNER OF CLASS NOTICE, SCHEDULING A FINAL APPROVAL HEARING, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
4:20-cv-06081-JST
-6-

1    Further, Analytics holds a FISMA-moderate "Authority to Operate" from the Securities and

2   Exchange Commission and the Bureau of Consumer Financial Protection, and an "Authority to

3   Use" from the Federal Trade Commission. *See* https://www.analyticsllc.com/information-security/.

4   Analytics distribution processes undergo an annual SOC 1 Type II audit for an in-depth assessment

5   of Analytics' systems various organizational controls related to Analytics' services and information

6   security performed by the AICPA as a third-party audit. *Id*. Analytics also aligns with the NIST

7   Special Publication 800-53 catalog of security controls for all U.S. federal information systems,

8   including the physical access requirements for data center access. *Id*.

9   **3.  NOTICE**

10    The Notice complies with this District's Procedural Guidance for Class Action Settlements.

11   **a.  Content of the Notice**

12    The Notice disseminated to the Settlement Class consists of a short form post card notice

13   mailed or emailed to Class Members that shall include Class Counsel's contact information, a

14   summary of the Settlement, and directs recipients to the Settlement Website which will state key

15   deadlines, and include: the long-form Notice which is more detailed than the short form notice, the

16   Preliminary Approval Order, motions for preliminary approval, final approval, and applications for

17   attorneys' fees, expenses, and case contribution awards, the Complaint, and other important

18   documents. *See* Gyandoh Decl., ¶ 44, Exhibits 1.A-B. The Notice will inform Class Members of

19   their inability to opt-out of the Settlement. In addition, the Notice will include the date and time of

20   the Final Approval Hearing, and a note advising Class Members that the hearing date may change

21   without further notice to the Class and instructions to check the settlement website or the Court's

22   PACER site to confirm the date and time. *Id*.

23    Class Members shall be permitted to object to any aspect of the Settlement. *See* Gyandoh

24   Decl., ¶ 44 Exhibit 1, Settlement Agreement, at Section 2.3. The Class Notice shall provide

25

26   PLAINTIFFS' NOTICE OF REVISED MOTION AND UNOPPOSED REVISED MOTION FOR PRELIMINARY
     APPROVAL OF CLASS ACTION SETTLEMENT, PRELIMINARY CERTIFICATION OF A CLASS FOR

27   SETTLEMENT PURPOSES, APPROVAL OF FORM AND MANNER OF CLASS NOTICE, SCHEDULING A
     FINAL APPROVAL HEARING, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

28   THEREOF

1  instructions and requirements for Class Members to object to the Settlement. *See id*., at Exhibit 1.B,

2  ¶¶13-17. To be filed validly, the objection and any notice of intent to participate or supporting

3  documents must be filed or postmarked at least thirty (30) calendar days prior to the scheduled Final

4  Approval Hearing. *Id.*  Any Person wishing to speak at the Final Approval Hearing shall file and

5  serve a notice of intent to participate thirty days (30) before the Final Approval Hearing. *Id.*

6  **b.  Dissemination of Notice to The Class**

7  Within 35 days of the entry of the Preliminary Approval Order, or as may otherwise be

8  directed by the Court, the Settlement Administrator shall provide Notice of the Settlement to Class

9  Members by first-class mail and/or email, whichever is more cost-efficient and available. *See*

10  Gyandoh Decl., ¶ 55 at Exhibit 1, Section 2.4. Defendants shall use all reasonable efforts to cause

11  NVIDIA and the Recordkeeper to provide necessary information to the Settlement Administrator so

12  that it may effectuate Notice, implement the Plan of Allocation, and distribute the Settlement Funds.

13  *See* Gyandoh Decl., ¶ 44 at Exhibit 1, Section 4.1; ¶55. The Settlement Administrator shall use

14  commercially reasonable efforts to locate any Class Member whose Notice is returned and re-mail

15  such Notice one additional time if an updated location is identified. *See* Ex. 1, at Section 2.4.

16  Because many Class Members are expected to have Active Accounts, a significant number of

17  Settlement Class members will be easily reached through their contact information associated with

18  those accounts, while Class Members without Active Accounts should be reachable through the

19  forwarding information provided to the Plan's recordkeeper when their accounts were closed.

20  Within ten calendar days after the filing of the motion for preliminary approval of the

21  Settlement, Defendants served the Class Action Fairness Act Notice on the Attorney General of the

22  United States, and the attorneys general of all states in which Class Members reside, as specified by

23  28 U.S.C. § 1715. *See* Gyandoh Decl., ¶ 44 Exhibit 1, at Section 2.7.

24

25

26  PLAINTIFFS' NOTICE OF REVISED MOTION AND UNOPPOSED REVISED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT, PRELIMINARY CERTIFICATION OF A CLASS FOR
27  SETTLEMENT PURPOSES, APPROVAL OF FORM AND MANNER OF CLASS NOTICE, SCHEDULING A
FINAL APPROVAL HEARING, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
28  THEREOF

\*\*\*

Additional information pertaining to the Settlement is detailed in the incorporated Memorandum of Law in Support, Section III. Accordingly, Plaintiffs respectfully request that the Court enter the Preliminary Approval Order and, if the Court deems necessary, hold a preliminary approval hearing on May 8, 2025, at 2:00 p.m. or at another date convenient for the Court.

Dated: February 17, 2025                    Respectfully submitted,

**CAPOZZI ADLER, P.C.**

*/s/ Mark K. Gyandoh*
Mark K. Gyandoh
(*Admitted Pro Hac Vice*)
James A. Wells
(*Admitted Pro Hac Vice*)
312 Old Lancaster Road
Merion Station, PA 19066
Email: markg@capozziadler.com
                jayw@capozziadler.com
Tel: (610) 890-0200

**ROSMAN & GERMAIN LLP**
Daniel L. Germain (State Bar No. 143334)
5959 Topanga Canyon Boulevard
Suite 360
Woodland Hills, CA 91367-7503
Telephone: (818) 788-0877
Email: germain@lalawyer.com

**MUHIC LAW LLC**
Peter A. Muhic
(*Admitted Pro Hac Vice*)
923 Haddonfield Road,
Suite 300 Cherry Hill, NJ 08002
Phone: (856) 324-8252
Email: peter@muhiclaw.com

*Counsel for Plaintiffs and the Putative Class*

# **TABLE OF CONTENTS**

I.     INTRODUCTION ...................................................................1

II.    RELEVANT BACKGROUND ...................................................1

III.   THE PROPOSED SETTLEMENT ............................................2

    A.    Released Claims...................................................................2

    B.    Class Relief ..........................................................................2

        1.    Settlement Fund and Calculation of Potential Damages ............2

        2.    Payment of Case Contribution Awards .......................3

        3.    Payment of Attorneys' Fees, Costs, and Expenses .................3

    C.    Approval Of Settlement Terms by an Independent Fiduciary. ...............4

    D.    The Court Retains Jurisdiction..............................................4

IV.   ARGUMENT ........................................................................4

    A.    The Court Will Be Able to Certify the Class for Purposes of Settlement ...............5

        1.    The Settlement Class Satisfies Rule 23(a) ...................6

            i.    Numerosity..............................................6

            ii.    Commonality..........................................6

            iii.    Typicality ...............................................8

            iv.    Adequacy ...............................................9

        2.    The Settlement Class Satisfies Rule 23(b)(1) ...............10

        3.    Capozzi Adler Should Be Appointed as Class Counsel..............11

    B.    The Settlement, Notice Plan, And Plan of Allocation Warrant Preliminary Approval ...............12

        1.    The Settlement Should Be Preliminarily Approved ...................12

        2.    The Notice Plan Should Be Preliminarily Approved.................15

        3.    The Plan of Allocation Should Be Preliminarily Approved ...................17

V.    CONCLUSION....................................................................18

PLAINTIFFS' NOTICE OF REVISED MOTION AND UNOPPOSED REVISED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, PRELIMINARY CERTIFICATION OF A CLASS FOR SETTLEMENT PURPOSES, APPROVAL OF FORM AND MANNER OF CLASS NOTICE, SCHEDULING A FINAL APPROVAL HEARING, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
4:20-cv-06081-JST
-i-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' NOTICE OF REVISED MOTION AND UNOPPOSED REVISED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT, PRELIMINARY CERTIFICATION OF A CLASS FOR
SETTLEMENT PURPOSES, APPROVAL OF FORM AND MANNER OF CLASS NOTICE, SCHEDULING A
FINAL APPROVAL HEARING, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
THEREOF
4:20-cv-06081-JST
-ii-

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Abdullah v. U.S. Sec. Assocs., Inc.*,
731 F.3d 952 (9th Cir. 2013) ................................................................................6

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)..................................................................................5, 10

*Bailey v. Verso Corp.*,
337 F.R.D. 500, 507 (S.D. Ohio 2021),
judgment entered, No. 17-cv-332, 2021 WL 5815727 (S.D. Ohio Dec. 24, 2021)....................10

