1  **ROSMAN & GERMAIN APC**
   Daniel L. Germain (Bar No. 143334)
2  5959 Topanga Canyon Boulevard
   Suite 360
3  Woodland Hills, CA  91367-7503
4  Telephone: (818) 788-0877
   Facsimile: (818) 788-0885
5  E-Mail: Germain@Lalawyer.com

6  Counsel for Plaintiffs and the Putative Class

7  [Additional Counsel Listed on Signature Page]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CRISTINA TOBIAS, ANTHONY BRIGGS, ANN MACDONALD and DAVID CALDER, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NVIDIA CORPORATION, THE BOARD OF DIRECTORS OF NVIDIA CORPORATION, THE NVIDIA CORPORATION 401(K) PLAN BENEFITS COMMITTEE, and JOHN DOES 1-30.<br><br>Defendants. | Case No. 4:20-cv-06081-JST<br><br>DECLARATION OF MARK K. GYANDOH IN SUPPORT OF PLAINTIFFS' NOTICE OF UNOPPOSED REVISED MOTION TO PRELIMINARILY APPROVE SETTLEMENT AND CLASS NOTICE, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF.<br><br>Date:      May 8, 2025<br>Time:      2:00 p.m.<br>Location:  Oakland Courthouse<br>           Courtroom 6<br>           2nd Floor<br>           1301 Clay Street<br>           Oakland, CA 94612<br>Judge:     Hon. Jon Tigar |

1    I, Mark K. Gyandoh, Esquire, as Class Counsel, declare as follows:

2    1.    I am a member in good standing of the bars of the Commonwealth of Pennsylvania and state of New Jersey and have personal knowledge of the facts set forth below and, if called as a witness, I could and would testify competently thereto.

3    2.    I am a partner and chair of the Fiduciary Practice Group at Capozzi Adler, P.C., and have been the lead attorney for my firm in this litigation representing Plaintiffs and the proposed Settlement Class in the above-captioned action.

***Procedural History***

3.    Plaintiffs commenced this action by filing an initial complaint on August 28, 2020. *See* ECF No. 1.

4.    On December 18, 2020, Defendants filed their Notice of Motion and Motion to Dismiss. *See* ECF No. 24.

5.    Plaintiffs filed their Brief in Opposition to Defendants' Motion to Dismiss on January 15, 2021. *See* ECF No. 25.

6.    On February 5, 2021, Defendants filed a Reply in Further Support of Motion to Dismiss. *See* ECF No. 26.

7.    The Court issued an Order on October 5, 2020, granting Defendants' Motion to Dismiss and granting leave for Plaintiffs to file an amended complaint. *See* ECF No. 44.

8.    Plaintiffs filed their First Amended Complaint on November 12, 2021. *See* ECF No. 51.

9.    On December 23, 2021, Defendants filed their Motion to Dismiss Plaintiffs' First Amended Complaint. *See* ECF No. 52.

10.    Plaintiffs filed their Brief in Opposition to Defendants' Motion to Dismiss the First Amended Complaint on January 20, 2022. *See* ECF No. 60.

11.    On February 10, 2022, Defendants filed their Reply Brief. *See* ECF No. 62.

12. On February 28, 2022, this Court issued an Order Terminating Motion to Dismiss, Requiring New Briefing Schedule, and Vacating Case Management Conference. *See* ECF No. 66.

13. On April 15, 2022, Defendants filed their Notice of Motion and Motion to Dismiss Plaintiffs' First Amended Class Action Complaint; Memorandum of Points and Authorities in Support Thereof. *See* ECF No. 70.

14. Plaintiffs filed their Memorandum of Points and Authorities in Support of Their Opposition to Defendants' Motion to "Dismiss Plaintiffs' First Amended Class Action Complaint on May 13, 2022. *See* ECF No. 72.