*Baird v. BlackRock Institutional Tr. Co., N.A.*,
No. 17-cv-01892, 2021 WL 5991060 (N.D. Cal. July 12, 2021) ..................................13

*Banyai v. Mazur*,
205 F.R.D. 160 (S.D.N.Y. 2002) ........................................................................7

*Barcenas v. Rush Univ. Medical Ctr.*,
No. 22-cv-00366 (N.D. Ill. Jan. 19, 2023) ..............................................................17

*Beach v. JPMorgan Chase Bank, N.A.*,
No. 17-cv-563, 2019 WL 2428631 (S.D.N.Y. June 11, 2019) ......................................9

*Boley v. Universal Health Servs.*,
36 F.4th 124 (3d Cir. 2022) ..............................................................................8

*Campbell v. Facebook, Inc.*,
951 F.3d 1106 (9th Cir. 2020) ..........................................................................12

*Churchill Village, L.L.C. v. Gen. Elec.*,
361 F.3d 566 (9th Cir. 2004) ............................................................................15

*Clark v. Duke Univ.*,
No. 16-cv-1044, 2018 WL 1801946 (M.D.N.C. Apr. 13, 2018)..............................9, 11

*De Leon v. Ricoh USA, Inc.*,

PLAINTIFFS' NOTICE OF REVISED MOTION AND UNOPPOSED REVISED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT, PRELIMINARY CERTIFICATION OF A CLASS FOR
SETTLEMENT PURPOSES, APPROVAL OF FORM AND MANNER OF CLASS NOTICE, SCHEDULING A
FINAL APPROVAL HEARING, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
THEREOF
4:20-cv-06081-JST
-iii-

No. 18-cv-03725, 2019 WL 6311379 (N.D. Cal. Nov. 25, 2019) ...................................................5

*Diaz v. BTG Int'l Inc.*,
2021 WL 2414580 (E.D. Pa. June 14, 2021) ...............................................................................12

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974) .....................................................................................................................15

*Foster v. Adams & Assocs., Inc.*,
No. 18-cv-02723, 2022 WL 425559 (N.D. Cal. Feb. 11, 2022) .........................................2, 6, 11

*Griffin v. Flagstar Bancorp, Inc.*,
No. 10-cv-10610, 2013 WL 6511860 (E. D. Mich. Dec. 12, 2013) .............................................14

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) .......................................................................................................5

*Hanon v. Dataproducts Corp.*,
976 15 F.2d 497 (9th Cir.1992) .....................................................................................................8

*Harris v. Palm Springs Alpine Estates, Inc.*,
329 F.2d 909 (9th Cir. 1964) .........................................................................................................6

*Hefler v. Wells Fargo & Co.*,
No. 16-cv-05479, 2018 WL 6619983 (N.D. Cal. Dec. 18, 2018)................................................17

*Johnson v. Fujitsu Tech. & Business of America, Inc.*,
No. 16-cv-0369, 2018 WL 2183253 (N.D. Cal. May 11, 2018)....................................................2

*Johnson v. Serenity Transp., Inc.*,
No. 15-cv-02004, 2021 WL 3081091 (N.D. Cal. July 21, 2021) .............................................5, 15

*Kanawi v. Bechtel Corp.*,
254 F.R.D. 102 (N.D. Cal. 2008).........................................................................................7, 8, 9, 11

*Karpik v. Huntington Bancshares, Inc.*,
No. 17-cv-1153, 2021 WL 757123 (S.D. Ohio Feb. 18, 2021) .............................................10, 17

*Knapp v. Art.com, Inc.*,
283 F. Supp. 3d 823 (N.D. Cal. 2017) .........................................................................................14

*Krueger v. Ameriprise Fin., Inc.*,
304 F.R.D. 559 (D. Minn. 2014)...................................................................................................10

PLAINTIFFS' NOTICE OF REVISED MOTION AND UNOPPOSED REVISED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT, PRELIMINARY CERTIFICATION OF A CLASS FOR
SETTLEMENT PURPOSES, APPROVAL OF FORM AND MANNER OF CLASS NOTICE, SCHEDULING A
FINAL APPROVAL HEARING, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
THEREOF
4:20-cv-06081-JST
-iv-

*Kruger v. Novant Health, Inc.*,
No. 11–cv–02781, 2016 WL 6769066 (M.D.N.C. Sept. 29, 2016)................................14

*Massachusetts Mutual Life Insurance Co. v. Russell*,
473 U.S 134 (1985)..........................................................................................................9

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000) ..........................................................................................2

*Mullane v. Central Hanover Bank and Trust Co.*,
339 U.S. 306 (1950)........................................................................................................15

*In re Nexus 6P Prods. Liab. Litig.*,
No. 17-cv-02185, 2019 WL 6622842 (N.D. Cal. Nov. 12, 2019)................................17

*In re Northrop Grumman Corp., ERISA Litig.*,
06-cv-06213, 2011 WL 3505264 (C.D. Cal. Mar. 29, 2011) ..........................................8

*Ortiz v. Fireboard Corp.*,
527 U.S. 815 (1999)........................................................................................................10

*Peters v. Nat'l R.R. Passenger Corp.*,
966 F.2d 1483 (D.C. Cir. 1992) ....................................................................................16

*Philips v. Munchery Inc.*,
No. 19-cv-00469, 2020 WL 6135996 (N.D. Cal. Oct. 19, 2020) ....................................5

*Rites v. Ariz. Beverages USA, LLC*,
287 F.R.D. 523 (N.D. Cal. 2012) ....................................................................................6

*Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) ........................................................................................14

*Shirk v. Fifth Third Bancorp*,
No. 05-cv-049, 2008 WL 4425535 (S.D. Ohio Sept. 30, 2008) ..............................7, 11

*Shy v. Navistar Int'l Corp.*,
No. 92-cv-00333, 2022 WL 21255745 (S.D. Ohio June 13, 2022)..............................16

*Sims v. BB&T Corp.*,
No. 15-cv-732, 2019 WL 1995314 (M.D.N.C. May 6, 2019) ........................................2

PLAINTIFFS' NOTICE OF REVISED MOTION AND UNOPPOSED REVISED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT, PRELIMINARY CERTIFICATION OF A CLASS FOR
SETTLEMENT PURPOSES, APPROVAL OF FORM AND MANNER OF CLASS NOTICE, SCHEDULING A
FINAL APPROVAL HEARING, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
THEREOF
4:20-cv-06081-JST
-v-

*Slezak v. City of Palo Alto,*
No. 16-cv-03224, 2017 WL 2688224 (N.D. Cal. June 22, 2017)................................13

*Surowitz v. Hilton Hotels Corp.,*
383 U.S. 363 (1966)................................................................................................10

*In re Syncor ERISA Litig.,*
516 F.3d 1095 (9th Cir. 2008) ....................................................................................12

*Tadepalli v. Uber Techs., Inc.,*
No. 15-cv04348, 2015 WL 9196054 (N.D. Cal. Dec. 17, 2015)................................13

*Terraza v. Safeway Inc.,*
No. 16-cv-03994 (N.D. Cal. Sept. 8, 2020) ................................................................17

*Tracey v. MIT,*
No. 16-cv-11620, 2018 WL 5114167 (D. Mass. Oct. 19, 2018) ..................................9

*Urakhchin v. Allianz Asset Mgt. of Am., L.P.,*
SACV151614, 2018 WL 3000490 (C.D. Cal. Feb. 6, 2018)........................... 6, 12, 13, 14

*Viceral v. Mistras Grp., Inc.,*
No. 15-cv-02198, 2016 WL 5907869 (N.D. Cal. Oct. 11, 2016) ................................13

*Vikram v. First Student Mgt., LLC,*
No. 17-cv-04656, 2019 WL 1084169 (N.D. Cal. Mar. 7, 2019) ..................................5

*Villegas v. J.P. Morgan Chase & Co.,*
No. CV 09- 00261, 2012 WL 5878390 (N.D. Cal. Nov. 21, 2012)..............................5

*Wal-Mart Stores, Inc. v. Dukes,*
564 U.S. 338 (2011)................................................................................................6, 7

*Walsh v. CorePower Yoga LLC,*
No. 16-cv-05610, 2017 WL 589199 (N.D. Cal. Feb. 14, 2017) ................................14

STATUTES

29 U.S.C. § 1104................................................................................................8

29 U.S.C. § 1109................................................................................................7

PLAINTIFFS' NOTICE OF REVISED MOTION AND UNOPPOSED REVISED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT, PRELIMINARY CERTIFICATION OF A CLASS FOR
SETTLEMENT PURPOSES, APPROVAL OF FORM AND MANNER OF CLASS NOTICE, SCHEDULING A
FINAL APPROVAL HEARING, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
THEREOF
4:20-cv-06081-JST
-vi-

29 U.S.C. § 1109(a) .................................................................................................9

29 U.S.C. § 1132(a)(2) ........................................................................................7, 9

Fed. R. Civ. P. 23 ......................................................................................... *Passim*

Fed. R. Civ. P. 23(a) ........................................................................................5, 6, 10

Fed. R. Civ. P. 23(a)(1) ..........................................................................................6