15. On June 3, 2022, Defendants filed their Reply. *See* ECF No. 73.

16. The Court issued an Order on September 11, 2023, denying Defendants' Motion to Dismiss Plaintiffs' First Amended Class Action Complaint, Second Amended Class Action Complaint (clean version) and Second Amended Class Action Complaint (redline version). *See* ECF No. 93.

17. On October 6, 2023, Defendants filed their Answer to Second Amended Complaint. *See* ECF No. 97.

18. Plaintiffs filed their Second Amended Class Action Complaint on October 24, 2023. *See* ECF No. 102.

19. Plaintiffs filed Plaintiffs' Notice of Motion and Motion for Class Certification; Memorandum of Points and Authorities in Support of Motion for Class Certification on March 12, 2024. *See* ECF No. 110.

20. Defendants filed their Opposition to Plaintiffs' Motion for Class Certification on April 26, 2024. *See* ECF No. 114.

21. Plaintiffs filed their Reply Memorandum in Support of their Motion for Class Certification on May 28, 2024. *See* ECF No. 117.

22. The Parties filed a Stipulation and Request to Stay Proceedings Pending Mediation on June 24, 2024. *See* ECF No. 119. The Court granted the Stay on June 24, 2024. *See* ECF No. 120.

23. The Parties filed a Stipulation and Request to Continue Stay of Proceedings Pending Approval of Proposed Class Action Settlement on September 27, 2024. *See* ECF No. 122. The Court granted the request on October 1, 2024. *See* ECF No. 123.

### *Discovery Practice*

24. Before initiating this action, Plaintiffs consulted with their in-house experts, reviewed publicly filed Plan documents, and Plaintiffs' personal account information.

25. On May 18, 2020, and June 30, 2020, prior to filing the suit, Plaintiffs requested numerous documents and information from Defendants pursuant to Section 104(b)(4) of ERISA.

26. In response to Plaintiffs' request, on July 31, 2020, Defendants produced numerous responsive documents.

27. On August 13, 2021, Defendants served Initial Disclosures.

28. On August 16, 2021. Plaintiffs served Initial Disclosures.

29. On August 18, 2021, Plaintiffs served a Production of Documents on Defendants.

30. On November 1, 2023, Plaintiffs served their First Set of Interrogatories and First Requests for Production of Documents on Defendants.

31. On December 15, 2023, Defendants served their Responses and Objections to Plaintiffs' First Set of Interrogatories and First Requests for Production of Documents on Plaintiffs.

32. On January 23, 2024, Defendants served their First Set of Interrogatories and First Request of Production of Documents on Plaintiffs.

33. On February 22, Plaintiffs served the Objections and Responses to Defendants First Set of Interrogatories and First Requests for Production of Documents on Defendants.

34. Defendants supplied Plaintiffs with approximately 9,769 pages of documents pursuant to Plaintiffs' discovery requests.

*Settlement Negotiations*

35. A mediation session was scheduled for September 23, 2024, with Robert Meyer of JAMS, who is well-versed and experienced in mediating ERISA matters. *See* curriculum vitae of Mr. Meyer at https://www.jamsadr.com/meyer/.

36. During the mediation, the Parties exchanged information and gained an understanding of their respective strengths and weaknesses.

37. Based on analysis and information exchanged during mediation, Plaintiffs assigned best-case scenario damages to the recordkeeping claim of $546,772.00; failure to select lower cost share classes at between $1,228,554.00 and $1,854,837.00; and fund underperformance damages of around $11,287,752.. *See also* Exhibits 7 and 8 which show the damages resulting from the underperformance of the Mainstay Winslow Large Growth I, American Beacon Large Cap Value R6, Victory RS Select Growth Y funds from January 2014 through December 31, 2017 and January 2018 through December 31, 2023, respectively.