Fed. R. Civ. P. 23(a)(2) ..........................................................................................6

Fed. R. Civ. P. 23(a)(3) ..........................................................................................8

Fed. R. Civ. P. 23(a)(4) ..........................................................................................9

Fed. R. Civ. P. 23(b) ........................................................................................5, 10

Fed. R. Civ. P. 23(b)(1) ....................................................................................10, 11

Fed. R. Civ. P. 23(b)(1)(A) ....................................................................................11

Fed. R. Civ. P. 23(b)(1)(B) ....................................................................................11

Fed. R. Civ. P. 23(c)(2) ..........................................................................................12

Fed. R. Civ. P. 23(e) ...............................................................................................16

Fed. R. Civ. P. 23(e)(2) ..........................................................................................12

Fed. R. Civ. P. 23(g)(1)(A) ....................................................................................11

Fed. R. Civ. P. 23(I)(2) ..........................................................................................15

**Other Sources**

Employee Retirement Income Security Act of 1974 ........................................*Passim*

United States Department of Labor, 68 Fed. Reg. 75,632, as amended ........................................ 4

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiffs and Class Counsel have vigorously pursued relief on behalf of the Class and the Plan, and Defendants' Counsel has vigorously defended against Plaintiffs' allegations. The Parties agreed to the Settlement after four years of litigation and arm's-length negotiations by experienced counsel under the auspices of a mediator experienced in ERISA matters. Resolving the Action at this juncture allows the Parties to avoid potentially costly and risky litigation that would deplete resources which could otherwise be used for the resolution of the Action, and which could result in a recovery less than that provided by the Settlement, or no recovery at all.

As set forth below, Plaintiffs submit that all prerequisites for preliminary approval of the Settlement and certification of the Settlement Class are satisfied. As such, Plaintiffs respectfully submit that the Motion should be granted, and notice should be provided to the Settlement Class in accordance with the proposed Notice Plan.

## II.    RELEVANT BACKGROUND

In the operative Complaint, filed in on October 24, 2023, Plaintiffs allege that Defendants are fiduciaries of the Plan and breached duties owed to the Plan and its participants and beneficiaries by: (1) failing to objectively and adequately review the Plan's investment portfolio with due care to ensure that each investment option was prudent, in terms of cost; and (2) maintaining certain funds in the Plan despite the availability of identical or similar investment options with lower costs and/or better performance histories. *See* Compl., ¶12. Over the ensuing year, both parties vigorously litigated the case, including a motion to dismiss and motion for class certification. The complete procedural history of the case is detailed in the attached Gyandoh Declaration in support of the instant motion at ¶¶ 3-23. The Parties also exchanged thousands of pages of documents. *Id.*, ¶¶ 24-34.

## III.    THE PROPOSED SETTLEMENT

### A.    Released Claims

If the Court grants Final Approval of the Agreement, the Settlement Class will be deemed to have released Defendants from all claims as described in Section 1.32 and Section V of the Agreement, which is incorporated herein by reference. *See* Gyandoh Decl., 44, at Exhibit 1, Section 1.36; Sec. V.

### B.    Class Relief

#### 1.    Settlement Fund and Calculation of Potential Damages

Defendants have agreed to pay a Settlement Amount of $2,500,000 to resolve Plaintiffs' claims. *See* Gyandoh Decl., ¶ 44, at Exhibit 1, at Section 1.35. The Court summarized Plaintiffs' claims in its motion to dismiss order as follows: "Plaintiffs allege that Defendants breached the duty of prudence by causing the Plan to pay excessive recordkeeping fees to Fidelity, ECF No. 51 ¶¶ 113–141, and to select and maintain investments with excessive management fees, *id*. ¶¶ 61–112. Viewing the allegations as a whole, and in the light most favorable to Plaintiffs,—as the Court must—Plaintiffs have established that Defendants' decision-making process was flawed." Order denying Defendants' Motion to Dismiss Plaintiffs' First Amended Class Action Complaint, at 8.

Plaintiffs view their investment management claim as also encompassing under performance allegations. Specifically, Plaintiffs allege the Plan's fiduciaries failed to select "comparable passively-managed and actively-managed alternative funds" which "had no material difference in risk/return profiles with the Plan's funds" had "had better performances than the Plan's funds in their 3 and 5 year average returns as of June 2020." Complaint, ¶¶ 105-107. Plaintiffs further allege "[a] reasonable investigation would have revealed the existence of lower-cost and better performing alternatives to the Plan's funds." *Id*. at ¶ 107.

PLAINTIFFS' NOTICE OF REVISED MOTION AND UNOPPOSED REVISED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, PRELIMINARY CERTIFICATION OF A CLASS FOR SETTLEMENT PURPOSES, APPROVAL OF FORM AND MANNER OF CLASS NOTICE, SCHEDULING A FINAL APPROVAL HEARING, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
4:20-cv-06081-JST
-2-

In their prior preliminary approval memorandum, Plaintiffs estimated potential damages of all their viable claims to be roughly $14,205,762 - $14,832,044.  However, in this filing, Plaintiffs have refined their damages analysis, which reduces the estimated damages slightly to $13,063,078.30 to $13,689,361.30.  These amounts are explained below.

### a.  Excessive Recordkeeping fees

According to the Plan's 408(b)(2) disclosures, which detail fees charged by the Plan's service providers, Plan participants paid recordkeeping fees of $63 per participant from the start of the Class Period in August 2014 up to the end of December 2017.  NVIDIA began paying recordkeeping fees in April of 2018, meaning Plan participants did not incur recordkeeping fees from April 2018 onward.  Plaintiffs allege a reasonable rate should have been $35 per participant from 2014 through the end of 2017.  The chart below calculates damages for each year of the Class Period assuming a trier of fact would find the Plan was charged $63 per participant annually for recordkeeping from August 2014 to December 31, 2017, when a reasonable rate was $35 per participant annually.

|       | Participants | $PP  | $PP-$35 | Damages    |
|-------|--------------|------|---------|------------|
| 2014  | 4895         | $63  | $28     | $57,108[3] |
| 2015  | 5117         | $63  | $28     | $143,276   |
| 2016  | 5749         | $63  | $28     | $160,972   |
| 2017  | 6622         | $63  | $28     | $185,416   |
|       |              |      | **Total:** | **$546,772** |

### b.  Failure to Select Identical Lower Share Classes

Plaintiffs allege Defendants imprudently retained the entire line-up of T.Rowe Price Target Date Funds in a higher-cost share class when less expensive share classes and lower-cost collective investment trust ("CIT") versions of the target date funds were available. The Plan eventually switched to the CITs in 2018.  Plaintiffs estimate the lower share class and CIT versions of the T.Rowe Price target date funds cost 15% to 56% less than the share classes in the Plan.  *See* Complaint, ¶ 88 (comparing the expense ratios of the different share classes of T.Rowe Price funds) and  ¶ 100 (comparing the expense ratios of the T.Rowe Price funds to their CIT counterparts)  The below chart shows the damages under either scenario based on the estimated expense ratios identified in the Complaint and the assets under management for the T.Rowe Price target date funds:

| **Claim** | **Damages** |
|-----------|-------------|
| Failure to Select Identical Lower Share Class (LSC) through Dec. 31, 2017 | $1,228,554.00 |
|           |             |
| Failure to utilize CITs prior to 2018 as the lower share class alternative | $1,854,837.00 |

---

[3] This amount is prorated for the start of the Class Period in August 2014.

1

2
### c. Investment Claim

3
Plaintiffs alleged that Defendants imprudently retained several funds that chronically

4
underperformed and should have been removed from the Plan.  Based on information analyzed in

5
discovery, the three funds Plaintiffs believe were imprudent and underperformed during the Class

6
Period are the Mainstay Winslow Large Cap Growth; American Beacon Large Cap Value R6; and

7
the Victory RS Select Growth Y. Plaintiffs compared the performance of these three funds to peer

8
funds in the same categories in Morningstar's database.[4]    Exhibits 7 and 8 to the Gyandoh

9
declaration demonstrate the underperformance of the three funds. The two exhibits, when viewed

10
together, show the amount of underperformance from January 1, 2014 through December 31, 2023

11
for all three challenged funds.  Each fund is compared to several comparator funds.  Damages are

12
calculated by taking the average performance of the comparator funds on a yearly basis from

13
January 1, 2014 through December 31, 2023, and comparing it to the yearly performance of the

14
challenged funds.  The difference (delta) is then multiplied by the assets under management for the

15
challenged funds for each year from January 1, 2014 through December 31, 2023.  Adding up the

16
gains and losses for each challenged fund results in damages as follows:

17

18

19

20

21
_____

22
[4]Morningstar is the most well respected independent research tool available to the financial industry and is used and trusted by virtually all financial professionals and fiduciaries.  Morningstar states that it created its categories "to help investors make meaningful comparisons between mutual funds. Morningstar found that the investment objective listed on a fund's prospectus often did not adequately explain how the fund was actually invested." Morningstar Category Classification, 31 March 2022 ("Morningstar Classifier") Available at the following web address: https://advisor.morningstar.com/Enterprise/VTC/MorningstarCategoryClassificationforFunds_April 2022.pdf. Last accessed on May 12, 2023.