38. Defendants made several strong arguments during mediation to challenge Plaintiffs' viewpoint. Among other things, Defendants argued the Committee had a prudent process. Defendants argued that the Committee was comprised of highly knowledgeable individuals from a breadth of expertise (including finance), and many had long tenure on the Committee. Defendants produced to Plaintiffs meeting minutes and materials to demonstrate that the Committee met regularly (every quarter, except one, in the relevant period), consulted with investment managers each meeting and between meetings, and reviewed and changed the Plan's investment line up. Defendants also argued that the Committee negotiated lower recordkeeping fees until NVIDIA started paying those fees directly as of April 2018. Defendants' documents also showed that in March 2018, the Committee reviewed the Plan's offerings and made two significant changes in Defendants' estimation: the Committee removed six of the eight funds challenged in the operative Complaint, removed nearly all revenue sharing, and changed recordkeeping arrangements so that all recordkeeping fees would be paid directly by NVIDIA.

39. Plaintiffs also considered Defendants' arguments regarding the underperformance claims during mediation. After reviewing Defendants' arguments and comparators, Plaintiffs relinquished underperformance claims regarding the Fidelity Contrafund K. Plaintiffs took into consideration Defendants' arguments that certain of the comparators Plaintiffs chose appeared to be more expensive than the challenged fund or that the comparators were not from the same category of investments as the challenged fund.

40. Defendants also argued that the differences in price between the challenged funds and lower-cost share classes of the same fund were nearly entirely attributable to revenue sharing and that the Plan was already invested in the Fidelity Contrafund K class, which was the share class of the Contrafund that Plaintiffs alleged was the appropriate share class. Plaintiffs also took into account Defendants' arguments that collective investment trusts are different from mutual fund options of the same fund, and that the Committee's decision to move to collective investment trust versions of its investment options in 2018 was consistent with industry norms.

41. Defendants also argued that when compared to similarly sized plans, the Plan's recordkeeping fees were within range and that the Committee obtained lower recordkeeping fees within the relevant period and eventually NVIDIA paid those fees directly.

42. The Parties came to an agreement in principle and continued to discuss the final details of the settlement agreement.

43. The Parties agreed to settle this matter for $2,500,000.00 (two million five hundred thousand dollars) and certain non-monetary relief.

***Settlement Agreement***

44. The Settlement Agreement is attached hereto as **Exhibit 1**. The Postcard Notice of the Proposed Class Action Settlement is attached to the Settlement Agreement as **Exhibit 1.A**. The Long Form Notice of Proposed Class Action Settlement ("Notice") is attached to the Settlement Agreement as **Exhibit 1.B**. The Proposed Plan of Allocation ("Plan") is attached to the Settlement

Agreement as **Exhibit 1.C**. And the Letter Agreement Amending Plan of Allocation, as described below, is attached here as Exhibit 9.

45. Based on the aforementioned negotiations and exchange of information, the Parties were able to negotiate a fair settlement that they believe to be in their respective best interests.

46. It is Plaintiffs' counsel's opinion that the proposed settlement is fair and reasonable.

### *The Settlement Terms*

47. NVIDIA Corporation (or its insurers) will pay $2,500,000 – the Settlement Amount – to be allocated to participants on a pro-rata basis pursuant to the proposed Plan of Allocation (*see* Exhibit C to Settlement Agreement) in exchange for releases and dismissal of this action (described in Article 1.32, 5.1-.2 of the Settlement Agreement). Plaintiffs evaluated numerous potential damages scenarios. The Settlement Amount of $2,500,000 represents 18.3% to 19.1% of the maximum achievable damages for the case as calculated by Plaintiffs.

48. The Settlement Fund will be used to pay the participants' recoveries, administrative expenses to facilitate the Settlement, Independent Fiduciary Fees and Costs, and, if awarded by the Court, Plaintiffs' counsel's attorneys' fees and costs and Case Contribution Awards.

49. The Class Members include all individuals in the Settlement Class, or:

> All persons, except Defendants and their immediate family members, who were participants in or beneficiaries of the NVIDIA Corporation 401(k) Plan (the "Plan"), who participated in the Plan, at any time between August 28, 2014, through the date of the Preliminary Approval Order.