23

24

25

26

27

28

| Underperformance Claim | Damages |
|---|---|
| Mainstay Winslow Large Cap Growth | $1,768,682.73 |
| American Beacon Large Cap Value R6 | $4,410,944.81 |
| Victory RS Select Growth Y | $5,108,124.75 |
| **Total Underperformance Damages** | **$11,287,752.30** |

Accordingly, estimated damages for Plaintiffs' claims may be summed up as follows:

| | Claims | Alternative claims |
|---|---|---|
| Recordkeeping | $546,772 | $546,772 |
| Failure to Select Lower Share Class | $1,228,554.00 | |
| Failure to Select CITs | | $1,854,837.00 |
| Investment Fund Claim | $11,287,752.30 | $11,287,752.30 |
| **Total** | **$13,063,078.30** | **$13,689,361.3** |

c.    **Consideration of Defendants' Defenses and the Risk of Recovery for Plaintiffs**

Through mediation, Plaintiffs considered Defendants' strong arguments about the Committee's procedural prudence, then discounted Plaintiffs' damages to account for the possibility the Court would find Defendants' arguments compelling, in order to determine a reasonable settlement amount. Defendants argued that the Committee was comprised of highly knowledgeable individuals from a breadth of expertise (including finance), and many had long tenure on the Committee. Defendants produced to Plaintiffs meeting minutes and materials to demonstrate that the Committee met regularly (every quarter, except one, in the relevant period), consulted with

1  investment managers each meeting and between meetings, and reviewed and changed the Plan's

2  investment line up.  Defendants also argued that the Committee negotiated lower recordkeeping

3  fees until NVIDIA started paying those fees directly as of April 2018.  Defendants' documents also

4  showed that in March 2018, the Committee reviewed the Plan's offerings and made two significant

5  changes in Defendants' estimation: the Committee removed six of the eight funds challenged in the

6  operative Complaint, removed nearly all revenue sharing, and changed recordkeeping arrangements

7  so that all recordkeeping fees would be paid directly by NVIDIA.

8  **Underperformance claims.**  Plaintiffs also considered Defendants' arguments regarding the

9  underperformance claims during mediation.   After reviewing Defendants' arguments and

10  comparators, Plaintiffs relinquished underperformance claims regarding the Fidelity Contrafund K.

11  Plaintiffs took into consideration Defendants' arguments that certain of the comparators Plaintiffs

12  chose appeared to be more expensive than the challenged fund or that the comparators were not

13  from the same category of investments as the challenged fund.

14  **Investment fees.**  Plaintiffs took into account Defendants' arguments that the differences in

15  price between the challenged funds and lower-cost share classes of the same fund were nearly

16  entirely attributable to revenue sharing and that the Plan was already invested in the Fidelity

17  Contrafund K class, which was the share class of the Contrafund that Plaintiffs alleged was the

18  appropriate share class.  Plaintiffs also took into account Defendants' arguments that collective

19  investment trusts are different from mutual fund options of the same fund, and that the Committee's

20  decision to move to collective investment trust versions of its investment options in 2018 was

21  consistent with industry norms.

22  **Recordkeeping fees.**   Plaintiffs took into account Defendants' arguments that when

23  compared to similarly sized plans,  the Plan's recordkeeping fees were within range and that the

24

25

26  PLAINTIFFS' NOTICE OF REVISED MOTION AND UNOPPOSED REVISED MOTION FOR PRELIMINARY
    APPROVAL OF CLASS ACTION SETTLEMENT, PRELIMINARY CERTIFICATION OF A CLASS FOR
27  SETTLEMENT PURPOSES, APPROVAL OF FORM AND MANNER OF CLASS NOTICE, SCHEDULING A
    FINAL APPROVAL HEARING, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
28  THEREOF
    4:20-cv-06081-JST
    -7-

1  Committee obtained lower recordkeeping fees within the relevant period and eventually NVIDIA

2  paid those fees directly.

3        As discussed further in Section IV.B.1., *infra*, the risk and complexity in ERISA class

4  actions makes it highly unlikely that Plaintiffs would recover 100% of their alleged damages at trial.

5  Thus, the Settlement Amount, representing roughly 18.3% to 19.1% of Plaintiffs' maximum

6  possible damages, is in line with the accepted range of recovery in class action settlements across

7  the country and in this district. *See Johnson v. Fujitsu Tech. & Business of America, Inc.,* No. 16-cv-

8  0369, 2018 WL 2183253, at *6-7 (N.D. Cal. May 11, 2018) (approving $14 million ERISA 401(k)

9  settlement that represented "just under 10% of the Plaintiffs' most aggressive 'all in' measure of

10  damages"); *Foster v. Adams & Assocs., Inc.*, No. 18-cv-02723, 2022 WL 425559, at *5 (N.D. Cal.

11  Feb. 11, 2022) (listing ERISA cases approving settlement amounts ranging from 3.2% to 30% of

12  estimated damages); *In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d 454, 459 (9th Cir. 2000) (finding

13  fair and adequate an ERISA settlement representing one-sixth, or 16% of recovery); *Sims v. BB&T*

14  *Corp.,* No. 15-cv-732, 2019 WL 1995314, at *5 (M.D.N.C. May 6, 2019) (approving an ERISA

15  settlement of 19% of the total damages sought by the plaintiffs).

16        The Settlement Fund will be used to pay the following amounts associated with the

17  Settlement: (1) compensation to current and authorized former participants of the Plan; (2) all

18  claims for attorneys' fees and expenses approved by the Court; (3) costs arising from evaluation of

19  the settlement by the Independent Fiduciary; (4) all costs necessary to administer the Settlement,

20  including, among other things, payment for the services of the Settlement Administrator and any

21  related taxes and tax-related costs; and (5) payment of Case Contribution Awards to Plaintiffs

22  subject to Court approval.

23        **2.       Payment of Case Contribution Awards**

24

25

26  PLAINTIFFS' NOTICE OF REVISED MOTION AND UNOPPOSED REVISED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT, PRELIMINARY CERTIFICATION OF A CLASS FOR
27  SETTLEMENT PURPOSES, APPROVAL OF FORM AND MANNER OF CLASS NOTICE, SCHEDULING A
FINAL APPROVAL HEARING, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
THEREOF
28  4:20-cv-06081-JST
-8-

At Final Approval, Plaintiffs will ask the Court to approve Case Contribution Awards to be paid out of the Settlement Fund to compensate Plaintiffs for their time and efforts serving as class representatives, subject to the approval of the Court. Plaintiffs have actively participated in the litigation and assisted Class Counsel in drafting the respective complaints and other documents, consulted with Class Counsel as needed, monitored the progression of the case, answered discovery-related requests for information, and participated in settlement discussions. *See Gyandoh Decl.,* ¶ 54. Plaintiffs may seek contribution awards of up to $10,000 each for Plaintiffs Cristina Tobias, Anthony Briggs, Ann MacDonald and David Calder relying on appropriate support for their request. *Id.* Consistent with awards regularly granted under similar circumstances, Plaintiffs believe that they should be compensated for their work done in support of the litigation and for assisting Class Counsel in achieving a strong settlement on behalf of the Class, as well as the reputational and other risks they undertook in bringing this Action. *Id.*

### 3. Payment of Attorneys' Fees, Costs, and Expenses

At Final Approval, Class Counsel anticipates seeking an award of attorneys' fees of at least 25% up to one-third of the of the common fund established by the Settlement relying on appropriate support for any request made, plus all reasonable and necessary expenses advanced by Class Counsel and carried for the duration of the litigation subject to the Approval of the Court. *See Gyandoh Decl.,* ¶ 53. Class Counsel prosecuted the Class Action on a contingent basis and advanced all associated costs with no expectation of recovery in the event the litigation did not result in a recovery for the Settlement Class. *Id.*

### C. Approval Of Settlement Terms by an Independent Fiduciary

As an additional means of confirming the fairness, reasonableness, and adequacy of the Settlement, and to facilitate the Plan's release of claims under the Department of Labor's regulations pertaining to prohibited transactions, pursuant to the Settlement Agreement, Defendants

1  retained an Independent Fiduciary to approve and authorize the Settlement on behalf of the Plan and

2  Class Members. *See* Gyandoh Decl., ¶¶ 57; Exhibit 1, Section 1.21-.24, 2.6. Defendants,

3  Defendants' Counsel, Plaintiffs, and Class Counsel shall provide the Independent Fiduciary with

4  sufficient information so that the Independent Fiduciary can review and evaluate the Settlement and

5  each of the related applications. The Independent Fiduciary's review will include interviews with

6  Class Counsel and Defendants' Counsel, respectively. Furthermore, the Independent Fiduciary shall

7  comply with all relevant conditions set forth in Prohibited Transaction Class Exemption 2003-39,

8  "Release of Claims and Extensions of Credit in Connection with Litigation," issued December 31,

9  2003, by the United States Department of Labor, 68 Fed. Reg. 75,632, as amended ("PTE 2003-

10  39"), in making its determination, for the purpose of Defendants' reliance on PTE 2003-39. *Id.*

11       **D.    The Court Retains Jurisdiction**

12       The Court shall retain jurisdiction as to all matters relating to administration, enforcement,

13  and interpretation of the Settlement Agreement. *See* Gyandoh Decl., ¶ 44, at Exhibit 1, Section

14  10.12.