*See* Settlement Agreement, Section 1.6.

50. A portion of the funds from the Net Settlement Fund will be allocated to each Class Member in proportion to the sum of that Class Member's Balance as compared to the sum of the Balance for all Class Members. *See* Plan of Allocation at II.D. Class Members who are entitled to a distribution of less than the minimum amount of $5.00 will not receive a distribution. *Id*. For Class Members with an Active Account (an account with a positive balance) as of the date of calculation of the Final Entitlement Amount will have their proceeds allocated into their Plan account. *Id.* at

II.E. Former Participants shall be paid directly by the Settlement Administrator by check. *Id*. at II.F. The Plan of Allocation requires that "after the expiration of all undeposited checks issued pursuant to this Plan of Allocation, any amount remaining in the Escrow Account shall be paid to the Plan for the purpose of defraying administrative fees and expenses that would otherwise be charged to participants." *Id.* at II.I. Section 3.4 of the Settlement Agreement also provides that:

> If any of the Net Settlement Fund remains by reason of uncashed checks, or otherwise, after the Settlement Administrator has made reasonable and diligent efforts to have Class Members who are entitled to participate in the distribution of the Net Settlement Fund cash their distribution checks, then any balance remaining in the Net Settlement Fund thirty (30) calendar days after the deadline for cashing checks has expired, any amount in the Escrow Account shall be paid to the Plan for the purpose of defraying administrative fees and expenses that would otherwise be charged to participants.

51. In light of the Court's concerns in its January 16, 2025 Order (ECF No. 135) denying without prejudice, Plaintiffs' motion for preliminary approval of class action settlement, the Parties have agreed to modification of the Settlement Agreement and Plan of Allocation pursuant to Section 10.3 of the Settlement Agreement which permits modification or amendment through a writing executed by Class Counsel and Defendants' Counsel. *See* Exhibit 9, Letter Agreement Amending Plan of Allocation.

52. In particular, the Parties have agreed to amend the Plan of Allocation such that any remaining money after the initial distribution of the Net Settlement Fund to Class Members shall be redistributed as follows: (i) first, to pay any amounts mistakenly omitted from the initial distribution to Class Members; (ii) second, to pay any additional Notice and Administrative Costs incurred in administering the Settlement; and (iii) finally, to make a second distribution *pro rata* to Plan accounts of the Class Members who have active Plan accounts at the time of the re-distribution. *See* Exhibit 9, Letter Agreement Amending Plan of Allocation.

53. Class Counsel intends to seek to recover their attorneys' fees not to exceed $833,333.00. *See* Settlement Agreement, Section 7.2; *see also* Ex. 1.B, ¶ 12. Class Counsel also intends to seek to recover litigation costs and expenses advanced and carried by Class Counsel for

the duration of this litigation, not to exceed $100,000.00. *Id.* Class Counsel prosecuted the Class Action on a contingent basis and advanced all associated costs with no expectation of recovery in the event the litigation did not result in a recovery for the Settlement Class.

54. Additionally, Class Counsel intends to seek Class Representatives' Case Contribution Awards to Plaintiffs not to exceed $10,000 each for Cristina Tobias, Anthony Briggs, Ann MacDonald, and David Calder, subject to Court approval. *See* Settlement Agreement, Section 7.2; *see also* Ex. B, ¶ 9. Plaintiffs actively participated in the litigation and assisted Class Counsel in drafting the respective complaints and other documents, consulted with Class Counsel as needed, monitored the progression of the case, answered discovery-related requests for information, and participated in settlement discussions.

55. The Settlement will be administered by Analytics Consulting LLC ("Analytics"). *See* https://www.analyticsllc.com/ (last accessed November 19, 2024). Lead Class Counsel has worked with Analytics on at least half a dozen other ERISA class action cases. Analytics has over 50 years of experience in class action claims administration. *See* https://www.analyticsllc.com/about-us/ (last accessed August 23, 2024). Upon preliminary approval, Analytics will mail, by first class mail, the Court-approved Class Notice to Settlement Class members using addresses from documents associated with the Plan. Analytics will use commercially reasonable means to locate updated address information for any notices that are returned for lack of a forwarding address and re-mail the notices to the updated addresses. Additionally, Analytics will establish a settlement website providing Settlement Class members with important case documents, pertinent information, and contact information for the Settlement Administrator, Class Counsel, and Defense Counsel.