15  **IV.    ARGUMENT**

16       Under Federal Rule of Civil Procedure 23, when the Court is presented with a proposed

17  settlement, it must determine whether the proposed settlement class satisfies the requirements for

18  class certification under Rule 23. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613-14

19  (1997). Class certification under Rule 23 has two primary components: a proposed class must meet

20  the four requirements of Rule 23(a) and the requirements of at least one subsection of Rule 23(b).

21  *See id.*; Fed. R. Civ. P. 23; *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019-1022 (9th Cir.

22  1998). Approval of a settlement under Rule 23 involves "a two-step process": "First, the Court

23  decides whether the class action settlement deserves preliminary approval. Second, after notice is

24

25

26  PLAINTIFFS' NOTICE OF REVISED MOTION AND UNOPPOSED REVISED MOTION FOR PRELIMINARY
    APPROVAL OF CLASS ACTION SETTLEMENT, PRELIMINARY CERTIFICATION OF A CLASS FOR
27  SETTLEMENT PURPOSES, APPROVAL OF FORM AND MANNER OF CLASS NOTICE, SCHEDULING A
    FINAL APPROVAL HEARING, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
28                                        THEREOF
                                      4:20-cv-06081-JST
                                            -10-

given to class members, the Court determines whether final approval is warranted." *Vikram v. First Student Mgt., LLC*, No. 17-cv-04656, 2019 WL 1084169, at *3 (N.D. Cal. Mar. 7, 2019).

In addition, the Court must preliminarily determine whether the settlement is fair, reasonable, and adequate. "At the preliminary approval stage, 'the settlement need only be potentially fair.'" *Johnson v. Serenity Transp., Inc.*, No. 15-cv-02004, 2021 WL 3081091, at *4 (N.D. Cal. July 21, 2021) (citation omitted). "The Court cannot, however, fully assess such factors until the final approval hearing." *De Leon v. Ricoh USA, Inc.*, No. 18-cv-03725, 2019 WL 6311379, at *10 (N.D. Cal. Nov. 25, 2019).

### A.    The Court Will Be Able to Certify the Class for Purposes of Settlement

While ERISA representative actions are ideally suited for class action treatment, when "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems." *Amchem*, 521 U.S. at 620. In any event, the class action device is the prevailing procedural vehicle by which retirement plan participants bring representative actions under ERISA §502(a)(2), and courts routinely grant class certification of ERISA breach of fiduciary duty actions. Additionally, the Court "must consider whether the Settlement Agreement 'provides preferential treatment to any class member.'" *Philips v. Munchery Inc.*, No. 19-cv-00469, 2020 WL 6135996, at *7 (N.D. Cal. Oct. 19, 2020) (quoting *Villegas v. J.P. Morgan Chase & Co.*, No. CV 09- 00261, 2012 WL 5878390, at *7 (N.D. Cal. Nov. 21, 2012)).

### 1.    The Settlement Class Satisfies Rule 23(a)[5]

### a.    Numerosity

---

[5] The Parties fully briefed the issue of Class Certification (*see* ECF Nos. 110, 114, 117), but a stay was entered before this Court ruled on Plaintiffs' Motion. *See* ECF No. 120; *see also* Gyandoh Decl., ¶¶ 21-24.

The numerosity requirement of Rule 23 requires that a putative class must be "so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). However, "[i]mpracticability is not impossibility, and instead refers only to the 'difficult or inconvenience of joining all members of the class.'" *Foster v. Adams & Assocs., Inc.*, No.18-cv-02723, 2019 WL 4305538, at *3 (N.D. Cal. Sept. 11, 2019) (finding that this factor was "easily satisfied" with 2,766 vested plan participants) (citing *Harris v. Palm Springs Alpine Estates, Inc*., 329 F.2d 909, 913-14 (9th Cir. 1964)). While no specific number is needed to maintain a class action, courts in this Circuit have routinely found that a class greater than 40 often satisfies the numerosity requirement, let alone a class with thousands of putative class members. *See id*. (citing *Rites v. Ariz. Beverages USA, LLC*, 287 F.R.D. 523, 526 (N.D. Cal. 2012)). Here, as of December 31, 2021, the Plan had over 11,812 participants with account balances. *See 2021 Form 5500 at 2*. Thus, the proposed Class easily meets Rule 23(a)'s numerosity requirements.

### b.     Commonality

The commonality prerequisite of Rule 23 requires "questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). Commonality involves "the capacity of a class[-]wide proceeding to generate common answers apt to drive resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (internal quotations omitted). "Rule 23(a)(2) is met so long as there is 'a single significant question of law or fact' common to the class." *Urakhchin*, 2017 WL 2655678, at *4 (citing *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013)). In ERISA breach of fiduciary duty actions, "the common focus is on the conduct of Defendants…Plaintiffs' claims do not focus on injuries caused to each individual account, but rather on how the Defendants' conduct affected the pool of assets that make up the [Plan]." *Kanawi v. Bechtel Corp*., 254 F.R.D. 102, 109 (N.D. Cal. 2008).

Plaintiffs claim that Defendants breached their fiduciary duties owed to the Plan under ERISA § 404, 29 U.S.C. § 1104, and brought the Action in a representative capacity under ERISA §§ 409 and 502(a)(2), 29 U.S.C. §§ 1109, 1132(a)(2). Thus, Plaintiffs' Plan-wide claims involve legal and factual questions that inherently affect all participants and beneficiaries in the Plan. Indeed, "the question of defendants' liability for ERISA violations is common to all class members because a breach of a fiduciary duty affects all participants and beneficiaries." *Shirk v. Fifth Third Bancorp*, No. 05-cv-049, 2008 WL 4425535, at *2 (S.D. Ohio Sept. 30, 2008) (quoting *Banyai v. Mazur*, 205 F.R.D. 160, 163 (S.D.N.Y. 2002)).

Here, the overarching questions of law and fact applicable to all Plan participants and beneficiaries are whether Defendants breached fiduciary duties owed to the Plan and its participants and beneficiaries by: selecting and retaining investment options in the Plan despite the allegedly high cost of the funds in relation to other comparable investments; allegedly failing to investigate the availability of lower-cost share classes of certain mutual funds in the Plan; allegedly failing to investigate collective trusts as alternatives to mutual funds, and allegedly failing to monitor or control the compensation paid for recordkeeping services. Moreover, all Plan participants and beneficiaries were subject to Defendant NVIDIA Corporation 401(k) Plan Benefits Committee ("Committee")'s decisions about selection and retention of Plan investments. *See Kanawi*, 254 F.R.D. at 109 (finding commonality where injury stemmed from whether defendants breached their fiduciary duties to the Plan by making imprudent investment decisions). While a single common question is sufficient to meet this standard, the common questions here are numerous. *See Wal-Mart*, 564 U.S., at 359. Here, as in *Kanawi* and *Clark v. Duke Univ.*, Plaintiffs' claims and each putative Class member's claims are based on the same events and legal theory, *i.e.*, breaches of fiduciary duty stemming from the Committee's alleged imprudent process for selecting, administering, and monitoring the Plan's investments, along with the Plaintiffs' remedial theory,

1   which is identical for the named Plaintiffs and the proposed Class members. *See Kanawi*, 254

2   F.R.D. at 109; *Clark*, No. 16-1044, 2018 WL 1801946, at *5 (M.D.N.C. Apr. 13, 2018). Since the

3   central allegations concern the Committee's administration of the Plan, they are common to all Plan

4   participants who are empowered to bring an action on behalf of the Plan. *Kanawi*, 254 F.R.D. at

5   109.

6                                    **c.    Typicality**

7           The typicality prerequisite of Rule 23 requires that the claims of the representative plaintiffs

8   be typical of the claims of the class. See FED. R. CIV. P. 23(a)(3). Typicality is met when "other

9   members have the same or similar injury, . . . the action is based on conduct which is not unique to

10  the named plaintiffs, and . . . other class members have been injured by the same course of

11  conduct." *Kanawi*, 254 F.R.D. at 110 (citing *Hanon v. Dataproducts Corp.*, 976 15 F.2d 497, 508

12  (9th Cir.1992)). Like commonality, typicality is a "permissive" standard and "the focus should be

13  on the defendants' conduct and plaintiff's legal theory, not the injury caused to the plaintiff." *Id*.