56. Class Counsel also solicited proposals from two other settlement Administrators. Each bid included toll free phone and email support, a website, and first-class mail distribution with procedures for updating addresses and resending notices as needed. Analytics' proposal was the most cost-effective bid that ensured the highest level of service.

57.     Defendants have retained an Independent Fiduciary to approve and authorize the settlement on behalf of the Plan. *See* Settlement Agreement, Section 1.21-.24, 2.6.

### ***Counsels' Experience***

58.     I received both my J.D. (2001) and LLM in trial advocacy (2011) from Temple University School of Law. While at Temple, I was the research editor for the Temple International and Comparative Law Journal. After law school I clerked for a year with the Hon. Dennis Braithwaite of the New Jersey State Appellate Court.

59.     I have been litigating ERISA fiduciary breach lawsuits for 19 years, first at my prior firm of Kessler Topaz Meltzer & Check, LLP (KTMC), and currently at Capozzi Adler where, as noted above, I am chair of the Fiduciary Practice Group. Over my career I have been actively involved in many high-profile ERISA class actions. For example, I was one of the lead attorneys for plaintiffs in *Fifth Third Bancorp, et al., v. Dudenhoeffer, et al.*, 573 U.S. 409, 134 S. Ct. 2459 (2014), a seminal Supreme Court decision that clarified the unwavering duties owed by fiduciaries to pension plan participants. *See* biography at https://capozziadler.com/mark-k-gyandoh-esquire/.

60.     Another member of the Fiduciary Practice Group, James A. Wells, Partner, is an experienced litigator frequently handling multi-million dollar disputes and is a 1998 graduate of Temple University School of Law. *See* biography at https://capozziadler.com/james-a-wells-esquire/.

61.     Peter Muhic, Muhic Law, is an accomplished trial lawyer who spent more than a decade litigating in a vast array of cases before moving onto securities and class action law. Peter is a graduate of Temple University School of Law. *See* biography at https://muhiclaw.com/.

62.     Rounding out the ERISA team are our support staff which includes paralegals and other paraprofessionals who assist in the practice. Additionally, as litigation dictates, the ERISA team avails itself of the services of the other attorneys and staff at the firm.

63.     Capozzi Adler has significant resources with three office locations. We have been serving clients for over 24 years offering a full range of legal services. I and my firm have been

lead or co-lead interim counsel in dozens of ERISA breach of fiduciary duty actions. Recently, Capozzi Adler was appointed class counsel in the following matters*: Sweet v. Advance Auto Stores Co., Inc*., No. 21-cv-549, 2023 WL 3959779 (W.D. Va. June 9, 2023); *Huang, v. TriNet HR III, Inc*., No. 20-cv-2293, 2022 WL 13631836 (M.D. FL. Oct. 21, 2022); *Stengl v. L3Harris Techs., Inc*., No. 22-cv-572, 2023 WL 11932263 (M.D. Fla. June 5, 2023); *Lucas, v. MGM Resorts International*, 20-cv-01750 (D. Nev. Oct. 20, 2022) (ECF 112); *Nunez, v. B. Braun Medical, Inc*., No. 20-cv-04195 (E.D. Pa. June 30, 2022) (ECF. 69); *Boley v. Universal Health Servs., Inc*., 337 F.R.D. 626 (E.D. Pa. 2021); *McCool v. AHS Mgmt. Co., Inc.,* No. 19-cv-01158, 2023 WL 2729161 (M.D. Tenn. Mar. 30, 2023) (appointing Capozzi Adler as Class Counsel).