14  Since claims under ERISA § 502(a)(2) are inherently representative claims, any participant's claim

15  is necessarily typical of the claims of the Class; this is because every participant is asserting the

16  Plan's claim. "Courts within the Ninth Circuit have repeatedly concluded that the typicality

17  requirement was satisfied in defined contribution cases despite the fact that 'participants have

18  individual accounts and select their investment fund from a variety of available options.'" *In re

19  Northrop Grumman Corp., ERISA Litig.*, 06-cv-06213, 2011 WL 3505264, at *10 (C.D. Cal. Mar.

20  29, 2011) (citing cases); *see also Kanawi*, 254, F.R.D. at 110 (typicality met for fiduciary breach

21  claims because "[n]one of the facts or legal claims are unique to the named Plaintiffs[]" since "[t]he

22  complaint is based on allegations and recovery that address the Plan as a whole, not individual

23  claimants"); *Boley v. Universal Health Servs.*, 36 F.4th 124, 134 (3d Cir. 2022) ("Each participant's

24  potential recovery, regardless of the fund in which he or she invested, is under the same legal

25

26   PLAINTIFFS' NOTICE OF REVISED MOTION AND UNOPPOSED REVISED MOTION FOR PRELIMINARY
     APPROVAL OF CLASS ACTION SETTLEMENT, PRELIMINARY CERTIFICATION OF A CLASS FOR
27   SETTLEMENT PURPOSES, APPROVAL OF FORM AND MANNER OF CLASS NOTICE, SCHEDULING A
     FINAL APPROVAL HEARING, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
28                                       THEREOF
                                    4:20-cv-06081-JST
                                         -14-

1   theory—Universal's breach of its fiduciary duty under ERISA in managing the Plan's investment

2   options.").

3          The circumstances in this Action, in which Plaintiffs alleged fiduciary breaches arising out

4   of the Committee's purported management and administration of the Plan, are no exception.

5   Defendants' Plan-wide alleged conduct at issue in this Action, of employing an "imprudent process

6   for selecting, administering and monitoring the Plan's . . . investments," is of a kind routinely found

7   to support determinations of typicality. *Clark*, 2018 WL 1801946 at *5. Likewise, the remedial

8   theory asserted by Plaintiffs here is identical among all members of the proposed Class. *See id*. In

9   sum, Plaintiffs' claims on behalf of the Plan are typical of all Class members' claims.

10                          **d.      Adequacy**

11          Representative plaintiffs must also show that they will "fairly and adequately protect the

12   interests of this class." FED. R. CIV. P. 23(a)(4). This inquiry analyzes "whether any conflicts of

13   interest exist between the named plaintiffs and the class members" and "whether the named

14   Plaintiffs' counsel will adequately protect the interests of the class." *Kanawi*, 254 F.R.D. at 109.

15          Plaintiffs' interests are tightly aligned with all other members of the proposed Class by

16   virtue of the very nature of the claims that they bring. Plaintiffs, acting in a representative capacity,

17   seek to enforce the duties that Defendants owed to the Plan and to recover the alleged damages and

18   equitable relief due to them. *See* 29 U.S.C. §§ 1109(a), 1132(a)(2); *Massachusetts Mutual Life

19   Insurance Co. v. Russell*, 473 U.S 134, at 142 n.9 (1985) Here, "because the crux" of ERISA breach

20   of fiduciary duty cases, "hinges on whether defendants acted imprudently with respect to the Plan

21   and not the investments of individual participants, this Court [should] find[] no substantial intra-

22   class conflict in the proposed class." *Tracey v. MIT*, No. 16-cv-11620, 2018 WL 5114167, at * 6 (D.

23   Mass. Oct. 19, 2018); *see also Beach v. JPMorgan Chase Bank, N.A.*, No. 17-cv-563, 2019 WL

24   2428631, at * 8 (S.D.N.Y. June 11, 2019) ("The general rule that there is 'a relatively low

25

26   PLAINTIFFS' NOTICE OF REVISED MOTION AND UNOPPOSED REVISED MOTION FOR PRELIMINARY
     APPROVAL OF CLASS ACTION SETTLEMENT, PRELIMINARY CERTIFICATION OF A CLASS FOR
27   SETTLEMENT PURPOSES, APPROVAL OF FORM AND MANNER OF CLASS NOTICE, SCHEDULING A
     FINAL APPROVAL HEARING, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
28                                          THEREOF

likelihood of intra-class conflicts in cases of excessive fee claims' because the recovery is to the Plan, not to individual Plaintiffs."); *Krueger v. Ameriprise Fin., Inc.*, 304 F.R.D. 559, 575 (D. Minn. 2014) (similar). Since Plaintiffs are pursuing claims on behalf of the Plan, there are no conflicts between Plaintiffs' individual interests and the interests of the proposed Class. Indeed, Plaintiffs and Class members all share the same objectives, the same factual and legal positions, and the same interest in establishing Defendants' liability.

A class representative needs only a basic understanding of the claims and a willingness to participate in the case, requirements that Plaintiffs here easily surpass. *See Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 373 (1966). Plaintiffs have demonstrated their commitment to pursuing this Action on behalf of a Settlement Class and have achieved a very favorable result, which does not favor any member of the Settlement Class at the expense of others. *See* Gyandoh Decl., ¶¶ 72-75, Exhibits 2-5 (Declarations of named Plaintiffs Cristina Tobias, Anthony Briggs, Ann MacDonald and David Calder). Plaintiffs clearly have, and will continue to, adequately represent all members of the Settlement Class. In addition, Plaintiffs have retained qualified and competent counsel, whose adequacy is discussed in greater detail in Subsection 3, *infra*. *See Bailey v. Verso Corp.*, 337 F.R.D. 500, 507 (S.D. Ohio 2021), judgment entered, No. 17-cv-332, 2021 WL 5815727 (S.D. Ohio Dec. 24, 2021) (finding that the adequacy requirement satisfied by class counsel who were "experienced ERISA litigators" and had "administered the settlement of numerous retiree-benefit class actions").

### 2. The Settlement Class Satisfies Rule 23(b)(1)

In addition to satisfying the requirements of Rule 23(a), Plaintiffs need only satisfy one subsection of Rule 23(b). *See Amchem*, 521 U.S. at 613-14. Courts routinely grant certification under Rule 23(b)(1) in ERISA fiduciary breach cases. *See Karpik v. Huntington Bancshares, Inc.*, No. 17-cv-1153, 2021 WL 757123, at *11 (S.D. Ohio Feb. 18, 2021) (noting that cases "involving allegations of fiduciary breaches to a trust or plan[] are precisely the type of cases that are

1  encompassed by" Rule 23(b)(1)); *Ortiz v. Fireboard Corp.*, 527 U.S. 815, 833-34 (1999) (calling

2  breach of trust actions a "classic example" of a Rule 23(b)(1) class); *Shirk v. Fifth Third Bancorp*,

3  2008 WL 4425535, at *4 (S.D. Ohio Sept. 30, 2008) ("courts have routinely found that class

4  certification is appropriate under Rule 23(b), and most usually 23(b)(1)" in ERISA breach of

5  fiduciary duty cases). Actions under ERISA §§ 409 and 502(a)(2) for breach of fiduciary duty

6  present a "paradigmatic example" of a Rule 23(b)(1) class. *Kanawi*, 254 F.R.D. at 111-12 (citations

7  omitted); *see also Foster,* 2019 WL 4305538, at *7 ("Certification under Rule 23(b)(1) is

8  particularly appropriate in cases involving ERISA fiduciaries who must apply uniform standards to

9  a large number of beneficiaries.") (citations omitted). Certification here is appropriate under either

10  subpart of Rule 23(b)(1). *See Clark*, 2018 WL 1801946, at *9-*10 (finding that plaintiffs

11  established basis for certification under Rule 23(b)(1)(A) and Rule 23(b)(1)(B)).

### 3.    Capozzi Adler Should Be Appointed as Class Counsel

13      In appointing Class Counsel, this Court should consider the Rule 23(g)(1)(A) factors:

14      (i)    the work counsel has done in identifying or investigating potential claims in this

15          action;

16      (ii)    counsel's experience in handling class actions, other complex litigation, and the

17          types of claims asserted in this action;

18      (iii)    counsel's knowledge of the applicable law; and

19      (iv)    the resources counsel will commit to representing the class.

20  *See* Fed. R. Civ. P. 23(g)(1)(A).