64.     The firm strives to obtain the best results for class members in every circumstance. We have successfully defeated motions to dismiss similar allegations in numerous actions. *See, e.g., Brown v. MITRE Corp.,* No. 22-cv-10976, 2023 WL 2383772 (D. Mass. Mar. 6, 2023); *Seibert v. Nokia of Am. Corp.,* No. 21-cv-20478, 2024 WL 2316551 (D.N.J. May 22, 2024); *Kendall et al v. Pharmaceutical Product Development, LLC*, No. 20-cv-00071, 2021 WL 1231415 (E.D.N.C. March 31, 2021) (upholding allegations that plan fiduciaries selected higher-priced identical share classes and overpaid for recordkeeping); *Stengl v. L3Harris Techs., Inc.*, No. 22-cv-572, 2023 WL 2633333 (M.D. Fla. Mar. 24, 2023); *Parmer v. Land O'Lakes, Inc*., 518 F. Supp. 3d 1293 (D. Minn. 2021); *Davis v. Magna Int'l of America, Inc.*, No. 20-cv-11060, 2021 WL 1212579 (E.D. Mich. March 31, 2021) (same); *Jones v. Coca-Cola Consolidated, Inc.*, No. 20-cv-00654, 2021 WL 1226551 (W.D.N.C. March 31, 2021) (same); *McCool v. AHS Management Company, Inc.*, No. 19-cv-01158, 2021 WL 826756 (M.D. Tenn. March 4, 2021) (same); *Garnick v. Wake Forest Univ. Baptist Med. Ctr.,* 629 F. Supp. 3d 352 (M.D.N.C. 2022); *In re Medstar ERISA Litig*., No. 20-cv-1984, 2021 WL 391701 (D. Md. Feb. 4, 2021) (same); *Silva v. Evonik Corp*., 2020 WL 12574912 (D.N.J. Dec. 30, 2020) (same); *Moore v. Humana, Inc.*, No. 21-cv-232, 2022 WL 20766504, at *3 (W.D. Ky. Dec. 2, 2022); *Pinnell, v. Teva Pharmaceuticals USA, Inc.*, No. 19-cv-5738, 2020 WL 1531870 (E.D.Pa. Mar. 31, 2020); *Peterson v. Insurance Services Office, Inc*., No. 20-cv-13223,

2021 WL 1382168 (D.N.J. Apr. 13, 2021); *Rosenkrantz v. Altru Health System*, 20-cv-168, 2021 WL 5868960 (Dec. 10, 2021).

65.   We have also been successful at the appellate level resulting in the reversal of dismissed actions.  *See, e.g., Perkins v. United Surgical Partners Int'l, Inc.,* No. 23-cv-10375, 2024 WL 1574342 (5th Cir. Apr. 11, 2024) (reversing district court dismissal of ERISA excessive fee action); *Kruchten v. Ricoh USA, Inc.*, No. 23-cv-1928, 2024 WL 3518308 (3d Cir. July 24, 2024) (same); *Kong et al. v. Trader Joe's Co.,* No. 20-56415, 2022 WL 1125667 (9th Cir. Apr. 15, 2022) (same); *Davis et al. v. Salesforce.com. Inc. et al.*, No. 21-15867, 2022 WL 1055557 (9th Cir. Apr. 8, 2022) (same). And we have been successful in obtaining affirmances of rightly decided decisions. *See, e.g., Hawkins et al. v. Cintas Corp.*, 32 F. 4th 625 (6th Cir. 2022) (affirming denial of motion to compel arbitration in ERISA case); *Boley v. Universal Health Services, Inc.*, 36 F.4th 124 (3d Cir. 2022) (upholding decision certifying Rule 23(b)(1) class in ERISA action).