21      Proposed Class Counsel, Capozzi Adler, P.C. ("Class Counsel"), are exceedingly qualified

22  under these factors. *See* Gyandoh Decl., ¶¶ 58-69. To date, Class Counsel has leveraged their

23  experience and resources to vigorously pursue recovery on behalf of the Plan and protect the

24  interests of all Class Members, including by comprehensively investigating the claims forming the

PLAINTIFFS' NOTICE OF REVISED MOTION AND UNOPPOSED REVISED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT, PRELIMINARY CERTIFICATION OF A CLASS FOR
SETTLEMENT PURPOSES, APPROVAL OF FORM AND MANNER OF CLASS NOTICE, SCHEDULING A
FINAL APPROVAL HEARING, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
THEREOF
4:20-cv-06081-JST
-17-

1   basis of the Action, filing detailed pleadings, briefing several motions, engaging in the discovery

2   process, and litigating the case through Settlement. *See Id*., at ¶ 69. Class Counsel also have

3   extensive experience litigating ERISA fiduciary breach cases and overseeing the administration of

4   settlements in ERISA actions. *See Id*., at ¶¶ 63-67. Class Counsel will continue to leverage their

5   wealth of relevant experience and resources on behalf of the Settlement Class through final

6   resolution, including addressing inquiries from members of the Settlement Class and supervising the

7   work of the Settlement Administrator. *See Id*., at ¶¶ 61, 63; *see also Diaz v. BTG Int'l Inc*., 2021

8   WL 2414580, at *8 (E.D. Pa. June 14, 2021) (appointing the undersigned as settlement Class

9   Counsel in an ERISA case and stating that we "appear well qualified to weigh the risks and benefits

10  of continued litigation as compared to the relief provided by the Settlement.") Accordingly, the

11  Court should appoint Capozzi Adler, P.C. as Class Counsel.

12      **B.    The Settlement, Notice Plan, And Plan of Allocation Warrant Preliminary**

13          **Approval**

14          **1.    The Settlement Should Be Preliminarily Approved**

15      "To preliminarily approve a proposed class-action settlement, Rule 23(e)(2) requires the

16  Court to determine whether the proposed settlement is fair, reasonable, and adequate." *Urakhchin v.*

17  *Allianz Asset Mgt. of Am., L.P*., SACV151614, 2018 WL 3000490, at *5 (C.D. Cal. Feb. 6, 2018)

18  (citing Fed. R. Civ. P. 23(e)(2)). In determining whether a settlement meets these requirements,

19  courts look to factors including the strength of the claims and defenses, the risk, expense, and

20  complexity of continued litigation, the stage of proceedings and extent of discovery completed, and

21  the experience and views of class counsel. *Id*. The relative importance of these factors depends upon

22  the unique facts and circumstances of a given case, and "[i]t is the settlement taken as a whole,

23  rather than the individual component parts, that must be examined for overall fairness . . . ." *Id*.

24  (citations and alterations omitted). "[T]here is a strong judicial policy that favors settlements,

25

26  PLAINTIFFS' NOTICE OF REVISED MOTION AND UNOPPOSED REVISED MOTION FOR PRELIMINARY
    APPROVAL OF CLASS ACTION SETTLEMENT, PRELIMINARY CERTIFICATION OF A CLASS FOR
27  SETTLEMENT PURPOSES, APPROVAL OF FORM AND MANNER OF CLASS NOTICE, SCHEDULING A
    FINAL APPROVAL HEARING, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
28  THEREOF
    4:20-cv-06081-JST
    -18-

particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1121 (9th Cir. 2020) (same).

As a preliminary matter, although Plaintiffs believe there is strong legal and factual support for their claims, there is inherent risk in ERISA class actions, particularly at summary judgment and trial. Trial presentations would have relied heavily on competing expert testimony and given that Plaintiffs bear the burden of proving both liability and damages, success was by no means guaranteed. *See Baird v. BlackRock Institutional Tr. Co., N.A.*, No. 17-cv-01892, 2021 WL 5991060, at *6 (N.D. Cal. July 12, 2021) (an analogous ERISA case noting that "[e]ven if the Plaintiffs prevailed on the issue of liability, there was a significant risk that they would not have recovered a significant monetary amount."). Regardless of the outcome of a trial, the non-prevailing party would have likely appealed, requiring both sides to expend considerably more resources and delay resolution of the case even further. Accordingly, the Settlement is a product of an extensive arm's-length process in recognition of these risks. *See Urakhchin*, 2018 WL 3000490, at *4. "An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining." *Viceral v. Mistras Grp., Inc.,* No. 15-cv-02198, 2016 WL 5907869, at *8 (N.D. Cal. Oct. 11, 2016); *see also Slezak v. City of Palo Alto,* No. 16-CV-03224-LHK, 2017 WL 2688224, at *5 (N.D. Cal. June 22, 2017) (finding the "likelihood of fraud or collusion [wa]s low . . . because the Settlement was reached through arm's-length negotiations, facilitated by an impartial mediator."). Further, Class Counsel and Defendants' counsel are experienced in ERISA litigation, and each possess a thorough understanding of the factual and legal issues involved in the Action. *See Tadepalli v. Uber Techs., Inc.,* No. 15-cv04348, 2015 WL 9196054, at *9 (N.D. Cal. Dec. 17, 2015) ("Settlements are entitled to 'an initial presumption of fairness' because they are the

1  result of arm's-length negotiations among experienced counsel."); *Baird*, 2021 WL 5991060, at *5

2  (same).

3      Class Counsel conducted substantial investigation and analysis of thousands of pages of

4  documents. *See* Gyandoh Decl., ¶¶ 24-34. "Discovery can be both formal and informal" and, here,

5  Plaintiffs and Class Counsel engaged in significant investigation of the Parties' claims and defenses

6  even before filing the initial complaint, and since then have undertaken extensive formal fact

7  discovery. *See Urakhchin*, 2018 WL 3000490, at *4; *see also Kruger v. Novant Health, Inc.*, No.

8  11–cv–02781, 2016 WL 6769066, at *3 (M.D.N.C. Sept. 29, 2016) (pre-filing investigation in

9  comparable ERISA cases takes months, including "meeting with the Plans' participants, obtaining

10  documents from public sources and the Retirement Plus Plan administrator, reviewing and

11  analyzing plan documents and financial statements, building on expertise regarding industry

12  practices."). Although formal expert discovery did not commence, Plaintiffs did work with their

13  consulting experts on this matter. *See* Gyandoh Decl., ¶ 24. The extensive discovery, exchange of

14  mediation statements, and discussions during mediation perfected each Party's understanding of

15  their respective strengths and weaknesses. Settling at this stage is ideal because it guarantees

16  immediate relief while avoiding the costs and risks of continued discovery and litigation. *See Griffin*

17  *v. Flagstar Bancorp, Inc.*, No. 10-cv-10610, 2013 WL 6511860, at *3 (E. D. Mich. Dec. 12, 2013)

18  (early settlement is ideal because "expert discovery in this ERISA action would be time consuming

19  and costly and would be followed by expensive and burdensome dispositive motions, trial and

20  appeals.").

21      Class Counsel has significant experience in class action litigation generally and ERISA

22  breach of fiduciary duty litigation in particular and are of the opinion that the Settlement is fair and

23  reasonable. "The Ninth Circuit recognizes that 'parties represented by competent counsel are better

24  positioned than courts to produce a settlement that fairly reflects each party's expected outcome in

25

1  litigation.'" *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 833 (N.D. Cal. 2017) (quoting *Rodriguez*

2  *v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009)); *see also Urakhchin*, 2018 WL 3000490, at

3  *5 (citations omitted) ("The recommendations of plaintiffs' counsel should be given a presumption

4  of reasonableness."); *Walsh v. CorePower Yoga LLC*, No. 16-cv-05610, 2017 WL 589199, at *10

5  (N.D. Cal. Feb. 14, 2017) (holding that settlements that are "the result of arms'-length negotiations

6  among experienced counsel" weigh in favor of preliminary approval.). The Settlement provides a

7  substantial monetary recovery of $2,500,000. Further, the Parties will submit the Settlement and

8  related applications for fees and expenses to an independent fiduciary retained on behalf of the Plan,

9  which will provide an opinion on the Settlement's fairness before the Final Approval Hearing.

10  "Preliminary approval is thus appropriate where 'the proposed settlement appears to be the product

11  of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly

12  grant preferential treatment to class representatives or segments of the class, and falls within the

13  range of possible approval.'" *Serenity Transp., Inc.,* 2021 WL 3081091, at *4 (N.D. Cal. July 21,

14  2021) (citation omitted).

15      In sum, the Settlement is the product of vigorous litigation and arm's-length negotiation by

16  experienced and well-informed counsel, adequately reflects the strength of the parties' claims and

17  defenses, is based on sufficient discovery and information, and provides significant relief to the

18  Settlement Class. Accordingly, the Court should find the Settlement is fair, reasonable, and

19  adequate, and merits preliminary approval.

20              **2.    The Notice Plan Should Be Preliminarily Approved**

21      In addition to preliminarily approving the proposed Settlement, the Court must approve the

22  proposed means of notifying Settlement Class members. *See* FED. R. CIV. P. 23(I)(2). Due process

23  and Rule 23(e) do not require that each Class Member receive notice, but rather that class notice

24  must be "reasonably calculated, under the circumstances, to apprise interested parties of the

25

26  PLAINTIFFS' NOTICE OF REVISED MOTION AND UNOPPOSED REVISED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT, PRELIMINARY CERTIFICATION OF A CLASS FOR
27  SETTLEMENT PURPOSES, APPROVAL OF FORM AND MANNER OF CLASS NOTICE, SCHEDULING A
FINAL APPROVAL HEARING, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
28  THEREOF
4:20-cv-06081-JST
-21-

1  pendency of the action and afforded them an opportunity to present their objections." *Mullane v.*

2  *Central Hanover Bank and Trust Co*., 339 U.S. 306, 314 (1950). "Individual notice must be

3  provided to those class members who are identifiable through reasonable effort." *Eisen v. Carlisle*

4  *& Jacquelin*, 417 U.S. 156, 175 (1974). "Notice is satisfactory if it 'generally describes the terms of

5  the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come

6  forward and be heard.'" *Churchill Village, L.L.C. v. Gen. Elec.,* 361 F.3d 566, 575 (9th Cir. 2004).