66.   My firm has also engaged in successful settlement negotiations and mediations in ERISA actions, recovering millions of dollars for its clients and class members.  *See, e.g., Peterson v. Insurance Services Office, Inc*., No. 3:20-cv-13223 (D.N.J. May 22, 2024) (recovered $4,000,000.00 class settlement); *Garnick v. Wake Forest Univ. Baptist Med. Ctr.,* 1:21-cv-00454 (M.D.N.C. July 2, 2024) (recovered $3,800,000.00 class settlement); *McNeilly v. Spectrum Health System*, Civil Action No. 1:20-cv-00870 (W.D. Mich. 2023) (recovered $6,000,000.00 class settlement); *Buescher, et al., v. Brenntag North America, Inc., et al.*, No. 5:20-cv-00147 (E.D. Pa. 2020) (recovered $2,300,000.00 class settlement); *Pinnell, et al., v. Teva Pharmaceuticals USA, Inc., et al.*, No. 2:19-cv-05738-MAK (E.D. Pa. 2019) (settlement in the amount of $2,550,000.00 after successful mediation); *Dean v. Cumulus Media, Inc.*, Civil Action No. 1:22-cv-04956-TWT (N.D. Ga. 2023) (recovered $1,000,000.00 settlement); *Loomis v. Nextep, Inc*., Civil Action No.: 5:21-cv-00199-HE (W.D. Okla. 2023) (recovering $1,100,000.00); *Freck v. Cerner Corp., et al.*, No. 4:20-CV-00043-BCW (W.D. Mo. 2020) (recovered $4,050,000.00 class settlement); *Gerken, et*

*al. v. ManTech Int'l Corp, et al.*, No. 1:20-cv-01536 (E.D. Va. 2020) (recovered $1,200,000.00 class settlement).

67. Capozzi Adler also has the resources and commitment to deploy those resources on behalf of the proposed class in this case and has in fact done so as evidenced by our litigation efforts to date, including conducting discovery and attending mediation.

68. Given my years of experience in this field of law, including, trying an analogous case to an unfavorable verdict for plaintiffs *Nunez v. B. Braun Med., Inc*., No. 20-4195 (E.D. Pa. Aug. 18, 2023), I believe the settlement achieved in this case is adequate and certainly reasonable and fair.

69. To date, Class Counsel has leveraged their experience and resources to vigorously pursue recovery on behalf of the Plan and protect the interests of all Class Members, including by comprehensively investigating the claims forming the basis of the Action, filing detailed pleadings, briefing several motions, engaging in an extensive discovery process, reviewing documents, engaging experts, producing expert reports, and litigating the case to the eve of mediation.

### *Plaintiffs Are Adequate Class Representatives*

70. The Settlement Class encompasses thousands of Plan participants. At the end of 2020 there were over 10,033 participants with account balances in the 401(k) Plan. *See* 2020 Form 5500 filed with the U.S. Dept. of Labor at 2.

71. Each of the Named Plaintiffs supports the Settlement and has submitted declarations attesting to the work they have done on this matter.

72. Attached as **Exhibit 2** is the Declaration of Cristina Tobias in Support of the Settlement.

73. Attached as **Exhibit 3** is the Declaration of Anthony Briggs in Support of the Settlement.

74. Attached as **Exhibit 4** is the Declaration of Ann MacDonald in Support of the Settlement.

75. Attached as **Exhibit 5** is the Declaration of David Calder in Support of the Settlement.

### *Authority Supporting Appropriateness of Class Certification*

76. Having litigated almost exclusively ERISA breach of fiduciary duty actions over my career it is my experience that the types of claims asserted in this action are typically certified.

77. Attached hereto as **Exhibit 6** is a non-exhaustive list of more than eighty-nine (89) decisions from around the country in which courts certified classes in ERISA breach of fiduciary duty actions, like the instant action.

I declare, pursuant to 28 U.S.C. §1746 and under penalty of perjury, that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed this 17th day of February, 2025, in Merion Station, Pennsylvania.

**CAPOZZI ADLER, P.C.**

*/s/ Mark K. Gyandoh*

Mark K. Gyandoh, Esquire

*Proposed Class Counsel*