7       The Notice Plan is designed to reach the largest number of Settlement Class members

8  possible. The Settlement Notice will be sent by first-class mail to the last known address of each

9  Settlement Class member, or by email where available, prior to the Final Approval Hearing. *See*

10  Gyandoh Decl., ¶ 44, Exhibit 1, Section 2.4; *see also Peters v. Nat'l R.R. Passenger Corp*., 966

11  F.2d 1483, 1486 (D.C. Cir. 1992) ("It is beyond dispute that notice by first class mail ordinarily

12  satisfies Rule 23(c)(2)'s requirement that class members receive 'the best notice practicable under

13  the circumstances.'"). Notably, all Settlement Class members had Plan accounts, so the Plan's

14  recordkeeper has addresses and other identifying information for a substantial portion of the

15  Settlement Class.

16       The "Notice of Proposed Class Action Settlement" provides Settlement Class Members the

17  information they need to understand the terms of the settlement and the settlement process. *See*

18  Gyandoh Decl., ¶ 44 at Exhibits 1.A-1.B ("Notices"). The Notices describes the case and the

19  Settlement terms (*id.,* Ex. 1.A; Ex. 1.B at ¶ 2); provides a Settlement Website for Settlement Class

20  Members to get more information and directs them to the Court's PACER system (*id.,* Ex. 1.A; Ex.

21  1.B at ¶ 16); identifies the dollar amount of the Settlement, the maximum amount Class Counsel

22  will request in fees and expenses and the maximum amounts to be requested for case contribution

23  awards (*id.,* Ex. 1.B at ¶ 12); claims released by Settlement Class Members (*id.,* Ex. 1.B at ¶ 10);

24  Class Counsel's identity and contact information (*id.,* Ex. 1.A; Ex. 1.B at ¶ 11); objection rights and

25

26  PLAINTIFFS' NOTICE OF REVISED MOTION AND UNOPPOSED REVISED MOTION FOR PRELIMINARY
    APPROVAL OF CLASS ACTION SETTLEMENT, PRELIMINARY CERTIFICATION OF A CLASS FOR

27  SETTLEMENT PURPOSES, APPROVAL OF FORM AND MANNER OF CLASS NOTICE, SCHEDULING A
    FINAL APPROVAL HEARING, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

28  THEREOF
    4:20-cv-06081-JST
    -22-

1    procedures (*id.,* Ex. 1.A; Ex. 1.B at ¶¶ 13-16); the date and location of the Final Approval Hearing

2    and rights to attend and be heard. *Id.* In addition, the Notice, Settlement Agreement, preliminary

3    and final approval motions and related applications, and other litigation documents will be posted

4    on the Settlement Website. *See id*., Ex. 1.A; Ex. 1.B ¶ 12; *see also Shy v. Navistar Int'l Corp*., 2022

5    WL 2125574, at *5 (S.D. Ohio June 13, 2022) (an ERISA notice that "directed Class Members to

6    the settlement website or a toll-free number for additional information [...] more than met the

7    requirements of Rule 23 and due process.") (citations omitted).

8            The Notice Plan should be approved because it satisfies all due process considerations and

9    meets the requirements of Rule 23(e). The Notice Plan clearly describes: (i) the terms and operation

10   of the Settlement; (ii) the nature and extent of the Released Claims; (iii) the maximum attorneys'

11   fees, litigation expenses, and case contribution awards that may be sought; (iv) the procedure and

12   timing for objections; and (v) subject to the Court's schedule, the date and location of the Fairness

13   Hearing.

14                    **3.        The Plan of Allocation Should Be Preliminarily Approved**

15          The Plan of Allocation provides recovery to members of the Settlement Class on a *pro rata*

16   basis, with no preferential treatment for the Class Representatives or any segment of the Settlement

17   Class. *See* Gyandoh Decl., ¶ 44 at Exhibit 1.C, Plan of Allocation ("Plan") at Section II; Letter

18   Agreement Amending Plan of Allocation, attached to Gyandoh Decl. as Exhibit 9. A *pro rata*

19   distribution based on each class member's loss relative to that of the class as whole "has frequently

20   been determined to be fair, adequate, and reasonable." *Hefler v. Wells Fargo & Co.,* No. 16-cv-

21   05479, 2018 WL 6619983, at *12 (N.D. Cal. Dec. 18, 2018) (collecting cases). This is substantially

22   similar to plans approved by this Court in analogous ERISA litigation in this District and around the

23   country. *See, e.g., Terraza v. Safeway Inc.,* No. 16-cv-03994, Dkt. 268 (N.D. Cal. Sept. 8, 2020)

24   ("[s]ettlement Scores will be determined by calculating the Class Member's year-end asset amounts

25

26   PLAINTIFFS' NOTICE OF REVISED MOTION AND UNOPPOSED REVISED MOTION FOR PRELIMINARY
     APPROVAL OF CLASS ACTION SETTLEMENT, PRELIMINARY CERTIFICATION OF A CLASS FOR
27   SETTLEMENT PURPOSES, APPROVAL OF FORM AND MANNER OF CLASS NOTICE, SCHEDULING A
     FINAL APPROVAL HEARING, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
     THEREOF
28                                          4:20-cv-06081-JST
                                                  -23-

in the Plan during the Class Period . . . ."); *see also Barcenas v. Rush Univ. Medical Ctr.*, No. 22-cv-00366, Dkt. 73 (N.D. Ill. Jan. 19, 2023) (approving substantially similar pro rata plan of allocation in analogous ERISA breach of fiduciary duty action); *Karpik*, 2021 WL 757123, at *2 (approving a plan of allocation distributing the settlement fund on a pro rata basis). The Plan also provides procedures for the Settlement Administrator to identify and compensate former participants and beneficiaries or alternate payees without active accounts. *See* Gyandoh Decl. *See* Gyandoh Decl., ¶ 44 at Exhibit 1.C, Section II.D.

Courts within this District hold that "[a] plan of allocation need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel." *In re Nexus 6P Prods. Liab. Litig.*, No. 17-cv-02185, 2019 WL 6622842, at *9 (N.D. Cal. Nov. 12, 2019) (citation omitted). In light of the equitable treatment of Class Members and the competence of Class Counsel, the Court should find that the Plan of Allocation is also fair, reasonable, and adequate.

## V.   CONCLUSION

Plaintiffs respectfully submit that the Court should preliminarily approve the Settlement, Notice Plan, and Plan of Allocation, preliminarily certify the Settlement Class, and set a date for the Final Approval Hearing.

Dated: February 17, 2025

**CAPOZZI ADLER, P.C.**

*/s/ Mark K. Gyandoh*
Mark K. Gyandoh
(*Admitted Pro Hac Vice*)
James A. Wells
(*Admitted Pro Hac Vice*)
312 Old Lancaster Road
Merion Station, PA 19066
Tel: (610) 890-0200
Fax: (717) 233-4103
Email: markg@capozziadler.com
           jayw@capozziadler.com

PLAINTIFFS' NOTICE OF REVISED MOTION AND UNOPPOSED REVISED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, PRELIMINARY CERTIFICATION OF A CLASS FOR SETTLEMENT PURPOSES, APPROVAL OF FORM AND MANNER OF CLASS NOTICE, SCHEDULING A FINAL APPROVAL HEARING, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
4:20-cv-06081-JST
-24-

1

2

3

4

5

**ROSMAN & GERMAIN LLP**
Daniel L. Germain (State Bar No. 143334)
5959 Topanga Canyon Boulevard
Suite 360
Woodland Hills, CA  91367-7503
Telephone: (818) 788-0877
Facsimile: (818) 788-0885
Email: germain@lalawyer.com

6

7

8

9

10

**MUHIC LAW LLC**
Peter A. Muhic
(*Admitted Pro Hac Vice*)
923 Haddonfield Road,
Suite 300 Cherry Hill, NJ  08002
Phone:  (856) 324-8252
Fax:  (717) 233-4103
Email:  peter@muhiclaw.com

11

*Counsel for Plaintiffs and the Putative Class*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' NOTICE OF REVISED MOTION AND UNOPPOSED REVISED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT, PRELIMINARY CERTIFICATION OF A CLASS FOR
SETTLEMENT PURPOSES, APPROVAL OF FORM AND MANNER OF CLASS NOTICE, SCHEDULING A
FINAL APPROVAL HEARING, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
THEREOF
4:20-cv-06081-JST
-25-

## CERTIFICATE OF SERVICE

I hereby certify that on February 17, 2025, a true and correct copy of the foregoing document was filed with the Court utilizing its ECF system, which will send notice of such filing to all counsel of record.

By:  /s/Mark K. Gyandoh
Mark K. Gyandoh, Esq.